CASE NO. 15-10500

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

PROSKAUER ROSE, LLP, THOMAS V. SJOBLOM, P. MAURICIO ALVARADO AND
CHADBOURNE & PARKE, LLP,
APPELLANTS,

v.

SAMUEL TROICE, PAM REED, AND PUNGA PUNGA FINANCIAL, LIMITED,
INDIVIDUALLY AND ON BEHALF OF A CLASS OF ALL OTHERS SIMILARLY SITUATED,
APPELLEES.

_____

**On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
Civil Action No. 3:09-CV-01600-N**

_____

**APPELLEES' MOTION TO DISMISS APPEAL
FOR WANT OF JURISDICTION**

_____

Edward F. Valdespino
Texas State Bar No. 20424700
**STRASBURGER & PRICE, LLP**
2301 Broadway
San Antonio, Texas  78215-1157

P. Michael Jung
Texas State Bar No. 11054600
**STRASBURGER & PRICE, LLP**
901 Main Street, Suite 4400
Dallas, Texas 75202

Robert M. O'Boyle
Texas State Bar No. 15165425
**STRASBURGER & PRICE, LLP**
720 Brazos Street, Suite 700
Austin, Texas 78701

Edward C. Snyder
Texas State Bar No. 00791699
Jesse R. Castillo
Texas State Bar No. 03986600
**CASTILLO SNYDER, P.C.**
300 Convent Street, Suite 1020
San Antonio, Texas 78205

Douglas J. Buncher
Texas State Bar No. 03342700
**NELIGAN FOLEY, LLP**
Republic Center
325 N. St. Paul, Suite 3600
Dallas, Texas 75201

*Attorneys for Appellees*

1674822.6/SPA/23832/0101/062515

CASE NO. 15-10500

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

PROSKAUER ROSE, LLP, THOMAS V. SJOBLOM, P. MAURICIO ALVARADO AND
CHADBOURNE & PARKE, LLP,
APPELLANTS,

v.

SAMUEL TROICE, PAM REED, AND PUNGA PUNGA FINANCIAL, LIMITED,
INDIVIDUALLY AND ON BEHALF OF A CLASS OF ALL OTHERS SIMILARLY SITUATED,
APPELLEES.

_____

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case.  These representations are made in order that the judges of the Court may evaluate possible disqualification or recusal.

**Defendants-Appellants**
Proskauer Rose, LLP; Thomas V. Sjoblom; Chadbourne & Parke, LLP

**Counsel for Defendants-Appellants**
Harry M. Reasoner
**VINSON & ELKINS, LLP**
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760

1674822.6/SPA/23832/0101/062515

William D. Sims, Jr.
**VINSON & ELKINS, LLP**
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975

Daniel J. Beller
Daniel J. Leffell
William B. Michael
**PAUL, WEISS, RIFKIND, WHARTON &**
  **GARRISON, LLP**
1285 Avenue of the Americas
New York, New York 10019-6065

Neil R. Burger
Bruce W. Collins
**CARRINGTON, COLEMAN, SLOMAN &**
  **BLUMENTHAL, LLP**
901 Main Street, Suite 5500
Dallas, Texas 75202

James P. Rouhandeh
Daniel J. Schwartz
Jonathan K. Chang
**DAVIS, POLK & WARDELL, LLP**
450 Lexington Avenue
New York, New York 10017

William B. Mateja
**FISH & RICHARDSON, P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 75201

Joshua L. Hochberg
Mindy L. Rattan
**MCKENNA LONG & ALDRIDGE, LLP**
1900 K Street NW
Washington, DC 20006-1108


**Plaintiffs-Appellees**
Samuel Troice; Pam Reed; and Punga Punga Financial, Limited, Individually and
on Behalf of a Class of All Others Similarly Situated

**Counsel for Plaintiffs-Appellees**
Edward F. Valdespino
Texas State Bar No. 20424700
**STRASBURGER & PRICE, LLP**
2301 Broadway
San Antonio, Texas  78215-1157

By:   _/s/_ P. Michael Jung
       P. Michael Jung

STRASBURGER & PRICE, LLP

Texas State Bar No. 20424700
2301 Broadway
San Antonio, Texas  78215
Telephone:   (210) 250-6061
Facsimile:   (210) 258-2703

CASE NO. 15-10500

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

PROSKAUER ROSE, LLP, THOMAS V. SJOBLOM, P. MAURICIO ALVARADO AND
CHADBOURNE & PARKE, LLP,
APPELLANTS,

v.

SAMUEL TROICE, PAM REED, AND PUNGA PUNGA FINANCIAL, LIMITED,
INDIVIDUALLY AND ON BEHALF OF A CLASS OF ALL OTHERS SIMILARLY SITUATED,
APPELLEES.

_____

APPELLEES' MOTION TO DISMISS APPEAL
FOR WANT OF JURISDICTION

TO THE HONORABLE UNITED STATES COURT OF APPEALS:

Samuel Troice, Pam Reed, and Punga Punga Financial, Limited,

Individually and on Behalf of a Class of All Others Similarly Situated, Appellees,

file this their Motion to Dismiss Appeal For Want of Jurisdiction, and would

respectfully show the Court the following:

## I. SUMMARY OF ARGUMENT

1.     The collateral order doctrine has no application to this appeal, which

should be dismissed for want of jurisdiction.  Attorney immunity is an affirmative

defense rather than an immunity from suit under Texas law.  Appellants therefore

1

cannot bring an immediate appeal from the denial of their Rule 12(b)(6) motions to dismiss and related motions.

## II.  PROCEDURAL BACKGROUND

2.     Appellees filed this lawsuit on August 27, 2009 [Docket No. 1.]

3.     On December 11, 2009 [Docket Nos. 29, 31 and 36], Appellants filed their Motions to Dismiss under Rule 12(b)(6) based upon attorney immunity.

4.     By Order dated March 4, 2015 [Docket No. 176], the District Court denied Appellants' Motions to Dismiss.  (*See* Appendix A.)

5.     Appellants moved for reconsideration [Docket No. 186 and 187] on April 1, 2015.

6.     The District Court denied Appellants' Motions for Reconsideration on May 15, 2015 [Docket No. 217].  (*See* Appendix B.)

7.     Appellants filed their Notices of Appeal on May 26 and 28, 2015 [Docket Nos. 220, 221 and 223].  (*See* Appendices C, D and E.)

## III.  ARGUMENT AND AUTHORITIES

Appellees are entitled to dismissal of the instant appeal for the reasons set forth below.

### A.     The Collateral Order Doctrine Applies to Orders Denying Immunity From Suit.

8.     Under 28 U.S.C. §1291, the Courts of Appeal have jurisdiction over "final decisions" of the district courts.  Ordinarily, this section precludes review of

2

a district court's pretrial orders until appeal from the final judgment. *Sorey v. Kellett,* 849 F.2d 960, 961 (5th Cir. 1988). In *Cohen vs. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), however, the Supreme Court held that some district court decisions belong to "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Under this "collateral order doctrine," some decisions that otherwise would be interlocutory may be appealed as final decisions under §1291. *Sorey*, 849 F.2d at 961.

9.     Strict application of the requirements for a collateral order appeal is particularly important because, when a court identifies an order as an appealable, collateral one, it determines the appealability of all such orders. *See SEC v. Capital Consultants, LLC*, 453 F.3d 1166, 1171 (9th Cir. 2006). "The collateral order doctrine is not to be applied liberally. Rather, the doctrine is "extraordinarily limited in its application." *See Ozozee v. American Council on Gift Annuities,* 110 F.3d 1081 (5th Cir.), *judgment vacated on other grounds*, 522 U.S. 1011 (1997).

10.     The class of orders that are collaterally appealable is narrow. *Mohawk Industries v. Carpenter*, 558 U.S. 100, 113 (2009); *Ott v. City of Milwaukee,* 682 F.3d 552, 555 (7th Cir. 2012). In order to be collaterally appealable, the order must (i) conclusively determine the disputed question; (ii) resolve an important issue

3

separate from and collateral to the merits, and (iii) be effectively unreviewable on appeal from the final judgment. *Cohen*, 337 U.S. at 546-47; *Mohawk Industries,* 558 U.S. at 106. An order is effectively unreviewable if it protects a right that would be destroyed if not vindicated before trial. *See Mohawk Industries,* 558 U.S. at 107.

11. In applying the third criterion above, the U.S. Supreme Court and the Fifth Circuit have made clear that the right to appeal from the collateral order doctrine only applies to an immunity that accords "protection from trial" as distinguished from possible defense to liability. *See Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985); *Williams v. Collins*, 728 F.2d 721, 724, and 726 n. 7 (5th Cir. 1984).

12. In *Mitchell v. Forsyth,* 472 U.S. 511 (1985), Attorney General John Mitchell asserted both absolute governmental immunity and qualified governmental immunity against claims that he had authorized an unlawful wiretap. The Court of Appeals ruled that it had jurisdiction of Mitchell's appeal as to the claim of absolute governmental immunity, but denied jurisdiction as to the claim of qualified governmental immunity.

13. The Supreme Court examined the *Cohen* "collateral order" doctrine and noted that a "major characteristic" is that the order be one that "unless it can be reviewed before [the proceedings terminate], it can never be reviewed at all." *Id.*

4

(citing *Stack v. Boyle*, 342 U.S. 1, 12 (1952)).  Thus, the central issue concerning the Court was whether qualified governmental immunity is "an entitlement not to stand trial under certain circumstances." *Id.* at 525.

14.     Citing its own decision in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Court observed that unless a plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified governmental immunity is entitled to dismissal before the commencement of discovery. *Mitchell*, 472 U.S. at 525-26 (citing *Harlow*, 457 U.S. at 818)).  The Court found that qualified governmental immunity, to the extent it turns on an issue of law, is an immediately appealable, collateral order. *Id*. at 530-31.

**B.     Qualified Attorney Immunity Is Not An Immunity From Suit.**

15.     In the instant case, Appellants assert the defense of qualified attorney immunity, which is an affirmative defense under Texas law.  *See Santiago v. Mackie Wolf Zientz & Mann, P.C.,* No. 05-B-00620-CV, 2014 Tex. App. Lexis 9165 (Tex.App.—Dallas, Aug. 19, 2014, pet. filed)(mem. Op.); *Rhodes Colleges, Inc. v. Johnson,* No. 3:10-CV-0031-D, 2012 U.S. Dist. Lexis 24623 (N.D. Texas Feb. 27, 2012).  A party claiming qualified attorney immunity can move for summary judgment on that defense. *Santiago*, 2014 Tex.App. LEXIS 9165 at *4. The defendant must conclusively establish all elements of its affirmative defense in

order to obtain summary judgment. *Id*. at \*4-5. Qualified attorney immunity is therefore not true immunity from suit.

16. Appellees are not aware of any case in which an appeal was permitted on the basis of qualified attorney immunity prior to final judgment.

### C. Conclusion: The Instant Appeal Should Be Dismissed.

17. A collateral order is one that, among other things, would be effectively unreviewable on appeal from a final judgment. In the immunity context, this requirement is satisfied by a true immunity from suit, but not by an immunity, such as that alleged in the instant case, that is an affirmative defense to liability. The latter type of immunity is fully vindicable on appeal from the final judgment. The *Cohen* requirements for an immediately appealable, collateral order are not satisfied and the instant appeal should be dismissed for want of jurisdiction.

## IV. PRAYER FOR RELIEF

WHEREFORE, Appellees respectfully request that Appellants' appeal be dismissed for want of jurisdiction, and that Appellees have such other relief as is just.

1674822.6/SPA/23832/0101/062515

Respectfully submitted,

**STRASBURGER & PRICE, LLP**

Edward F. Valdespino
Texas State Bar No. 20424700
2301 Broadway
San Antonio, Texas 78215-115
Telephone:    (210) 250-6061
Facsimile:     (210) 258-2703

By:  ___/s/ P. Michael Jung_____
        P. Michael Jung

P. Michael Jung
Texas State Bar No. 11054600
**STRASBURGER & PRICE, LLP**
901 Main Street, Suite 4400
Dallas, Texas 75202

Robert M. O'Boyle
Texas State Bar No. 15165425
**STRASBURGER & PRICE, LLP**
720 Brazos Street, Suite 700
Austin, Texas 78701

Edward C. Snyder
Texas State Bar No. 00791699
Jesse R. Castillo
Texas State Bar No. 03986600
**CASTILLO SNYDER, P.C.**
300 Convent Street, Suite 1020
San Antonio, Texas 78205

Douglas J. Buncher
Texas State Bar No. 03342700
**NELIGAN FOLEY, LLP**
Republic Center
325 N. St. Paul, Suite 3600
Dallas, Texas 75201

**Attorneys for Plaintiffs-Appellees Samuel Troice, Pam Reed, and Punga Punga Financial, Limited, Individually and on Behalf of a Class of All Others Similarly Situated**

7

## CERTIFICATE OF CONFERENCE

The undersigned conferred with counsel for Appellants, who oppose the motion.

By:    */s/* P. Michael Jung
P. Michael Jung

## DECLARATION

The undersigned declares under penalty of perjury that the Orders and Notices of Appeal attached hereto as Appendices A through E are true and correct copies of the originals contained within the official record of the United States District Court.

By:    */s/* P. Michael Jung
P. Michael Jung

## CERTIFICATE REGARDING ELECTRONIC SUBMISSION

I hereby certify that:  (1) required privacy redactions have been made; (2) the electronic submission of this document is an exact copy of the corresponding paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

By:    */s/* P. Michael Jung
P. Michael Jung

1674822.6/SPA/23832/0101/062515

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2015, the undersigned electronically submitted the foregoing document with the Clerk of the United States Court of Appeals for the Fifth Circuit, using the electronic case filing system of the court. The undersigned hereby certifies that he has served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

By: _/s/ P. Michael Jung_____
      P. Michael Jung

1674822.6/SPA/23832/0101/062515

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SAMUEL TROICE, *et al.*,                      §
                                              §
          Plaintiffs,                         §
                                              §
v.                                            §          Civil Action No. 3:09-CV-1600-N
                                              §
PROSKAUER ROSE LLP, *et al.*,                 §
                                              §
          Defendants.                         §

## ORDER

  This Order addresses Defendant Chadbourne & Parke LLP's ("Chadbourne") motion

to dismiss [29]; Defendant Proskauer Rose LLP's ("Proskauer") motion to dismiss [31];

Defendant Thomas V. Sjoblom's motion to dismiss [36]; and Defendant Mauricio Alvarado's

motion to dismiss [44]. The Court grants in part and denies in part Defendants' motions.[1]

### THE PARTIES' DISPUTE

  This action is one of many arising from the Ponzi scheme perpetrated by R. Allen

Stanford, his associates, and various entities under his control (collectively, "Stanford").

Plaintiffs are a group of investors who purchased fraudulent certificates of deposit ("CDs")

issued by Stanford International Bank Limited ("SIBL"). They bring suit against

Chadbourne and Proskauer (collectively, "Law Firm Defendants"), two law firms that were

retained by Stanford to perform legal services. They allege Law Firm Defendants, through

---

  [1]The Court also denies Chadbourne and Proskauer's motion for leave to file a
response to Plaintiffs' supplemental briefing [147].

ORDER – PAGE 1

their employee Thomas Sjoblom and with the cooperation and assistance of Stanford's former general counsel, Mauricio Alvarado, conspired with Stanford to avoid regulation and detection, thereby extending the duration of Stanford's scheme.

The facts surrounding the Stanford Ponzi scheme are already well established.[2] According to Plaintiffs, Defendants' involvement began in 2005, approximately four years before Stanford's scheme collapsed. Faced with an SEC inquiry, Stanford hired Chadbourne to represent it in connection with the investigation. Plaintiffs allege Sjoblom, then a partner at Chadbourne, entered into a conspiracy with principles at Stanford, including Alvarado and Allen Stanford himself, to obstruct the SEC investigation from 2005 to 2009. As part of the conspiracy, Plaintiffs allege Sjoblom made a number of false statements to the SEC designed to slow the investigation and that he played a role in the destruction of evidence prior to an impending SEC inspection. Further, Plaintiffs allege that in 2009 Sjoblom, then a partner at Proskauer, assisted various principles at Stanford in giving false testimony to the SEC in a last ditch effort to stall the SEC investigation.

Plaintiffs brought this action on August 27, 2009. On October 21, 2011, the Court granted Defendants' motions to dismiss, holding that Plaintiffs' claims were precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). *See* Oct. 21, 2011 Order [96]. Given the Supreme Court's determination that the claims are not precluded by

---

[2]*See, e.g., Janvey v. Democratic Senatorial Campaign Comm.*, 712 F.3d 185, 188–89 (5th Cir. 2013).

ORDER – PAGE 2

SLUSA, *see Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058 (2014), the motions are again ripe for determination.

## I. THE LEGAL STANDARDS

### *A. Rule 12(b)(6)*

When faced with a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most

favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, "[a] court is permitted ... to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780. Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### *B. Rule 9(b)*

Defendants assert Plaintiffs' claims sound in fraud and must thus comply with Federal Rule of Civil Procedure 9(b), which requires parties alleging fraud or mistake to "state with

particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). However, "[b]y its clear terms, Rule 9(b) applies only to averments of fraud or mistake, not to averments of negligence, breach of fiduciary duty or non-fraudulent misstatement." *Tigue Inv. Co., Ltd. v. Chase Bank of Tex., N.A.*, 2004 WL 3170789, at *2 (N.D. Tex. 2004). Rule 9(b) may also apply "when fraudulent conduct is alleged to underlie a claim for which fraud is a possible – but not a necessary – element. In such cases, particularity is only required to the extent that a plaintiff in fact alleges fraud." *Id.* at *2. Finally, Rule 9(b) also applies to claims brought under Article 33 of the Texas Securities Act ("TSA"). *See Billitteri v. Sec. America, Inc.*, 2010 WL 6785484, at *4–5 (N.D. Tex. 2010) (concluding Rule 9(b) is appropriately applied to state securities law claims).

Pursuant to the above principles, Rule 9(b) does apply in some capacity to each of Plaintiffs' claims. However, Rule 9(b) does not apply to claims as a whole, but rather to the averments of fraud that support each claim. For instance, Plaintiffs must plead the underlying fraud actionable under the TSA with particularity, but they need not plead each element of the larger aiding and abetting claim with particularity. The Court thus applies Rule 9(b) to each averment of fraud underlying Plaintiffs' claims.[3]

---

[3]In the Fifth Circuit, a plaintiff must plead "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (alteration in original) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (internal quotation marks omitted)). In effect, Rule 9(b) requires a plaintiff to state "the who, what, when, where, and how" of alleged fraud. *Id.* at 179 (internal quotation marks omitted). "What constitutes 'particularity' will necessarily differ with the

## II. ATTORNEY IMMUNITY

Defendants assert at the threshold that they are wholly immune from suit under Texas's attorney immunity doctrine. Because Plaintiffs plead Defendants engaged in fraud and conspiracy to commit fraud, attorney immunity is no bar at this stage.

### A. Principles of Attorney Immunity

It is well settled in Texas that an attorney may not generally be held liable for conduct undertaken in the representation of a client. *See, e.g.*, *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 406 (Tex. App. – Houston [1st Dist.] 2005, pet. denied). The general rule is designed to encourage zealous legal representation that might be compromised if an attorney were subject to suit by a third-party. *See id.* at 405. The scope of the rule turns "on the type of conduct in which the attorney engages, rather than on whether the conduct was meritorious in the context of the underlying lawsuit." *Renfroe v. Jones & Associates*, 947 S.W.2d 285, 288 (Tex. App. – Fort Worth 1997, writ denied). Thus, an attorney is generally immune from suit for conduct that "require[s] the office, professional training, skill, and authority of an attorney[]." *Taco Bell Corp. v. Cracken*, 939 F. Supp. 528, 532 (N.D. Tex. 1996).

Despite the breadth with which the rule is often described, courts have carved out various exceptions. The Texas Supreme Court has recognized that "an attorney who

---

facts of each case." *Id.* (quoting *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)); *see also* Nov. 30, 2011 Order 12–13, *in SEC v. SIB*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009) (holding SEC's various allegations of fraud were sufficient to put defendants on notice such that they could prepare a defense).

personally steals goods or tells lies on a client's behalf may be liable for conversion or fraud in some cases." *Chu v. Hong*, 249 S.W.3d 441, 446 (Tex. 2008). More specifically, an attorney may be liable to a third party "if he knowingly commits a fraudulent act that injures a third person, or if he knowingly enters into a conspiracy to defraud a third person." *Likover v. Sunflower Terrace II, Ltd.*, 696 S.W.2d 468, 472 (Tex. App. – Houston [1st Dist.] 1985, no writ) (citing *Hennigan v. Harris Cnty.*, 593 S.W.2d 380 (Tex. Civ. App. – Waco 1979, no writ)); *see also Santiago v. Mackie Wolf Zientz & Mann, P.C.*, 2014 WL 4072131, at *3 (Tex. App. – Dallas 2014, pet. filed) (holding summary judgment based on attorney immunity should be denied if plaintiff asserts claims that arguably involve fraudulent conduct); *Toles v. Toles*, 113 S.W.3d 899, 912 (Tex. App. – Dallas 2003, no pet.) (reversing summary judgment for defendant based on attorney immunity where plaintiff asserted a claim that arguably involved fraudulent conduct); *Mendoza v. Fleming*, 41 S.W.3d 781, 787–88 (Tex. App. – Corpus Christi 2001, no pet.) (reversing grant of summary judgment based on attorney immunity where plaintiff alleged defendant filed a writ of garnishment with the wrongful motive of interfering with a judicial campaign).

Defendants attempt to distinguish this line of cases by arguing that the fraud exception to immunity applies only when the alleged conduct occurs outside the scope of an adversarial proceeding. *See* Proskauer's Reply 17 [64]. However, *Likover* and the other cases cited above provide no such qualification. The unfortunate reality of the case law surrounding attorney immunity is that the line between actionable conduct and conduct subject to immunity is a fine one. Articulations of the rule are at times broad with very little room for

exception, and at times considerably narrowed by language indicating that all a plaintiff must do to avoid immunity is assert a colorable claim for fraud. The Court also notes that to support dismissal at this stage, a successful attorney immunity defense must "appear[] clearly on the face of the pleadings." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).

The Court thus declines to dismiss Plaintiffs' claims based on attorney immunity. As will be discussed, Plaintiffs allege a viable conspiracy to commit fraud claim based on allegations that Sjoblom and Alvarado, aware of Stanford's underlying wrongdoing and illegality, agreed to help obscure its wrongdoing from the SEC in order to perpetuate Stanford's operation. Reading the complaint in a light most favorable to Plaintiffs, Plaintiffs at this stage make sufficient allegations concerning Defendants' fraudulent conduct to support application of an exception to the attorney immunity doctrine. Finding that the defense does not appear clearly on the face of the pleadings, the Court declines to dismiss Plaintiffs' claims under the attorney immunity doctrine.

The Law Firm Defendants assert a corollary argument that if Plaintiffs' allegations against Sjoblom overcome attorney immunity, then they necessarily eliminate Plaintiffs' claims for vicarious liability under *respondeat superior*. *See, e.g.*, Chadbourne's Mot. Dismiss 33–34. Vicarious liability under *respondeat superior* requires an employee to have acted (1) within the general authority given him; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed. *Williams v. United States*, 71 F.3d 502, 506 (5th Cir. 1995). Chadbourne argues that employers may not be held liable for unforeseeable actions involving serious criminal

activities or intentional or malicious actions. *See* Chadbourne's Mot. Dismiss 33 (citing

*Williams*, 71 F.3d at 506 n.10; *Millan v. Dean Witter Reynolds, Inc.*, 90 S.W.3d 760, 768

(Tex. App. – San Antonio 2002, pet. denied)). Sjoblom's alleged conduct is not so far

outside the scope of his employment that it was unforeseeable. Plaintiffs allege Sjoblom was

retained specifically to assist Stanford with the impending SEC investigation. While

Plaintiffs allege Sjoblom's conduct was tortious, fraudulent, and over-zealous, the Court

declines to find as a matter of law that it was unforeseeable given Sjoblom's background and

the task he was assigned. The fact that Plaintiffs plead around immunity is no necessary

impediment to their assertion of *respondeat superior*.

### III. PLAINTIFFS' TSA CLAIMS

Plaintiffs bring claims under the TSA for aiding and abetting (1) the sale of

unregistered securities; (2) the sale of securities by unregistered dealers; and (3) the sale of

securities through untruth or omission. Plaintiffs also bring a claim for conspiracy to violate

the TSA.

### A. *"Holder" Claims*

Defendants assert Plaintiffs' TSA claims must be dismissed because they are

noncognizable "holder" claims. By its own terms, the TSA applies only to sales of securities.

*See* TEX. REV. CIV. STAT. ANN. art. 581-33A (explaining that "[a] person who offers or sells

a security" in violation of the statute may be held liable). A number of courts have affirmed

that claims under the TSA must be based on a transaction in securities; i.e., a plaintiff may

not bring a claim alleging the defendant caused him to continue holding a previously

purchased security. *See In re Westcap Enters.*, 230 F.3d 717, 725–26 n.11 (5th Cir. 2000)
(holding the TSA applies only to sales); *In re Enron Corp. Sec., Derivative & "ERISA"
Litig.*, 490 F. Supp. 2d 784, 818 (S.D. Tex. 2007) (holding under both Texas statutory and
common law that "holder" claims at the least require direct interfacing between plaintiff and
defendant); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 2007 WL 789141, at *1
n.3 (S.D. Tex. 2007) (holding the TSA applies only to securities transactions). Based on this
authority, Defendants argue Plaintiffs fail to allege Defendants' involvement in securities
transactions.

Plaintiffs do, however, allege that they purchased CDs from Stanford. *See, e.g.*,
Second Am. Compl. ("SAC") ¶¶ 86, 97. Plaintiffs also assert that Defendants' actions
resulted in Stanford's continued ability to sell Plaintiffs securities until 2009. *Id.* ¶ 97.
Construing the complaint in a light most favorable to Plaintiffs, Plaintiffs implicitly allege
they purchased securities during the relevant time period. At the very least, when particular
Plaintiffs or putative class members purchased Stanford CDs is a fact issue that can be
resolved through summary judgment or at the class certification stage. The Court denies
dismissal of Plaintiffs' TSA claims on this basis.

### B. NSMIA Preemption

Defendants next contend Plaintiffs' claims based on the sale of unregistered securities
are preempted by the National Securities Markets Improvement Act of 1996, Pub. L. No.
104-290, 110 Stat. 3416 (1996) ("NSMIA"). Because Plaintiffs allege Stanford CDs were
sold as exempt securities under SEC Regulation D, Defendants assert they were "covered

securities" under the NSMIA and thus not actionable under state securities laws. *See* Proskauer's Mot. Dismiss 39–40. The Court has addressed and denied this argument for dismissal before. *See* December 5, 2014 Order 25 [64], *in Janvey v. Willis of Colorado Inc.*, Civil Action No. 3:13-CV-3980-N (N.D. Tex. filed Oct. 1, 2013) (citing *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 909 (6th Cir. 2007) (holding that to constitute covered securities, the securities must actually meet the conditions for exemption established by the SEC)).

Plaintiffs' failure to plead explicitly that the Stanford CDs did not qualify for the Regulation D exemption does not help Defendants' argument. Plaintiffs make a number of allegations concerning Stanford's CD sales that are inconsistent with offerings compliant with Regulation D. For instance, Plaintiffs allege Stanford sold over $7.2 billion in SIBL CDs by 2009, SAC ¶¶ 19, 49, and that Stanford Financial as a whole had over 30,000 customers, *id.* ¶ 14. To qualify for a Regulation D exemption, a given offering of securities must be made to no more than 35 purchasers. 17 C.F.R. § 230.506(b)(2)(i). Given Plaintiffs allegations concerning the scope of Stanford's CD sales, one can infer that the SIBL CDs did not qualify for the Regulation D exemption. The Court denies dismissal on this basis.

### C. *Plaintiffs Claim Based on Sales by Unregistered Dealers*

Proskauer argues Plaintiffs' claims based on the sale of securities by unregistered dealers must be dismissed because Plaintiffs fail to plead the underlying primary violation. Proskauer contends that SIBL was not required to register as a dealer under the TSA because it sold its securities through Stanford Group Company – Stanford's brokerage arm that was

ORDER – PAGE 11

registered as an investment company. *See* Proskuaer's Mot. Dismiss 40–42; SAC ¶ 36. However, Plaintiffs' expressly allege that SIBL was engaged in "selling securities from, by, and through Texas . . . ." SAC ¶ 101. This alone is enough to foreclose dismissal of Plaintiffs' claim on this argument.

### D. The TSA Statutes of Repose

Chadbourne asserts that certain of Plaintiffs' TSA claims are barred by applicable statutes of repose. Specifically, Chadbourne argues Plaintiffs' claims based on sales of unregistered securities and sales of securities by unregistered dealers are barred by article 581-33H(1)(a), which provides that such claims may be brought no later than three years after the relevant sale. TEX. REV. CIV. STAT. ANN. art. 581H(1)(a). Thus, to the extent Plaintiffs' claims for sales of unregistered securities and sales of securities by unregistered dealers are based on sales taking place prior to October 9, 2006, three years before Plaintiffs sued Chadbourne, those claims are barred, and the Court dismisses them with prejudice.[4]

Plaintiffs appear to contend that their claims for conspiracy to violate the TSA should revive claims that would otherwise be barred by the statute of repose. Ptfs.' Resp. 71–72 [50]. The Court has already considered and rejected this same argument. *See* February 4, 2015 Order 10–11 [123], *in The Official Stanford Investors Committee v. Greenberg Traurig, LLP*, Civil Action No. 3:12-CV-4641-N (N.D. Tex. filed Nov. 15, 2012). Accordingly,

---

[4]Alvarado also references the statutes of repose, but does not explicitly move for dismissal on that basis. *See* Alvarado's Mot. Dismiss 14. In any event, to the extent Plaintiffs rely on sales taking place prior to October 9, 2006 for their claims based on unregistered securities and dealers, those claims are also dismissed with prejudice.

ORDER – PAGE 12

because the TSA statutes of repose constitute absolute bars to suit, Plaintiffs' conspiracy claims and their assertion of the discovery rule do not serve to revive claims based on sales taking place outside the period established by the statutes of repose.

However, Chadbourne also appears to argue that it cannot be held liable for any TSA claims because Plaintiffs did not bring their case against Chadbourne until more than three years had passed since Sjoblom worked for Chadbourne. *See* Chadbourne's Mot. Dismiss 36 [29]. Yet, Sjoblom's departure from Chadbourne in 2006 does not preclude the assistance he provided while at Chadbourne from facilitating future actionable sales. *See, e.g.*, December 15, 2014 Order 13–14 [208], *in Troice v. Willis of Colorado, Inc.*, Civil Action No. 3:09-CV-1274-N (N.D. Tex. filed July 2, 2009). Thus, whether Sjoblom's actions while at Chadbourne contributed to future, actionable sales is a fact question that the Court declines to resolve at this stage.

### E. Plaintiffs Adequately Plead Their Claims

Defendants challenge the sufficiency of Plaintiffs' allegations concerning particular elements of the aiding and abetting violations of the TSA claims. In order to state a claim for aiding and abetting a violation of the TSA, a plaintiff must allege "(1) a primary violation of the securities laws, (2) that the aider and abettor ha[d] a general awareness of his role in the violation, (3) that he gave substantial assistance in the violation, and (4) that he intended to deceive the plaintiff or acted with reckless disregard for the truth of the primary violator's misrepresentations." *Dorsey*, 540 F.3d at 344.

*1. Plaintiffs Adequately Plead Primary Violations.* – In addition to the challenges raised to the underlying primary violations for sale of unregistered securities and sale by unregistered dealers, discussed above, Alvarado also argues Plaintiffs fail to plead with particularity the misrepresentations supporting their claims for sale through misrepresentation or omission. The Court disagrees.

Plaintiffs set forth a number of facts concerning the nature of the misrepresentations the Stanford entities made. *See, e.g.*, SAC ¶¶ 41 – 43. Plaintiffs also allege that through these tactics, Stanford sold approximately $7.2 billion in SIBL CDs. *Id.* ¶ 49. They allege this scheme lasted from the mid 1980s through February 2009. *Id.* ¶ 14. Given the size and duration of the scheme and the number of claims raised in this action, the Court finds this sufficient detail to meet the requirements of Rule 9(b). To the extent Alvarado attempts to use Rule 9(b) as a vehicle to determine at the Rule 12(b)(6) stage whether any Plaintiffs attempt to assert "holder" claims, *see* Alvarado's Mot. Dismiss 13–14 [44], the Court reiterates its holding above that such a determination is more properly considered at the summary judgment stage. Thus, the Court finds Plaintiffs sufficiently plead the underlying primary violations.

**2. Plaintiffs Adequately Plead Scienter.**[5] – To be held liable as an aider/abettor under the TSA, the defendant must have "rendered assistance in the face of a perceived risk that its assistance would facilitate untruthful or illegal activity by the primary violator." *Adderley*, 168 S.W.3d at 842 (citations omitted) (internal quotation marks omitted). "In order to perceive such a risk, the alleged aider must possess a general awareness that his role was part of an overall activity that is improper." *Id.* (citation omitted) (internal quotation marks omitted). Plaintiffs adequately allege facts suggesting each of the Defendants was aware of such a risk.

Plaintiffs allege that while at Chadbourne, Sjoblom traveled to Antigua to familiarize himself with Stanford's business operations. SAC ¶ 62. There, he learned that Stanford was marketing offshore CDs from its bank in Antigua, that Stanford was under investigation by the SEC, and that the chief regulator in Antigua was assisting Stanford in evading the SEC investigation. *Id.* Sjoblom thus "knew that Stanford was at the very least running an unregulated investment company mutual or hedge fund from his base in Houston, Texas in the guise of issuing CDs from a wholly owned bank in one of the most corrupt offshore tax and fraud havens in the Caribbean." *Id.* These allegations support a reasonable inference that Sjoblom was generally aware of Stanford's underlying wrongdoing while at

---

[5]The "general awareness" element and the "intent to deceive" element as individually outlined in *Dorsey* can be viewed as two halves of a single scienter requirement. The Texas Supreme Court held in *Sterling Trust Co. v. Adderley*, 168 S.W.3d 835 (Tex. 2005), that the TSA's "reckless disregard for the truth or the law" element required an aider to possess a "general awareness that his role was part of an overall activity that is improper." *Id.* at 842 (citation omitted) (internal quotation marks omitted). Thus, the Court considers the two elements together here.

Chadbourne, and he therefore carried this knowledge forward to his employment at Proskauer. *See, e.g.*, *Floyd v. Hefner*, 556 F. Supp. 2d 617, 655 (S.D. Tex. 2008) ("Texas follows the general rule that, except for knowledge obtained confidentially, the knowledge of the agent is the knowledge of the principal irrespective of its source or time of acquisition").

Although Plaintiffs make fewer specific allegations concerning Alvarado's knowledge of the scheme, the Court finds this an instance in which "special circumstances which, taken together with an officer's position may support a strong inference of scienter." *Dorsey*, 540 F.3d at 342 (citation omitted) (internal quotation marks omitted) (allowing an inference of scienter in case brought under the PSLRA). Plaintiffs allege Alvarado was employed as the general counsel for Stanford Financial. SAC ¶ 26. Plaintiffs also allege that like Sjoblom, Alvarado was privy to the inside relationship the Antiguan regulators had established with Stanford. *E.g.*, SAC ¶ 67. Finally, Plaintiffs attach to the SAC the plea agreement signed by James Davis [6-2] (the "Davis Plea Agreement"), a former Stanford executive, and refer to a number of the factual allegations pertaining to Alvarado contained in that document.[6] In particular, Plaintiffs refer to paragraph 17(ee) of the Davis Plea Agreement, which indicates Alvarado's participation in the agreement to have Sjoblom lie to the SEC on Stanford's behalf. Davis Plea Agreement ¶ 17(ee). Given Alvarado's position in the

---

[6]The Davis Plea Agreement does not refer to Alvarado by name, but Plaintiffs appear to contend Alvarado is "SFG Attorney A" as identified in the Davis Plea Agreement. *Compare* SAC ¶ 50 (identifying Alvarado as a co-conspirator involved in a fraudulent real estate transaction, *with* Davis Plea Agreement ¶¶ 17(cc) (detailing the same transaction and its participants).

ORDER – PAGE 16

Stanford enterprise, his exposure to corruption of Antiguan regulators, and the allegations contained in the Davis Plea Agreement, as attached to the SAC, the Court finds Plaintiffs have adequately alleged facts suggesting Alvarado's awareness of his role in an overall activity that was improper.

   *3. Plaintiffs Adequately Plead Substantial Assistance.* – Plaintiffs allege that while at Chadbourne, Sjoblom drafted a letter to the SEC that falsely asserted the SEC did not have jurisdiction to investigate Stanford in Antigua. SAC ¶¶ 63–64. Plaintiffs also allege Sjoblom was involved in devising policies implemented by Stanford Group Company designed to destroy evidence of Stanford's fraudulent conduct. *Id.* ¶ 69. Plaintiffs thus allege that Sjoblom, while at Chadbourne, provided assistance to the scheme that "enabled [Stanford] to continue to operate." *Goldstein v. Mortenson*, 113 S.W.3d 769, 777 (Tex. App. – Austin 2003, no pet.).

   Plaintiffs make similarly sufficient allegations concerning Sjoblom's time at Proskauer. For instance, Plaintiffs allege Sjoblom agreed to lie to the SEC concerning Allen Stanford's knowledge of the SIBL assets. SAC ¶¶ 74–75. Plaintiffs also allege that Sjoblom allowed perjury by allowing Laura Pendergest-Holt, a former Stanford executive, to go through with a presentation to the SEC that he knew was false. *Id.* ¶¶ 81–83. As with his letter to the SEC discussed above, this alleged conduct is of a nature that would have allowed Stanford to continue to operate and to impede the results of the SEC investigation that ultimately stopped the Stanford scheme. The Court finds this conduct sufficient to plead the element of substantial assistance.

ORDER – PAGE 17

Finally, as to Alvarado, Plaintiffs allege his involvement in assisting Sjoblom in crafting misleading responses to the SEC's inquiries. *E.g.*, *id.* ¶¶ 66–67. Plaintiffs also contend Alvarado participated in and agreed to have Sjoblom lie to the SEC. *See* Davis Plea Agreement ¶ 17(ee). Finally, Plaintiffs allege all Defendants were involved in the development of policies in Stanford's offices to destroy evidence of Stanford's misconduct. SAC ¶ 69. As with Sjoblom's alleged conduct, Plaintiffs plead Alvarado's actions were of a nature to prolong the SEC investigation and insulate Stanford's fraud from detection.

***4. The Court Declines to Dismiss Plaintiffs' Claims for Lack of Causation.*** – Defendants make various arguments concerning the SAC's lack of allegations supporting causation. Proskauer, for instance, argues Plaintiffs fail to allege any assistance it rendered to Stanford had a substantial nexus to Plaintiffs' injuries. Proskauer's Mot. Dismiss 31–32. However, in Texas proximate cause is typically a question of fact. *E.g.*, *Clark v. Waggoner*, 452 S.W.2d 437, 440 (Tex. 1970); *Ramey v. Collagen Corp.*, 821 S.W.2d 208, 212 (Tex. App. – Corpus Christi 1993, writ dism'd by agr.). Although "proximate cause may be established as a matter of law where the circumstances are such that reasonable minds cannot arrive at a different conclusion[,]" *First Assembly of God, Inc. v. Tex. Utilities Elec. Co.*, 52 S.W.3d 482, 492 (Tex. App. – Dallas 2001, no pet.), the Court declines to hold as such at this stage without the benefit of any factual development.

***5. Civil Conspiracy to Violate TSA.*** – Finally, the Court declines to hold that Texas does not recognize a claim for civil conspiracy to violate the TSA. The Court has previously addressed this argument and held that while there may be some ambiguity concerning the

availability of the claim, the proper course of action at the motion to dismiss stage is to assume it is cognizable. *See* Feb. 10, 2015 Order 17 [125], *in The Official Stanford Investors Committee v. Greenberg Traurig, LLP*, Civil Action No. 3:12-CV-4641-N (N.D. Tex. filed Nov. 15, 2012). Thus, Plaintiffs claims for conspiracy to violate the TSA may go forward.

### IV. PLAINTIFFS' AIDING AND ABETTING FRAUD CLAIMS

Plaintiff also assert claims for aiding and abetting/participation in a fraudulent scheme. Defendants move to dismiss on a number of grounds.

### A. The Court Declines to Hold Texas Does Not Recognize the Claim

Chadbourne argues Texas has never recognized a cause of action for aiding and abetting common law fraud. Chadbourne's Mot. Dismiss 23. This Court has previously addressed and rejected this argument, acknowledging that while the law is admittedly unclear, the Court assumes at this stage that the claim is cognizable under Texas law. *See, e.g.*, Dec. 17, 2014 Order 19 [114], *in The Official Stanford Investors Committee v. Greenberg Traurig, LLP*, Civil Action No. 3:12-CV-4641-N (N.D. Tex. filed Nov. 15, 2012). Accordingly, the Court declines to dismiss the claims on this ground.

### B. Plaintiffs Adequately Plead The Claims

In general, aiding and abetting liability requires (1) the commission of a tort by a primary violator; (2) knowledge of this tort on the part of the aider and abettor; and (3) substantial assistance by the aider and abetter in the achievement of the primary violation. *See, e.g.*, *In re Ramirez*, 413 B.R. 621, 629 (Bankr. S.D. Tex. 2009). Defendants argue

Plaintiffs fail to allege the requisite knowledge, intent, substantial assistance, and causation to support a claim for aiding and abetting fraud.

*1. Plaintiffs Adequately Plead the Underlying Fraud.* – Plaintiffs' aiding and abetting fraud claims are based on the primary fraud perpetrated by Allen Stanford on the investors. As discussed *supra* Subpart III.E.1, Plaintiffs set forth with particularity the various fraudulent conduct undertaken by Stanford and his associates. For the purposes of stating an underlying fraud to support secondary liability, the Court finds these allegations sufficient.

*2. Plaintiffs Adequately Allege Scienter.* – To state a claim for aiding and abetting fraud, Plaintiffs must allege facts supporting the conclusion that Defendants were aware of the underlying fraud perpetrated by Stanford. The Court reiterates its holding as to the scienter requirement for aiding and abetting TSA violations, discussed *supra* Subpart III.E.2. As discussed above, Plaintiffs' allegations support the reasonable inference that early in his representation of Stanford, Sjoblom knew of underlying improprieties regarding Stanford's sale of unregistered securities. Plaintiffs also sufficiently allege Alvarado's knowledge of the underlying improprieties. Accordingly, the SAC adequately raises the reasonable inference that both Alvarado and Sjoblom – and thus Chadbourne and Proskauer – knew of the underlying fraud.

*3. Plaintiffs Adequately Allege Substantial Assistance.* – Once again, the Court reiterates its determination as to the assistance element discussed above. *See supra* Subpart III.E.3. Plaintiffs allege Alvarado and Sjoblom rendered assistance to Stanford that

facilitated its continuation of the underlying wrongdoing. Plaintiffs adequately allege substantial assistance.

**4. The Court Declines to Dismiss Based on Causation.** – Finally, as above, the Court holds it inappropriate to dismiss at this stage for lack of causation. Because causation is typically a question of fact, the Court declines to resolve the issue as a matter of law at this stage. Accordingly, the Court denies Defendants' motions to dismiss Plaintiffs' claims for aiding and abetting/participation in fraud.

## V. PLAINTIFFS' CIVIL CONSPIRACY CLAIMS

Defendants also move to dismiss Plaintiffs' claims for civil conspiracy. In Texas, the elements of a claim for civil conspiracy are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996). The agreement may be tacit and can be alleged and proven by circumstantial evidence. "For a civil conspiracy to arise, the parties must be aware of the harm or wrongful conduct at the inception of the combination or agreement." *Triplex Comm'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995). Plaintiffs bring claims for conspiracy to commit fraud, theft of fiduciary property, breach of fiduciary duty, and violations of the TSA. SAC ¶ 110. Defendants raise a number of defenses to these claims.

### A. The Court Denies Dismissal of the Conspiracy Claims as Redundant

Chadbourne argues that the conspiracy claim may be dismissed as redundant of Plaintiffs' aiding and abetting claims. Chadbourne's Mot. Dismiss 23 (citing *In re Enron*

*Sec., Derivative & "ERISA" Litig.*, 2006 WL 3716669, at *8 n.7 (S.D. Tex. 2006)). The *In re Enron* decision relied on by Chadbourne does not cite any authority for its determination that the claims are inherently redundant of one another. Morover, additional authority cited by Chadbourne comes to no conclusion as to whether the claims are redundant. *See Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 n.7 (Tex. 2001). Accordingly, the Court declines to dismiss either claim as redundant.

### B. Plaintiffs Adequately Plead the Claims

*1. Plaintiffs Plead a Meeting of the Minds.* – Plaintiffs allege with particularity facts and circumstantial evidence that, when viewed through a lens favorable to Plaintiffs, raises a reasonable inference of a tacit agreement between Stanford and the Defendants to obstruct the SEC investigation into Stanford's wrongdoing.

As to Sjoblom, Chadbourne, and Proskauer, Plaintiffs allege Sjoblom, shortly after he was retained by Stanford, reviewed SIBL's investor disclosures and thereafter learned that Stanford was operating an investment company that was selling securities in the United States through a largely unregulated offshore bank. SAC ¶ 62. Plaintiffs also allege Sjoblom knew that Stanford was receiving inside information concerning the SEC investigation from Antiguan regulators. *Id.* ¶¶ 61–62. Plaintiffs then allege that Sjoblom took steps to frustrate the SEC investigation, such as providing false, misleading information concerning the SEC's jurisdiction over Stanford. *Id.* ¶ 63. The Court finds these allegations taken together are sufficient to plead a tacit meeting of the minds between Sjoblom and the Stanford entities to conceal Stanford's unlawful conduct.

As to Alvarado, beyond his employment as general counsel and thus his close proximity to Stanford, Plaintiffs make a number of specific allegations supporting his involvement in the conspiracy to evade regulatory scrutiny.  For instance, relying on the Davis Plea Agreement, Plaintiffs allege Alvarado's involvement in fraudulent accounting practices designed to prevent SIBL from falling below minimum capital requirements.  *Id.* ¶ 50; Davis Plea Agreement ¶ 17(cc).  Plaintiffs also allege Alvarado's knowledge of the cozy relationship between Stanford and the Antiguan regulators, and the regulators' willingness to pass inside information to Stanford concerning outside regulation.  *Id.* ¶ 66. As with Sjoblom, the Court finds these allegations sufficient to infer a tacit agreement between Alvarado and Stanford to hide Stanford's wrongdoing from regulators.

*2. Plaintiffs Adequately Plead Overt Acts in Furtherance of the Conspiracy.* – As to all Defendants, the Court holds the conduct discussed above, *see supra* Subpart III.E.3, suffices to satisfy this element of the conspiracy claim.  As discussed, Plaintiffs allege both Sjoblom, while at Chadbourne and Proskauer, and Alvarado engaged in conduct designed to conceal Stanford's underlying wrongful conduct and to delay the conclusion of the SEC investigation.

*3. Plaintiffs' Adequately Plead Proximate Cause.* – As discussed above, *see supra* Subpart III.E.4, the Court declines to dismiss the claim for lack of proximate cause at this stage.

*4. Statute of Limitations.* – Chadbourne also asserts that Plaintiffs' conspiracy claims are not timely filed.  "A statute of limitations may support dismissal pursuant to Rule

12(b)(6) when it is evident from a plaintiff's pleadings that the action is time-barred and the pleadings fail to set forth or raise some basis for tolling the statute. *Glover v. Raytheon Co.*, 2013 WL 5744361, at *3 (N.D. Tex. 2013). Plaintiffs invoke the discovery rule in this case. *See* SAC ¶ 96. The discovery rule tolls a statute of limitations "until the plaintiff knew or, by exercising reasonable diligence, should have known of the facts giving rise to a cause of action." *Barker v. Eckman*, 213 S.W.3d 306, 311–12 (Tex. 2006). Whether Plaintiffs exercised diligence in discovering their civil conspiracy claims is a fact question and the Court declines to determine the issue at this stage.

## VI. PLAINTIFFS' CLAIMS FOR NEGLIGENT RETENTION/NEGLIGENT SUPERVISION

Chadbourne and Proskauer move to dismiss Plaintiffs' claims for negligent retention/negligent supervision. To state a claim for negligent supervision, Plaintiffs must allege the Defendant law firms owed them a legal duty to supervise their employees; (2) the Defendant law firms breached that duty; and (3) the breach proximately caused Plaintiffs' injuries. *See Knight v. City Streets, L.L.C.*, 167 S.W.3d 580, 584 (Tex. App- Houston [14th Dist.] 2005, no pet.). Similarly, "[t]he basis of responsibility for negligent . . . retention is the employer's negligence in . . . retaining an incompetent employee who the employer knew or, in the exercise of ordinary care, should have known was incompetent or unfit, and thereby creating an unreasonable risk of harm to others." *Ogg v. Dillard's, Inc.*, 239 S.W.3d 409, 420 (Tex. App. – Dallas 2007, no pet.).

Because law firms ordinarily owe no duty of care to third-parties under Texas law, the Court dismisses Plaintiffs' negligent retention/negligent supervision claims. It is well

established in Texas that "an attorney owes a duty of care only to his or her client, not to

third parties who may have been damaged by the attorney's negligent representation of the

client." *Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex. 1996). Thus, claims sounding in legal

malpractice may only be asserted by an attorney's client. *Id.*; *see also First Nat. Bank of

Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 806–07 (5th Cir. 1998). Without this so

called "privity barrier," "clients would lose control over the attorney-client relationship and

attorneys would be subject to almost unlimited liability." *Barcelo*, 923 S.W.2d at 577.

After *Barcelo* was decided, the Texas Supreme Court decided *McCamish, Martin,

Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787 (Tex. 1999), which provides

context for analyzing this claim. In *McCamish*, the court held an attorney could be sued by

a third-party for negligent misrepresentation. *Id.* at 795. In distinguishing *Barcelo*, the court

noted that a claim for negligent misrepresentation may be brought only by a limited group

of third-parties who receive information from a lawyer. *Id.* at 793–94. The court thus found

that the potential for exposing lawyers to expansive liability to third-parties was minimal.

*Id.* The potential exposure to liability for negligent retention/negligent supervision claims

is considerably broader. The field of potential third-parties with viable negligent

retention/negligent supervision claims would include anyone who was injured by the

negligent conduct of an attorney and could make out a case that the attorney's employer

failed in its duty to supervise him. Thus, negligent supervision/negligent retention claims

would be an end-around to the bar on third-parties asserting malpractice claims, allowing the

third-party to sue the attorney's employer rather than the attorney himself. Thus, given the

ORDER – PAGE 25

concerns enumerated in *Barcelo*, the Court holds the Law Firm Defendants owed Plaintiffs no duty of care and thus cannot be held liable for negligent retention/negligent supervision.

## CONCLUSION

The Court dismisses with prejudice Plaintiffs' claims for aiding and abetting TSA violations against Chadbourne, Sjoblom, and Alvarado for the sale of unregistered securities and the sale of securities by unregistered dealers to the extent they are based on sales taking place prior to October 9, 2006. The Court dismisses with prejudice Plaintiffs' claims against Chadbourne and Proskauer for negligent retention/negligent supervision. Because any amended pleading raising these theories would of necessity suffer the same deficiency addressed here, the Court does not grant leave to amend. Defendants' motions to dismiss are denied in all other regards.

Signed March 4, 2015.

David C. Godbey
United States District Judge

ORDER – PAGE 26

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAMUEL TROICE, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-1600-N |
| | § | |
| PROSKAUER ROSE LLP, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

This Order addresses Defendant Chadbourne and Parke LLP's motion to amend/correct [186] and Defendant Proskauer Rose LLP's motion for reconsideration [187]. The Court denies both motions.

Signed May 15, 2015.

David C. Godbey
United States District Judge

ORDER – SOLO PAGE

# EXHIBIT
# C

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

SAMUEL TROICE, HORACIO MENDEZ,       :
ANNALISA MENDEZ, and       :
PUNGA PUNGA FINANCIAL, LTD.,       :
individually and on behalf of all others similarly       :
situated,       :
      :
      Plaintiffs,       :
      :    Civil Action No. 3:09-cv-01600-N
      - against -       :    Hon. David C. Godbey
      :
PROSKAUER ROSE LLP,       :
THOMAS V. SJOBLOM,       :
P. MAURICIO ALVARADO, and       :
CHADBOURNE & PARKE LLP,       :
      :
      Defendants.       :
      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

## NOTICE OF APPEAL

Pursuant to Federal Rule of Appellate Procedure 4(a)(4), notice is hereby given

that defendant Proskauer Rose LLP ("Proskauer") appeals to the United States Court of

Appeals for the Fifth Circuit from the Court's collateral order entered on March 4, 2015

(ECF No. 176), which denied Proskauer attorney qualified immunity, and the Court's

collateral order entered on May 15, 2015 (ECF No. 217), which denied Proskauer's

motion to reconsider that ruling pursuant to Federal Rule of Civil Procedure 59(e).

Dated: May 26, 2015

CARRINGTON, COLEMAN,
SLOMAN & BLUMENTHAL,
L.L.P.

DAVIS POLK & WARDWELL,
LLP

By: /s/ Neil R. Burger

Neil R. Burger
  Texas Bar No. 24036289
  nburger@ccsb.com
Bruce W. Collins
  Texas Bar No. 04604700
  bcollins@ccsb.com
901 Main Street, Suite 5500
Dallas, Texas 75202
Telephone: (214) 855-3000
Facsimile: (214) 855-1333

/s/ James P. Rouhandeh

James P. Rouhandeh*
  New York Bar No. 2211837
  rouhandeh@davispolk.com
Daniel J. Schwartz*
  New York Bar No. 4159430
  daniel.schwartz@davispolk.com
Jonathan K. Chang*
  New York Bar No. 4500484
  jonathan.chang@davispolk.com
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
* admitted *pro hac vice*

*Attorneys for Defendant Proskauer
Rose LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2015, I caused the foregoing document to be served on counsel of record for all parties of record via electronic mail or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ James P. Rouhandeh
James P. Rouhandeh

# EXHIBIT D

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SAMUEL TROICE, HORACIO MENDEZ, ANNALISA MENDEZ, and PUNGA PUNGA FINANCIAL, LTD., individually and on behalf of a class of all others similarly situated, | § § § § § § § | |
| Plaintiffs, | § § | |
| -against- | § § | CIVIL ACTION NO. 3:09-CV-1600-N Hon. David C. Godbey |
| PROSKAUER ROSE, LLP, THOMAS V. SJOBLOM, P. MAURICIO ALVARADO, and CHADBOURNE & PARKE LLP, | § § § § § | |
| Defendants. | § | |

## NOTICE OF APPEAL

NOTICE IS HEREBY GIVEN that defendant Chadbourne & Parke LLP ("Chadbourne") hereby appeals to the United States Court of Appeals for the Fifth Circuit from the collateral order entered on March 4, 2015 (ECF No. 176) denying Chadbourne attorney qualified immunity, and the collateral order entered on May 15, 2015 (ECF No. 217) denying Chadbourne's motion to alter or amend that ruling under Federal Rule of Civil Procedure 59(e).

On this date Chadbourne has paid the filing fee of $505.00 associated with a Notice of Appeal to the United States Court of Appeals for the Fifth Circuit.

Dated:  May 26, 2015                    Respectfully submitted,


                                        PAUL, WEISS, RIFKIND, WHARTON &
                                        GARRISON LLP

                                        By: /s/  Daniel J. Beller
                                        Daniel J. Beller*
                                                N.Y. Bar No. 1643741
                                        Daniel J. Leffell*
                                                N.Y. Bar No. 1883776
                                        William B. Michael*
                                                N.Y. Bar No. 4296356
                                        1285 Avenue of the Americas
                                        New York, New York 10019-6064
                                        Telephone:  (212) 373-3000
                                        Facsimile:  (212) 757-3990
                                        Email:  dbeller@paulweiss.com
                                        Email:  dleffell@paulweiss.com
                                        Email:  wmichael@paulweiss.com
                                        *Admitted *pro hac vice*

                                                -and-

                                        VINSON & ELKINS LLP

                                        By: /s/  Harry M. Reasoner
                                        Harry M. Reasoner
                                                T.X. Bar No. 16642000
                                        1001 Fannin Street, Suite 2500
                                        Houston, Texas 77002-6760
                                        Telephone:  (713) 758-2222
                                        Facsimile:  (713) 615-5173
                                        E-mail:  hreasoner@velaw.com

                                        William D. Sims, Jr.
                                                T.X. Bar No. 18429500
                                        2001 Ross Avenue, Suite 3700
                                        Dallas, Texas 75201-2975
                                        Telephone:  (214) 220-7700
                                        Facsimile:  (214) 220-7716
                                        E-mail:  bsims@velaw.com

                                        *ATTORNEYS FOR DEFENDANT*
                                        *CHADBOURNE & PARKE LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2015, a true and correct copy of the foregoing document was served on all counsel of record in compliance with Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.1(d).


_____ */s/ Daniel J. Beller* _____
Daniel J. Beller

**EXHIBIT E**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SAMUEL TROICE, HORACIO MENDEZ, ANNALISA MENDEZ, and PUNGA PUNGA FINANCIAL, LTD., individually and on behalf of a class of all others similarly situated, | § § § § § § § | |
| Plaintiffs, | § | |
| vs. | § § | CIVIL ACTION NO. 3:09-CV-1600-N Hon. David C. Godbey |
| | § | |
| PROSKAUER ROSE, LLP, THOMAS V. SJOBLOM, P. MAURICIO ALVARADO, and CHADBOURNE & PARKE LLP, | § § § § § | |
| Defendants. | § | |

## NOTICE OF APPEAL

NOTICE IS HEREBY GIVEN that Defendant Thomas V. Sjoblom ("Sjoblom") hereby appeals to the United States Court of Appeals for the Fifth Circuit from the Court's collateral order entered on March 4, 2015 (ECF No. 176), which denied Sjoblom attorney qualified immunity, and the Court's collateral order entered on May 15, 2015 (ECF No. 217), which denied Sjoblom's Rule 59(e) Motion for Reconsideration and Joinder in Defendant Chadbourne & Parke LLP's Motion to Alter or Amend that ruling under Federal Rule of Civil Procedure 59(e).

Dated:  May 28, 2015

Respectfully submitted,

FISH & RICHARDSON P.C.

/s/ William B. Mateja
William B. Mateja
Texas Bar No. 13185350
mateja@fr.com
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone:  (214) 747-5070
Facsimile:  (214) 747-2091

-and-

McKENNA LONG & ALDRIDGE LLP

/s/ Joshua R. Hochberg
Joshua R. Hochberg (Admitted Pro Hac Vice)
jhochberg@mckennalong.com
Christina M. Carroll (Admitted Pro Hac Vice)
ccarroll@mckennalong.com
1900 K Street NW
Washington, DC 20006-1108
Telephone:  (202) 496-7400
Facsimile:  (202) 496-7756

*Attorneys for Defendant Thomas V. Sjoblom*

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2015, a true and correct copy of the foregoing document

was served on all counsel of record in compliance with Federal Rule of Civil Procedure 5(b)(2).

/s/ William B. Mateja
William B. Mateja

2