# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

SAMUEL TROICE; PUNGA PUNGA
FINANCIAL, LIMITED, individually and on
behalf of a class of all others similarly situated;
PAM REED,

      Plaintiffs-Appellees,

      - against -

PROSKAUER ROSE, L.L.P.; CHADBOURNE
AND PARKE, LIMITED LIABILITY
PARTNERSHIP; THOMAS V. SJOBLOM,

      Defendants-Appellants.

Appeal No. 15-10500

---

## DEFENDANTS-APPELLANTS' OPPOSITION TO
## PLAINTIFFS-APPELLEES' MOTION TO DISMISS
## APPEAL FOR WANT OF JURISDICTION

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certify that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Defendant-appellant Proskauer Rose LLP, a law firm, is a limited liability partnership with no parent company.  No entity of any kind has a 10 percent or greater ownership interest in Proskauer Rose LLP.  Defendant-appellant Chadbourne & Parke LLP, a law firm, is a limited liability partnership with no parent company.  No entity of any kind has a 10 percent or greater ownership interest in Chadbourne & Parke LLP.

**Plaintiffs-Appellees:**

Samuel Troice

Punga Punga Financial, Ltd.

Pam Reed

**Defendants-Appellants:**

Proskauer Rose LLP

Chadbourne & Parke LLP

Thomas V. Sjoblom

**Other Interested Parties:**

Proskauer Rose LLP's professional liability insurers

Chadbourne & Parke LLP's professional liability insurers

Horacio Mendez

Annalisa Mendez

Isaac Green

P. Mauricio Alvarado

Persons who purchased certificates of deposit issued by Stanford International Bank Ltd. ("SIB") and/or otherwise maintained investment accounts with SIB

Official Stanford Investors Committee

Ralph S. Janvey, Receiver

**Counsel for Plaintiffs-Appellees:**

Edward C. Snyder
CASTILLO SNYDER, P.C.
Bank of America Plaza, Suite 1020
300 Convent Street
San Antonio, TX 78205
Telephone:  (210) 630-4200
Facsimile:  (210) 630-4210
*Attorneys for Samuel Troice, et al.*

Edward F. Valdespino
Judith R. Blakeway
STRASBURGER & PRICE, LLP
2301 Broadway Street
San Antonio, TX 78215
Telephone:  (210) 250-6000
Facsimile:  (210) 250-6100
*Attorneys for Samuel Troice, et al.*

P. Michael Jung
STRASBURGER & PRICE, LLP
901 Main Street, Suite 4400
Dallas, TX 75202
Telephone:  (214) 651-4724
Facsimile:  (214) 659-4022
*Attorneys for Samuel Troice, et al.*

Douglas J. Buncher
NELIGAN FOLEY, LLP
325 N. St. Paul Street, Suite 3600
Dallas, TX 75201
Telephone:  (214) 840-5300
Facsimile:  (214) 840-5301
*Attorneys for Samuel Troice, et al.*

## Counsel for Defendants-Appellants:

James P. Rouhandeh
Daniel J. Schwartz
Jonathan K. Chang
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5581
*Attorneys for Proskauer Rose LLP*

Bruce W. Collins
Neil R. Burger
CARRINGTON, COLEMAN, SLOMAN & BLUMENTHAL, LLP
901 Main Street, Suite 5500
Dallas, TX 75202
Telephone:  (214) 855-3000
Facsimile:  (214) 855-1333
*Attorneys for Proskauer Rose LLP*

Daniel J. Beller
Daniel J. Leffell
William B. Michael
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
*Attorneys for Chadbourne & Parke LLP*

Harry M. Reasoner
William D. Sims, Jr.
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, TX 75201-2975
Telephone:  (214) 220-7700
Facsimile:  (214) 220-7716
*Attorneys for Chadbourne & Parke LLP*

Joshua R. Hochberg
Christina M. Carroll
DENTONS US LLP
1900 K Street NW
Washington, D.C. 20006
Telephone:  (202) 496-7500
Facsimile:  (202) 496-7756
*Attorneys for Thomas V. Sjoblom*

William B. Mateja
FISH & RICHARDSON, P.C.
1717 Main Street, Suite 5000
Bank One Center
Dallas, TX 75201
Telephone:  (214) 747-5070
Facsimile:  (214) 747-2091
*Attorneys for Thomas V. Sjoblom*

Dated:  July 8, 2015                          Respectfully submitted,

DAVIS POLK & WARDWELL LLP

By:   /s/ James P. Rouhandeh
James P. Rouhandeh
Daniel J. Schwartz
Jonathan K. Chang

450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800

- and -

CARRINGTON, COLEMAN, SLOMAN
& BLUMENTHAL, LLP

By:   /s/ Bruce W. Collins
Bruce W. Collins
Neil R. Burger

901 Main Street, Suite 5500
Dallas, Texas 75202
Telephone:  (214) 855-3000
Facsimile:  (214) 855-1333

*Attorneys for Defendant-Appellant*
*Proskauer Rose LLP*

v

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP

By:   /s/ Daniel J. Beller
Daniel J. Beller
Daniel J. Leffell
William B. Michael

1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

- and -

VINSON & ELKINS LLP

By:   /s/ Harry M. Reasoner
Harry M. Reasoner
William D. Sims, Jr.

2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Telephone:  (214) 220-7700
Facsimile:  (214) 220-7716

*Attorneys for Defendant-Appellant*
*Chadbourne & Parke LLP*

DENTONS US LLP

By:   /s/ Joshua R. Hochberg
Joshua R. Hochberg
Christina M. Carroll

1900 K Street NW
Washington, D.C. 20006
Telephone:  (202) 496-7500
Facsimile:  (202) 496-7756

vi

- and -

FISH & RICHARDSON P.C.

By:  /s/ William B. Mateja
William B. Mateja

1717 Main Street, Suite 500
Dallas, Texas 75201
Telephone:  (214) 747-5070
Facsimile:  (214) 747-2091

*Attorneys for Defendant-Appellant
Thomas V. Sjoblom*

# **TABLE OF CONTENTS**

<span style="float:right">P<span style="font-variant:small-caps">AGE</span></span>

CERTIFICATE OF INTERESTED PERSONS ........................................................i

TABLE OF CONTENTS........................................................................ viii

TABLE OF AUTHORITIES ...................................................................ix

SUMMARY OF ARGUMENT ...............................................................1

FACTUAL BACKGROUND .................................................................3

PROCEDURAL HISTORY....................................................................6

ARGUMENT .......................................................................................8

    This Court Has Jurisdiction under the Collateral Order Doctrine..................8

        I.    Attorney Immunity Is an Immunity from Suit.........................11

        II.   The Fact that Attorney Immunity Is an Affirmative Defense Is Irrelevant ..................................................................15

        III.  This Court Has Jurisdiction to Hear This Appeal Now............17

CONCLUSION ...................................................................................19

# TABLE OF AUTHORITIES

PAGE

Alpert v. Crain, Caton & James, P.C.,
    178 S.W.3d 398 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) .........13, 17

Anderson v. Creighton,
    483 U.S. 635 (1987)............................................................................................18

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)......................................................................................2, 17

Behrens v. Pelletier,
    516 U.S. 299 (1996)....................................................................................10, 17

B.K. v. Cox,
    116 S.W.3d 351 (Tex. App.—Houston [14th Dist.] 2003, no pet.) .............12, 16

Bradt v. West,
    892 S.W.2d 56 (Tex. App.—Houston [1st Dist.] 1994, writ denied)...........15, 18

Brown v. Miller,
    519 F.3d 231 (5th Cir. 2008) ..............................................................................11

Butler v. Lilly,
    533 S.W.2d 130 (Tex. App.—Houston [1st Dist.] 1976, writ dism'd) ............... 13

Campbell v. Mortg. Elec. Registration Sys., Inc.,
    No. 03-11-00429-CV, 2012 WL 1839357
    (Tex. App.—Austin May 18, 2012, pet. denied)................................................14

Cantey Hanger, LLP v. Byrd,
    --- S.W.3d ----, No. 13-0861, 2015 WL 3976267
    (Tex. June 26, 2015)....................................................................................passim

Cantu v. Rocha,
    77 F.3d 795 (5th Cir. 1996) ..................................................................................9

PAGE

City of Lancaster v. Chambers,
    883 S.W.2d 650 (Tex. 1994) ...........................................................................16

Colston v. Barnhart,
    130 F.3d 96 (5th Cir. 1997) ...........................................................................10

Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.,
    No. 01-06-00696-CV, 2008 WL 746548
    (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied)..........................14

Easton v. Phelan,
    No. 01-10-01067-CV, 2012 WL 1650024
    (Tex. App.—Houston [1st Dist.] May 10, 2012, no pet.) ...................................17

FinServ Cas. Corp. v. Settlement Funding, LLC,
    724 F. Supp. 2d 662 (S.D. Tex. 2010)....................................................7, 14, 17

Gaia Envtl., Inc. v. Galbraith,
    451 S.W.3d 398 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).............13

Guthrie v. Buckley,
    246 F. Supp. 2d 589 (E.D. Tex. 2003)...............................................................15

Guzder v. Haynes & Boone, LLP,
    No. 01-13-00985-CV, 2015 WL 3423731
    (Tex. App.—Houston [1st Dist.] May 28, 2015, no pet. h.)..................10, 17, 18

Harlow v. Fitzgerald,
    457 U.S. 800 (1982)..........................................................................................11

Henry v. Lake Charles Am. Press L.L.C.,
    566 F.3d 164 (5th Cir. 2009) .................................................................8, 10, 11

Hunter v. Bryant,
    502 U.S. 224 (1991)..........................................................................................17

Jenevein v. Friedman,
    114 S.W.3d 743 (Tex. App.—Dallas 2003, no pet.) .........................................13

PAGE

McCampbell v. KMPG Peat Marwick,
    982 F. Supp. 445 (N.D. Tex. 1997) ...................................................15

Michels v. Zeifman,
    No. 03-08-00287-CV, 2009 WL 349167
    (Tex. App.—Austin Feb. 12, 2009, pet. denied) ...............................15

Miller v. Curry,
    625 S.W.2d 84 (Tex. App.—Fort Worth 1981, writ ref'd n.r.e.)........................12

Miller v. Stonehenge/Fasa-Texas, JDC, L.P.,
    993 F. Supp. 461 (N.D. Tex. 1998) ...................................................15

Mitchell v. Chapman,
    10 S.W.3d 810 (Tex. App.—Dallas 2000, pet. denied)......................................18

Mitchell v. Forsyth,
    472 U.S. 511 (1985).........................................................................1, 9, 11

Ortega v. Young Again Prods., Inc.,
    Civ. No. H-12-0001, 2012 WL 1709714 (S.D. Tex. May 15, 2012),
    aff'd, 548 F. App'x 108 (5th Cir. 2013) ...........................................17

Pasco ex rel. Pasco v. Knoblauch,
    566 F.3d 572 (5th Cir. 2009) .........................................................7, 16

Rojas v. Wells Fargo Bank, N.A.,
    571 F. App'x 274 (5th Cir. 2014) ...................................................2, 14

Shanks v. AlliedSignal, Inc.,
    169 F.3d 988 (5th Cir. 1999) ...............................................1, 9, 13, 17

Sorey v. Kellett,
    849 F.2d 960 (5th Cir. 1988) ...................................................passim

Spencer v. Hughes Watters Askanase, LLP,
    No. 5:15-cv-00233, 2015 WL 3651594 (W.D. Tex. June 11, 2015) .................14

PAGE

Taco Bell Corp. v. Cracken,
    939 F. Supp. 528 (N.D. Tex. 1996) ....................................................................15

In re Walston,
    No. 10-05-00193-CV, 2007 WL 1378512
    (Tex. App.—Waco May 9, 2007, pet. denied) ...................................................14

Defendants-appellants Proskauer Rose LLP ("Proskauer"), Chadbourne & Parke LLP ("Chadbourne"), and Thomas V. Sjoblom ("Sjoblom," and, together with Proskauer and Chadbourne, "Appellants"), by and through their undersigned counsel, submit this brief in opposition to the motion of plaintiffs-appellees Samuel Troice, Pam Reed, and Punga Punga Financial, Ltd. (collectively, "Appellees") to dismiss Appellants' appeals for want of jurisdiction.

## SUMMARY OF ARGUMENT

The collateral order doctrine permits an immediate appeal from the denial of a motion to dismiss based on an immunity from suit.  Mitchell v. Forsyth, 472 U.S. 511, 524-25 (1985); Shanks v. AlliedSignal, Inc., 169 F.3d 988, 991 (5th Cir. 1999). This is such an appeal.

Texas's attorney immunity doctrine protects attorneys from suits by non-clients.  It is designed to ensure that attorneys may vigorously represent their clients without fear of facing trial and the associated burdens of litigation initiated by non-clients.  That doctrine bars this action because Appellees, investors in CDs issued by Stanford International Bank ("SIB"), assert claims based on alleged acts undertaken by Appellants while acting as lawyers representing Stanford Financial Group ("Stanford Financial") and its affiliates in connection with an SEC investigation.

The District Court recognized that "an attorney is generally immune from suit" by non-clients such as Appellees, but declined to dismiss Appellees' claims

based on an asserted "fraud exception" to attorney immunity. (Appellees' Mot., Ex. A (Order) at 8.) The Texas Supreme Court has since clarified that the "fraud exception" does not exist. The District Court's Order is immediately appealable under the collateral order doctrine because it denied Appellants of their right to be free from "the concerns of litigation, including . . . disruptive discovery." Ashcroft v. Iqbal, 556 U.S. 662, 685 (2009) (quotation marks omitted).

Despite Appellees' unsupported arguments, there can be no serious doubt that attorney immunity wholly protects attorneys from "the concerns of litigation." Id. As the Texas Supreme Court recently explained, attorney immunity is afforded "to avoid the inevitable conflict that would arise if [attorneys] were 'forced constantly to balance [their] own potential exposure against [their] client's best interest.'" Cantey Hanger, LLP v. Byrd, --- S.W.3d ----, No. 13-0861, 2015 WL 3976267, at *5 (Tex. June 26, 2015) (citation omitted). If non-clients could sue attorneys and subject them to the burdens of civil litigation—as Appellees have tried to do here—attorneys would have no choice but to balance their own interests against their clients' interests. For that reason, as numerous courts—including this Court—have recognized, attorneys in Texas are "immune from suits [by non-clients] . . . aris[ing] out of the duties involved in representing a client." Rojas v. Wells Fargo Bank, N.A., 571 F. App'x 274, 278 (5th Cir. 2014) (emphasis added).

The sole basis for Appellees' motion is that attorney immunity is an affirmative defense for which defendants bear the burden of proof. But this proves nothing. Most, if not all, immunities—including those which Appellees acknowledge are subject to immediate appeal—are also affirmative defenses. The policies underlying the immunity are what matter, and those policies confirm that attorney immunity—much like other immunities this Court has deemed subject to immediate appeal under the collateral order doctrine—is an immunity from suit that protects attorneys such as Appellants from the burdens of civil litigation.

Because attorney immunity is an "immunity from suit," the District Court's ruling denying immunity is an immediately appealable collateral order. Holding otherwise would defeat the purpose of Texas's attorney immunity doctrine. Accordingly, Appellees' motion to dismiss should be denied.

## FACTUAL BACKGROUND

Appellees' lawsuit is based on the theory that Sjoblom—a former partner of Proskauer and Chadbourne—conspired with R. Allen Stanford and others to help Stanford Financial and SIB evade SEC enforcement. (Ex. A (true and correct copy of Appellees' Second Amended Class Action Complaint on file with the District Court) ¶ 60.) Appellees' complaint alleges that Sjoblom did four things over a four-year period that supposedly obstructed the SEC's investigation of Stanford. All of

these alleged actions occurred while Sjoblom was acting as "outside counsel to represent the interests of Stanford Financial and SIB in the SEC investigation."  (Id.)

First, Appellees allege that in October 2005, Sjoblom (while at Chadbourne) sent a letter to the SEC "in which he argued that the SEC did not have jurisdiction over Stanford Financial's [certificates of deposit ("CDs")] sales program because the CDs did not constitute securities under U.S. law."  (Id. ¶ 63.)  Appellees allege that at the time Sjoblom sent this letter, he knew that "the SIB CDs more than likely constituted securities under U.S. law."  (Id. ¶ 65.)

Second, Appellees allege that in late September 2006, Sjoblom (then at Proskauer) made false representations to the SEC during the course of its investigation by stating that "he 'had heard through the grapevine'" that the SEC had not provided Antigua's banking regulator with a proper document request concerning SIB; that the SEC "should 'go to Antigua' to review the SIB examination reports"; that, in conducting its investigation, "the SEC had 'no basis' to request documents regarding SIB's investment portfolio from SIB'"; that he "found SIB to be credible in all their business dealings"; and that SIB was an "'incredible institution.'"  (Id. ¶ 68.)

Third, Appellees allege that in January 2009, Sjoblom made purportedly untrue statements to SEC Enforcement Division lawyers in the course of scheduling depositions for Stanford (Stanford Financial's chief executive officer), James Davis

4

(Stanford Financial's chief financial officer) and Laura Pendergest-Holt (Stanford Financial's chief investment officer), whom the SEC had subpoenaed to testify about SIB's portfolio.  (Id. ¶¶ 73, 75.)  Specifically, Sjoblom allegedly told SEC attorneys that Pendergest-Holt and Juan Rodriguez Tolentino (SIB's president) "were . . . 'better people [than Stanford and Davis] to explain the details' about SIB's entire portfolio" because Stanford and Davis "did not 'micro-manage' the portfolio."  (Id. ¶¶ 75-76 (emphasis omitted).)  Appellees also allege that Sjoblom told the SEC that SIB was "not a criminal enterprise, and that all assets are there." (Id. ¶ 75.)  According to Appellees, Sjoblom's statements were untrue because Sjoblom knew that Stanford and Davis were the only people "in a position to discuss the assets in [SIB's] Tier III portfolio" at their SEC depositions.  (Id. ¶ 74.)

Fourth, Appellees allege that, while representing Pendergest-Holt in her capacity as an executive of Stanford Financial during her sworn SEC testimony on February 10, 2009, Sjoblom failed to correct Pendergest-Holt's alleged "lies" regarding her preparation for her testimony and her knowledge of the Tier III assets. (Id. ¶ 83.)  Appellees also allege that Sjoblom "actively suborned Pendergest-Holt's perjury . . . by improperly recasting [a] question" about whether anyone other than Sjoblom was present during her meetings to prepare for her testimony "to narrow it to 'when we were preparing last night, was there a third person present?'"  (Id.)

According to the complaint, Sjoblom first learned on February 5, 2009 that the composition and performance of SIB's investment portfolio had been misrepresented to investors.  (Id. ¶¶ 80-81.)  On February 11, 2009—one day after Pendergest-Holt's testimony—Sjoblom and Proskauer withdrew from representing Stanford Financial and, on February 13, they disaffirmed "all prior oral and written representations" to the SEC.[1]  (Id. ¶ 84 (quotation marks omitted).)

## PROCEDURAL HISTORY

Proskauer, Chadbourne, and Sjoblom each moved to dismiss Appellees' complaint, arguing, among other things, that Appellants are immune from suit by non-clients such as Appellees because the complained-of conduct occurred in connection with Sjoblom's representation of Stanford Financial as outside litigation counsel in an SEC investigation.  (Ex. B (true and correct copy of the docket for the action Troice, et al. v. Proskauer Rose LLP, et al., No. 3:09-cv-01600-N-BG in the District Court) at 186-87.)  Under Texas's attorney immunity doctrine, Appellants are immune from suit by non-clients because Sjoblom's actions—responding to requests for information by regulators investigating his client for possible violations of the securities laws (Ex. A ¶ 67), responding to SEC investigatory subpoenas (id. ¶¶ 73, 75-76), preparing witnesses to present sworn testimony before the SEC (id. ¶¶

---

[1] The complaint incorrectly states the dates on which Sjoblom and Proskauer withdrew and disaffirmed all prior representations, but the precise dates are immaterial for purposes of Appellants' appeals.

74, 77-78, 80-82), and meeting with SEC Enforcement Division attorneys to discuss the identities of witnesses and the dates of their testimony (id. ¶¶ 75-76 )—all required "the office, professional training, skill, and authority of an attorney," FinServ Cas. Corp. v. Settlement Funding, LLC, 724 F. Supp. 2d 662, 671 (S.D. Tex. 2010) (quotation marks omitted).

The District Court acknowledged that, under Texas law, "an attorney is generally immune from suit for" such conduct, but "decline[d] to dismiss [Appellees'] claims under the attorney immunity doctrine" on the grounds that the complaint supported application of a "fraud exception" to attorney immunity that some courts had recognized.  (Appellees' Mot., Ex. A at 8.)

Appellants timely moved for reconsideration under Federal Rule of Civil Procedure 59(e).  (Ex. B at 202.)  The District Court denied Appellants' motions for reconsideration on May 15, 2015 (Appellees' Mot., Ex. B (Order)), and Appellants timely appealed to this Court (see Appellees' Mot., Exs. C, D, and E).  On June 24, 2015, this Court directed Appellants to file their opening briefs by August 3, 2015. The next day, Appellees moved to dismiss Appellants' appeals for want of jurisdiction.[2]

---

[2] Although it is clear that this Court has jurisdiction to review the District Court's ruling, the Court can defer ruling on Appellees' motion until merits briefing is completed.  See, e.g., Pasco ex rel. Pasco v. Knoblauch, 566 F.3d 572, 577 n.3 (5th Cir. 2009) (deciding motion to dismiss in connection with the merits).

On June 26, 2015, the Texas Supreme Court decided <u>Cantey Hanger, LLP v.</u> <u>Byrd</u>, holding that the "fraud exception"—on which the District Court relied in denying Appellants' motions to dismiss based on attorney immunity—does not exist: "Fraud is not an exception to attorney immunity." 2015 WL 3976267, at *5. As the Texas Supreme Court explained, "a general fraud exception would significantly undercut the defense. . . . Merely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client representation or render it 'foreign to the duties of an attorney.'" <u>Id.</u> (citations omitted); <u>see also</u> <u>id.</u> at *9 n.2 (Green, J., dissenting) ("I agree with the Court's holding that there is no 'fraud exception' to litigation immunity.").

## ARGUMENT

### This Court Has Jurisdiction under the Collateral Order Doctrine

Under controlling precedent from the Supreme Court and this Court, the District Court's Order denying Appellants' motions to dismiss is an immediately appealable collateral order because it deprives Appellants of an immunity from suit. The collateral order doctrine permits immediate appeals of interlocutory orders that "(1) conclusively determine [a] disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) [would] be effectively unreviewable on appeal from a final judgment." <u>Henry v. Lake Charles Am. Press,</u> <u>L.L.C.</u>, 566 F.3d 164, 171 (5th Cir. 2009) (citation omitted).

In <u>Mitchell v. Forsyth</u>, 472 U.S. 511 (1985), the Supreme Court held that "[t]he denial of a defendant's motion for dismissal . . . on the ground of qualified immunity easily meets the[] requirements" of the collateral order doctrine. <u>Id.</u> at 527. <u>Mitchell</u> involved federal qualified immunity for government officials. Such immunity, the Court held, confers "an entitlement not to stand trial or face the other burdens of litigation" and thus would be "effectively lost" if the case were allowed to proceed. <u>Id.</u> at 526. Since <u>Mitchell</u> was decided, this Court has held repeatedly that the denial of an immunity from suit—whether arising under state law or otherwise—is an immediately appealable collateral order. <u>See, e.g.</u>, <u>Shanks</u>, 169 F.3d at 992 (jurisdiction to immediately review order denying Texas immunity for "communications made in the context of judicial, quasi-judicial, or legislative proceedings"); <u>Cantu v. Rocha</u>, 77 F.3d 795, 803-04 (5th Cir. 1996) (jurisdiction to immediately review order denying official immunity arising under Texas law); <u>Sorey v. Kellett</u>, 849 F.2d 960, 962-63 (5th Cir. 1988) (jurisdiction to immediately review order denying official immunity arising under Mississippi law). Thus, as Appellees acknowledge, this Court has jurisdiction to review orders denying motions to dismiss based on an "immunity from suit" when the applicability of immunity turns on a legal question. (Appellees' Mot. at 4, 6.)

Appellants' appeals satisfy the collateral order doctrine's requirements. There is no dispute that the applicability of attorney immunity turns on a purely legal

question: whether, accepting Appellees' allegations as true, Appellants are entitled

to attorney immunity.  See Colston v. Barnhart, 130 F.3d 96, 98-99 (5th Cir. 1997)

("We can determine as a matter of law whether [defendant] is entitled to qualified

immunity after accepting all of [plaintiff's] factual allegations as true.").  If the

complained-of conduct occurred in connection with Appellants' representation of

Stanford Financial, the attorney immunity doctrine applies, and the District Court

should have dismissed Appellees' complaint.  See Cantey Hanger, 2015 WL

3976267, at *1 (dismissing complaint on attorney immunity grounds "as a matter of

law"); Guzder v. Haynes & Boone, LLP, No. 01-13-00985-CV, 2015 WL 3423731,

at *8 (Tex. App.—Houston [1st Dist.] May 28, 2015, no pet. h.).  The immunity

question therefore is "important" and "completely separate from the merits" of this

case.  Henry, 566 F.3d at 171.  And to the extent that attorney immunity is an

immunity from suit, the District Court's ruling denying Appellants' motion to

dismiss "conclusively determine[d]" that question.  Id.; see Behrens v. Pelletier, 516

U.S. 299, 308 (1996) ("Whether or not a later summary judgment motion is granted

[based on an immunity from suit], denial of a motion to dismiss is conclusive as to

this right.").  The only issue, then, is whether, under Texas substantive law, attorney

immunity is an immunity from suit—the purpose of which is to protect lawyers from

a possible damages award and the burdens of litigation—that would be "effectively

lost" if the case were permitted to proceed.[3]  Mitchell, 472 U.S. at 512; see Henry, 566 F.3d at 177.  As discussed below, attorney immunity under Texas law is such an immunity from suit.

## I.    Attorney Immunity Is an Immunity from Suit

To answer the question whether attorney immunity (or any defense) is an immunity from suit, the Court must examine the policies underlying the defense. See Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982).  Quite simply, when the defense serves to protect parties from the burdens of litigation, it is an immunity from suit.  See, e.g., Sorey, 849 F.2d at 963 (concluding that Mississippi's official immunity doctrine provided immunity from suit because of "the social costs of litigation against public officials—'the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office'" (citation omitted)).

The attorney immunity doctrine serves that purpose, protecting attorneys from the burdens of litigation initiated by non-clients.  As the Texas Supreme Court recently explained, the attorney immunity doctrine is designed to promote "loyal, faithful, and aggressive representation" by granting attorneys immunity from claims

---

[3] Although state law governs the substantive question of whether a state-law immunity confers an "immunity from suit," this Court's jurisdiction as to this collateral-order appeal is governed by federal procedural law because it derives from 28 U.S.C. § 1291.  Brown v. Miller, 519 F.3d 231, 238 (5th Cir. 2008).  Accordingly, this Court "give[s] interlocutory review to denials of motions to dismiss state law claims on the basis of [state] immunit[ies], regardless of whether state courts, applying their own procedure, would do the same."  Id. at 238-39.

by "non-clients 'for actions taken in connection with representing a client.'" <u>Cantey Hanger</u>, 2015 WL 3976267, at *3 (citation omitted).  Such claims are "not actionable if [they are] part of the discharge of the lawyer's duties in representing his or her client." <u>Id.</u> (citation omitted).  This protection is necessary "to avoid the inevitable conflict that would arise if [an attorney] were 'forced constantly to balance his own potential exposure against his client's best interest.'" <u>Id.</u> at *5 (citation omitted).

Texas courts have recognized other immunities from suit based on similar policy concerns.  <u>See, e.g.</u>, <u>Miller v. Curry</u>, 625 S.W.2d 84, 87 (Tex. App.—Fort Worth 1981, writ ref'd n.r.e.) (prosecutorial immunity protects prosecutors from suit because if the prosecutor "had to look over his shoulder in fear of potential personal liability every time he refused to file, investigate, and prosecute criminal charges, his effectiveness as an independent public official would be drastically curtailed and impaired"); <u>B.K. v. Cox</u>, 116 S.W.3d 351, 358 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (judicial immunity protects judges from suit so that judges can "decide [cases] according to [their] own free and unembarrassed convictions, uninfluenced by any apprehension of private prosecution" (citation omitted)).  Indeed, in <u>Shanks</u>, this Court was "convinced" that a substantially similar immunity arising under Texas law—the "litigation privilege," which protects "communications made in the context of judicial, quasi-judicial, or

legislative proceedings"—functioned "as a complete immunity from suit" because courts had described the privilege as conferring "immun[ity] from civil liability" such that claims are "not actionable." Shanks, 169 F.3d at 992 (citation omitted). Texas cases, including the Texas Supreme Court's recent Cantey Hanger decision, use the same language in describing the protections that attorney immunity affords with respect to a non-client's claims: attorneys are "immune from civil liability" and claims against attorneys are "not actionable." Cantey Hanger, 2015 WL 3976267, at *3, 5. That is because the policies underlying the litigation privilege are the same as those underlying attorney immunity.[4] Compare Jenevein v. Friedman, 114 S.W.3d 743, 746 (Tex. App.—Dallas 2003, no pet.) (litigation privilege) (explaining that "access to the judicial process, freedom to institute an action, or defend, or participate therein without fear of the burden of being sued for defamation is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of an individual to a legal remedy" (citation omitted)), with Gaia Envtl., Inc. v. Galbraith, 451 S.W.3d 398, 403 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (attorney immunity) ("[A]ny other rule [besides attorney immunity] would act as a severe and crippling deterrent to the ends of justice because litigants might be denied a full development of their case if

---

[4] Indeed, Texas courts have cited litigation-privilege cases in explaining the attorney immunity doctrine. See, e.g., Alpert v. Crain, Caton & James, P.C., 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (citing Butler v. Lilly, 533 S.W.2d 130 (Tex. App.—Houston [1st Dist.] 1976, writ dism'd) in support of Texas's recognition of attorney immunity).

their attorneys were subject to the threat of liability for defending their clients'

position to the best and fullest extent allowed by law, and availing their clients of

all rights to which they are entitled." (citation omitted)).

Thus, Appellees' unsupported claim that attorney immunity is not "a true

immunity from suit" is simply wrong.  (Appellees' Mot. at 6.)  Case after case has

recognized that attorney immunity is just that, and the Texas Supreme Court's

recent ruling in Cantey Hanger confirms what numerous other Texas state and

federal courts—including the District Court (see Appellees' Mot., Ex. A at 8) and

this Court—have long understood:  as a matter of Texas law, attorneys are

"immune from suits [by non-clients] . . . aris[ing] out of the duties involved in

representing a client."  Rojas, 571 F. App'x at 278 (emphasis added); Spencer v.

Hughes Watters Askanase, LLP, No. 5:15-cv-00233, 2015 WL 3651594, at *3

(W.D. Tex. June 11, 2015) (same); Campbell v. Mortg. Elec. Registration Sys.,

Inc., No. 03-11-00429-CV, 2012 WL 1839357, at *6 (Tex. App.—Austin May 18,

2012, pet. denied) (describing attorney immunity as an "immunity from suit");

FinServ, 724 F. Supp. 2d at 672 (describing an attorney's "protection from liability

arising out of his representation of a client" as an "immunity from . . . suit[]");

Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C., No. 01-

06-00696-CV, 2008 WL 746548, at *7 (Tex. App.—Houston [1st Dist.] Mar. 20,

2008, pet. denied) (same); In re Walston, No. 10-05-00193-CV, 2007 WL

14

1378512, at *3 (Tex. App.—Waco May 9, 2007, pet. denied) ("Under Texas law . . . an attorney generally has qualified immunity from suit by an opposing party for the attorney's conduct in the course of the litigation . . . ."); Guthrie v. Buckley, 246 F. Supp. 2d 589, 591 (E.D. Tex. 2003) ("Guthrie cannot sue Diana Porter or Diana Porter, P.C. because the conduct for which the attorney-defendant is being sued arose out [of] her representation . . . ."); Miller v. Stonehenge/Fasa-Texas, JDC, L.P., 993 F. Supp. 461, 464 (N.D. Tex. 1998) ("As a general rule, a party may not sue opposing counsel under any theory of recovery for acts or omissions undertaken as part of the discharge of their duties as attorney . . . ." (citation omitted)); McCampbell v. KPMG Peat Marwick, 982 F. Supp. 445, 447 (N.D. Tex. 1997) (same).[5]

## II.    The Fact that Attorney Immunity Is an Affirmative Defense Is Irrelevant

The sole basis for Appellees' claim that Texas's attorney immunity doctrine does not confer an immunity from suit is that the immunity is an affirmative defense.[6]  (Appellees' Mot. at 5-6.)  That fact is irrelevant.  Most, if not all,

---

[5] See also Michels v. Zeifman, No. 03-08-00287-CV, 2009 WL 349167, at *2 (Tex. App.—Austin Feb. 12, 2009, pet. denied) (mem. op.) (characterizing attorney immunity as "an absolute bar" to a third-party's claim against a defendant attorney); Taco Bell Corp. v. Cracken, 939 F. Supp. 528, 532 (N.D. Tex. 1996) (concluding that Texas law "bar[s] claims by one party against the opposing party's attorney"); Bradt v. West, 892 S.W.2d 56, 72 (Tex. App.—Houston [1st Dist.] 1994, writ denied) ("An attorney should not go into court knowing that he may be sued by the other side's attorney for something he does in the course of representing his client.").

[6] Appellees also assert that they "are not aware of any case in which an appeal was permitted on the basis of qualified attorney immunity prior to final judgment" (Appellees' Mot. at

immunities—including governmental official immunity, which Appellees concede is an immunity from suit subject to immediate appeal (id. at 4-5)—are affirmative defenses on which the defendants bear the burden of proof.  See, e.g., Pasco, 566 F.3d at 576-77 (observing that qualified governmental immunity is "an affirmative defense . . . [which] must be pled and proved by the defendant" while nevertheless holding that the Court had jurisdiction to immediately review "the denial of . . . immunity"); City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994) (noting that governmental official immunity under Texas law is an "immunity from suit" that defendants bear the burden of proving as "an affirmative defense"); see also B.K., 116 S.W.3d at 356 (describing Texas's judicial immunity doctrine as an "affirmative defense" that cloaks judges with "immunity from suit").  Thus, contrary to Appellees' argument, the fact that defendant-attorneys bear the burden of establishing the applicability of attorney immunity does not determine whether attorney immunity functions as an "immunity from suit" or as a "simple defense to liability."  Sorey, 849 F.2d at 962.  The purpose of the doctrine does, and, as set forth above, the purpose of attorney immunity is to protect attorneys from the burdens of suit.

---

6), but do not and cannot contend that this Court has ever determined that it lacks jurisdiction to hear an appeal from the denial of attorney immunity.

## III.    This Court Has Jurisdiction to Hear This Appeal Now

As the Supreme Court and this Court have recognized, when the applicability of an immunity from suit is evident on the face of a plaintiff's complaint, the case should be resolved as early as possible so as to ensure that attorneys are not exposed to "the concerns of litigation, including . . . disruptive discovery."[7] Iqbal, 556 U.S. at 685; see Hunter v. Bryant, 502 U.S. 224, 227 (1991) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation"). Shanks is instructive. As this Court recognized on appeal from the denial of a motion invoking Texas's litigation privilege, "insist[ing] on a final judgment before reviewing a denial of . . . immunity could deprive [the defendant] of its entitlement to avoid the burdens of trial." Shanks, 169 F.3d at 992. The same is true here. See Behrens, 516 U.S. at 307 ("[A]n order rejecting the defense of qualified immunity at either the dismissal stage or the summary judgment stage is a 'final' judgment subject to immediate appeal.").

---

[7] Texas state and federal courts routinely dismiss complaints at the pleading stage based on attorney immunity. See Guzder, 2015 WL 3423731, at *8 (affirming dismissal of complaint based on attorney immunity doctrine); Easton v. Phelan, No. 01-10-01067-CV, 2012 WL 1650024, at *10 (Tex. App.—Houston [1st Dist.] May 10, 2012, no pet.) (same); Ortega v. Young Again Prods., Inc., Civ. No. H-12-0001, 2012 WL 1709714, at *5 (S.D. Tex. May 15, 2012) (dismissing complaint based on attorney immunity doctrine), aff'd, 548 F. App'x 108 (5th Cir. 2013); FinServ, 724 F. Supp. 2d at 673-74 (same); Alpert, 178 S.W.3d at 407-08 (affirming dismissal of complaint based on attorney immunity doctrine). Although some Texas cases have resolved the immunity issue on summary judgment, Texas did not have a Rule 12(b)(6) equivalent for dismissing a case until March 1, 2013. See, e.g., Guzder, 2015 WL 3423731, at *3.

Indeed, exposing Appellants to the burdens of litigation would thwart Texas's policy objective of promoting "loyal, faithful, and aggressive representation." Cantey Hanger, 2015 WL 3976267, at *3.  Just as "the risk that fear of personal monetary liability and harassing litigation" could have the negative "social cost" of chilling governmental officials' ability to perform their official functions, Anderson v. Creighton, 483 U.S. 635, 638 (1987); see Sorey, 849 F.2d at 962, attorneys would be guarded in their representations if they were forced to "go into court knowing that [they] may be sued . . . for something [they do] in the course of representing [their] client," Bradt, 892 S.W.2d at 72.  As the Texas Supreme Court stated in Cantey Hanger, attorneys would be forced to "balance [their] own potential exposure against [their] client's best interest," if non-clients such as Appellees were permitted to sue lawyers for the conduct they took on behalf of their clients and expose them to the burdens of litigation.  2015 WL 3976267, at *5 (citation omitted).  That would result in "tentative representation, not the zealous representation that . . . the public has a right to expect."  Bradt, 892 S.W.2d at 72; see Mitchell v. Chapman, 10 S.W.3d 810, 812 (Tex. App.—Dallas 2000, pet. denied) (concluding that non-client did "not have a cause of action" against defendant-attorney because the non-client's interest in suing was "outweighed by the public's interest in loyal, faithful, and aggressive representation").

## <u>CONCLUSION</u>

Because Texas law regards attorney immunity as an immunity from suit, this Court has jurisdiction to review the District Court's denial of Appellants' motions to dismiss based on attorney immunity.  Accordingly, Appellants respectfully request that this Court deny Appellees' motion to dismiss for want of jurisdiction.

Dated:  July 8, 2015                Respectfully submitted,

DAVIS POLK & WARDWELL LLP

By:   /s/ James P. Rouhandeh
James P. Rouhandeh
Daniel J. Schwartz
Jonathan K. Chang

450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800

- and -

CARRINGTON, COLEMAN, SLOMAN
& BLUMENTHAL, LLP

By:   /s/ Bruce W. Collins
Bruce W. Collins
Neil R. Burger

901 Main Street, Suite 5500
Dallas, Texas 75202
Telephone:  (214) 855-3000
Facsimile:  (214) 855-1333

*Attorneys for Defendant-Appellant*
*Proskauer Rose LLP*

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP

By:    /s/ Daniel J. Beller
Daniel J. Beller
Daniel J. Leffell
William B. Michael

1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

- and -

VINSON & ELKINS LLP

By:    /s/ Harry M. Reasoner
Harry M. Reasoner
William D. Sims, Jr.

2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Telephone:  (214) 220-7700
Facsimile:  (214) 220-7716

*Attorneys for Defendant-Appellant
Chadbourne & Parke LLP*

DENTONS US LLP

By:    /s/ Joshua R. Hochberg
Joshua R. Hochberg
Christina M. Carroll

1900 K Street NW
Washington, D.C. 20006
Telephone:  (202) 496-7500
Facsimile:  (202) 496-7756

- and -

FISH & RICHARDSON P.C.

By:   /s/ William B. Mateja
William B. Mateja

1717 Main Street, Suite 500
Dallas, Texas 75201
Telephone:  (214) 747-5070
Facsimile:  (214) 747-2091

*Attorneys for Defendant-Appellant*
*Thomas V. Sjoblom*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on July 8, 2015, a copy of the foregoing Opposition and the accompanying exhibits annexed hereto were filed by CM/ECF with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit, and that a copy was also served by CM/ECF on counsel for all parties, including counsel for Appellees listed below.

Edward C. Snyder
Castillo Snyder, P.C.
Bank of America Plaza
300 Convent St., Suite 1020
San Antonio, TX 78205
esnyder@casnlaw.com

P. Michael Jung
Strasburger & Price, LLP
901 Main St., Suite 4400
Dallas, TX 75202
michael.jung@strasburger.com

Edward F. Valdespino
Judith R. Blakeway
Strasburger & Price, LLP
300 Convent St., Suite 900
San Antonio, TX 78205
edward.valdespino@strasburger.com
judith.blakeway@strasburger.com

Douglas J. Buncher
Neligan Foley, LLP
325 N. St. Paul St., Suite 3600
Dallas, TX 75201
dbuncher@neliganlaw.com

Dated:  July 8, 2015

DAVIS POLK & WARDWELL LLP

By:   /s/ James P. Rouhandeh
      James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800