**Case No. 15-10500**

## In The United States Court Of Appeals
## For The Fifth Circuit

SAMUEL TROICE; PUNGA PUNGA FINANCIAL, LIMITED,
individually and on behalf of a class of all others similarly situated; PAM REED,
*Plaintiffs-Appellees*,

v.

PROSKAUER ROSE, L.L.P.; CHADBOURNE AND PARKE, LIMITED
LIABILITY PARTNERSHIP; THOMAS V. SJOBLOM,
*Defendants-Appellants*.

Appeal from the United States District Court for the
Northern District of Texas, Dallas Division; No. 3:09-cv-1600-N-BG

# BRIEF OF DEFENDANT-APPELLANT
# CHADBOURNE & PARKE LLP

Daniel J. Beller
Daniel J. Leffell
William B. Michael
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

Harry M. Reasoner
William D. Sims Jr.
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Telephone: (214) 220-7700
Facsimile:  (214) 220-7716

*Counsel for Defendant-Appellant Chadbourne & Parke LLP*

**Case No. 15-10500**

# In The United States Court Of Appeals
# For The Fifth Circuit

---

SAMUEL TROICE; PUNGA PUNGA FINANCIAL, LIMITED,
individually and on behalf of a class of all others similarly situated; PAM REED,
*Plaintiffs-Appellees*,

v.

PROSKAUER ROSE, L.L.P.; CHADBOURNE AND PARKE, LIMITED
LIABILITY PARTNERSHIP; THOMAS V. SJOBLOM,
*Defendants-Appellants*.

---

Appeal from the United States District Court for the
Northern District of Texas, Dallas Division; No. 3:09-cv-1600-N-BG

---

## CERTIFICATE OF INTERESTED PERSONS

---

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Defendant-Appellant Chadbourne & Parke LLP ("Chadbourne"), a law firm, is a limited liability partnership with no parent company. No entity of any kind has a ten percent or greater ownership interest in Chadbourne.

**Plaintiffs-Appellees:**

Samuel Troice

Pam Reed

Punga Punga Financial, Ltd.

i

**Defendants-Appellants:**

Proskauer Rose LLP

Chadbourne

Thomas V. Sjoblom

**Other Interested Parties:**

Proskauer Rose LLP's professional liability insurers

Chadbourne's professional liability insurers

Horacio Mendez

Annalisa Mendez

P. Mauricio Alvarado

Persons who purchased certificates of deposits issued by Stanford International Bank Ltd. ("SIB") and/or otherwise maintained investment accounts with SIB

Official Stanford Investors Committee

Ralph S. Janvey, Receiver

**Counsel for Plaintiffs-Appellees:**

Edward C. Snyder
CASTILLO SNYDER, P.C.
Bank of America Plaza, Suite 1020
300 Convent Street
San Antonio, Texas 78205
Telephone:  (210) 630-4200
Facsimile:  (210) 630-4210
*Attorneys for Samuel Troice,* et al.

Edward F. Valdespino
Judith R. Blakeway
STRASBURGER & PRICE, LLP
2301 Broadway Street
San Antonio, Texas 78215
Telephone:  (210) 250-6000
Facsimile:  (210) 250-6100
*Attorneys for Samuel Troice,* et al.

Peter M. Jung
STRASBURGER & PRICE, LLP
901 Main Street, Suite 4400
Dallas, Texas 75202
Telephone:  (214) 651-4724
Facsimile:  (214) 659-4022
*Attorneys for Samuel Troice,* et al.

Douglas J. Buncher
NELIGAN FOLEY, LLP
325 N. St. Paul Street, Suite 3600
Dallas, Texas 75201
Telephone:  (214) 840-5300
Facsimile:  (214) 840-5301
*Attorneys for Samuel Troice,* et al.

## **Counsel for Defendants-Appellants:**

Daniel J. Beller
Daniel J. Leffell
William B. Michael
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
*Attorneys for Chadbourne & Parke LLP*

Harry M. Reasoner
William D. Sims, Jr.
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Telephone:  (214) 220-7700
Facsimile:  (214) 220-7716
*Attorneys for Chadbourne & Parke LLP*

James P. Rouhandeh
Daniel J. Schwartz
Jonathan K. Chang
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5581
*Attorneys for Proskauer Rose LLP*

Bruce W. Collins
Neil R. Burger
CARRINGTON COLEMAN SLOMAN & BLUMENTHAL
901 Main Street, Suite 5500
Dallas, Texas 75202
Telephone:  (214) 855-3000
Facsimile:  (214) 855-1333
*Attorneys for Proskauer Rose LLP*

Joshua R. Hochberg
Christina M. Carroll
DENTONS US LLP
1900 K Street NW
Washington, District of Columbia 20006
Telephone:  (202) 496-7500
Facsimile:  (202) 496-7756
*Attorneys for Thomas V. Sjoblom*

William B. Mateja
FISH & RICHARDSON, P.C.
1717 Main Street, Suite 5000
Bank One Center
Dallas, Texas 75201
Telephone:  (214) 747-5070
Facsimile:  (214) 747-2091
*Attorney for Thomas V. Sjoblom*

Dated:  August 3, 2015                    Respectfully submitted,

                                         PAUL, WEISS, RIFKIND,
                                             WHARTON & GARRISON LLP

                                         By:    /s/ Daniel J. Beller
                                                Daniel J. Beller
                                                Daniel J. Leffell
                                                William B. Michael
                                                1285 Avenue of the Americas
                                                New York, New York 10019
                                                Telephone:  (212) 373-3000
                                                Facsimile:  (212) 757-3990

                                         - and -

                                         VINSON & ELKINS LLP

                                         By:    /s/ Harry M. Reasoner
                                                Harry M. Reasoner
                                                William D. Sims, Jr.
                                                2001 Ross Avenue, Suite 3700
                                                Dallas, Texas 75201-2975
                                                Telephone:  (214) 220-7700
                                                Facsimile:  (214) 220-7716

                                         *Attorneys for Defendant-Appellant*
                                         *Chadbourne & Parke LLP*

## STATEMENT REGARDING ORAL ARGUMENT

This is an appeal from the denial of a law firm's motion to dismiss, based on the Texas doctrine of attorney immunity, a class action complaint asserting state-law securities claims.  Plaintiffs-Appellees ("Plaintiffs") seek up to $7 billion in damages from Defendants-Appellants ("Defendants"), an individual lawyer and two law firms.  In light of the magnitude of damages sought, the novel and erroneous theory on which the claims are based, and the district court's misapplication of Texas law in denying the motion to dismiss, Defendant-Appellant Chadbourne & Parke LLP ("Chadbourne") respectfully submits that oral argument will aid this Court in resolving the issues presented by this appeal.  Thus, in accordance with Federal Rule of Appellate Procedure 34 and Fifth Circuit Rule 28.2.3, Chadbourne respectfully requests oral argument.

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT ............................................................ vi

STATEMENT OF JURISDICTION ............................................................ xii

STATEMENT OF THE ISSUE ............................................................ xiii

INTRODUCTION ............................................................ 1

STATEMENT OF FACTS AND STATEMENT OF THE CASE ............................................................ 2

    A.    The Parties and the Allegations Against Chadbourne ............................................. 2

    B.    Procedural History ............................................................ 5

SUMMARY OF THE ARGUMENT ............................................................ 9

STANDARD OF REVIEW ............................................................ 12

ARGUMENT ............................................................ 13

I.     UNDER TEXAS LAW, ATTORNEYS ARE IMMUNE FROM SUIT BY NON-CLIENTS FOR ACTIONS TAKEN WITHIN THE SCOPE OF REPRESENTING A CLIENT. ............................................................ 13

II.    THE DISTRICT COURT ERRED IN RULING THAT TEXAS LAW RECOGNIZES A "FRAUD EXCEPTION" TO ATTORNEY IMMUNITY. ............................................................ 18

III.   THE DISTRICT COURT ERRED IN DECLINING TO APPLY ATTORNEY IMMUNITY TO THE CLAIMS AGAINST CHADBOURNE. ............................................................ 21

CONCLUSION ............................................................ 27

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alpert* v. *Crain, Caton & James, P.C.*,
　178 S.W.3d 398
　(Tex. App.—Houston [1st Dist.] 2005, pet. denied) ..............................14, 15, 26

*Alpert* v. *Riley*,
　No. H-04-CV-3774, 2008 WL 304742 (S.D. Tex. Jan. 31, 2008) ...............24, 25

*Am. Bankers Ins. Co. of Fla.* v. *Inman*,
　436 F.3d 490 (5th Cir. 2006) ...............................................................12

*Ashcroft* v. *Iqbal*,
　556 U.S. 662 (2009)...........................................................................14

*Bashore* v. *Bank of Am.*,
　No. 11-cv-93, 2012 WL 629060 (E.D. Tex. Feb. 27, 2012) ......................17, 24

*Bitterroot Holdings, LLC* v. *MTGLQ Investors, L.P.*,
　No. 5:14-CV-862-DAE, 2015 WL 363196
　(W.D. Tex. Jan. 27, 2015)...................................................................17

*Bradt* v. *West*,
　892 S.W.2d 56 (Tex. App.—Houston [1st Dist.] 1994, writ denied)................16

*Byrd* v. *Vick, Carney & Smith LLP*,
　409 S.W.3d 772 (Tex. App.—Fort Worth 2013)...............................................19

*Cantey Hanger, LLP* v. *Byrd*,
　--- S.W.3d ----, No. 13-0861, 2015 WL 3976267
　(Tex. June 26, 2015) ...................................................................*passim*

*Cantu* v. *Rocha*,
　77 F.3d 795 (5th Cir. 1996) ................................................................ xii

*Dearmore* v. *City of Garland*,
　519 F.3d 517 (5th Cir. 2008) ...............................................................12

*Dixon Fin. Servs., Ltd.* v. *Greenberg, Peden, Siegmyer & Oshman, P.C.*,
    No. 01-06-00696-CV, 2008 WL 746548
    (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied)...............13, 14, 24

*Doe* v. *Robertson*,
    751 F.3d 383 (5th Cir. 2014) ....................................................................12, 27

*Easton* v. *Phelan*,
    01-10-01067-CV, 2012 WL 1650024
    (Tex. App.—Houston [1st Dist.] May 10, 2012, no pet.)...................................14

*FinServ Cas. Corp.* v. *Settlement Funding, LLC*,
    724 F. Supp. 2d 662 (S.D. Tex. 2010).............................................................14

*Gaia Envtl., Inc.* v. *Galbraith*,
    451 S.W.3d 398
    (Tex. App.—Houston [14th Dist.] 2014, pet. denied).......................................17

*Guzder* v. *Haynes & Boone, LLP*,
    No. 01-13-00985-CV, 2015 WL 3423731
    (Tex. App.—Houston [1st Dist.] May 28, 2015, no pet.)...................................14

*Hunter* v. *Bryant*,
    502 U.S. 224 (1991).........................................................................................13

*Jurek* v. *Kivell*,
    No. 01-10-00040-CV, 2011 WL 1587375
    (Tex. App.—Houston [1st Dist.] Apr. 21, 2011, no pet.)...................................15

*Lackshin* v. *Spofford*,
    No. 14-03-00977-CV, 2004 WL 1965636
    (Tex. App.—Houston [14th Dist.] Sept. 7, 2004, pet. denied).........................25

*Lewis* v. *Am. Exploration Co.*,
    4 F. Supp. 2d 673 (S.D. Tex. 1998)..................................................................17

*Likover* v. *Sunflower Terrace II, Ltd.*,
    696 S.W.2d 468 (Tex. App.—Houston [1st Dist.] 1985, no writ) ....................21

*Mendoza* v. *Fleming*,
    41 S.W.3d 781 (Tex. App.—Corpus Christi 2001, no pet.) ..............................20

*Midland W. Corp.* v. *F.D.I.C.*,
    911 F.2d 1141 (5th Cir. 1990) ...........................................................26

*Mitchell* v. *Chapman*,
    10 S.W.3d 810 (Tex. App.—Dallas 2000, pet. denied)......................15

*Occidental Chem. Corp.* v. *Elliott Turbomachinery Co.*,
    84 F.3d 172 (5th Cir. 1996) ..............................................................12

*Ortega* v. *Young Again Prods., Inc.*,
    Civ. No. H-12-0001, 2012 WL 1709714 (S.D. Tex. May 15, 2012) .................14

*Reagan Nat'l Adver. of Austin, Inc.* v. *Hazen*,
    No. 03-05-00699-CV, 2008 WL 2938823
    (Tex. App.—Austin, July 29, 2008, no pet.) .........................16, 23, 24

*Rojas* v. *Wells Fargo Bank, N.A.*,
    571 F. App'x 274 (5th Cir. June 6, 2014).........................................13

*Roland* v. *Green*,
    675 F.3d 503 (5th Cir. 2012) .............................................................6

*Sacks* v. *Hall*,
    No. 01-13-00531-CV, 2014 WL 6602460
    (Tex. App.—Houston [1st Dist.] Nov. 20, 2014, no pet.)...................22

*Santiago* v. *Mackie Wolf Zientz & Mann, P.C.*,
    No. 05-13-00620-CV, 2014 WL 4072131
    (Tex. App.—Dallas Aug. 19, 2014, pet. denied)........................20, 21

*Taco Bell Corp.* v. *Cracken*,
    939 F. Supp. 528 (N.D. Tex. 1996) ...................................................17

*Toles* v. *Toles*,
    113 S.W.3d 899 (Tex. App.—Dallas 2003, no pet.) ..........................21

*Weilbacher* v. *Craft*,
    No. 05-13-01252-CV, 2014 WL 6466856
    (Tex. App.—Dallas Nov. 19, 2014, pet. denied)...............................22

**STATUTES**

28 U.S.C. § 1291 ............................................................................... xii

28 U.S.C. § 1332 ............................................................................... xii

### STATEMENT OF JURISDICTION

The district court had jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(B) because this is a class action in which the amount in controversy exceeds $5 million and at least one plaintiff is alleged to be a citizen of a foreign state and one defendant is a citizen of a State.  This Court has jurisdiction, pursuant to 28 U.S.C. § 1291 and the collateral order doctrine, over this appeal from the district court's denial of a motion to dismiss and a Federal Rule of Civil Procedure 59(e) motion to alter or amend on grounds of attorney immunity.

Plaintiffs challenged this Court's jurisdiction by motion filed on June 25, 2015.  However, a district court order denying immunity under state law is immediately appealable where the state law provides immunity from suit.  *See, e.g.*, *Cantu* v. *Rocha*, 77 F.3d 795, 803–04 (5th Cir. 1996).  That is the case here, as Defendants have explained in their Opposition to Plaintiffs-Appellees' Motion to Dismiss Appeal for Want of Jurisdiction, filed on July 8, 2015.[1]

Chadbourne filed a timely Notice of Appeal on May 26, 2015.  ROA.6112–14 [RE2].[2]

---

[1]  Chadbourne incorporates by reference herein the arguments and authorities set forth in Defendants' July 8, 2015 Opposition to Plaintiffs-Appellees' Motion to Dismiss Appeal for Want of Jurisdiction.  Plaintiffs-Appellees' Motion remains pending before the Court.

[2]  For purposes of this brief, "RE__" refers to tab numbers of Defendant-Appellant Chadbourne & Parke LLP's Record Excerpts.

## STATEMENT OF THE ISSUE

Whether the district court's orders denying Chadbourne's motion to dismiss and motion to alter or amend pursuant to Federal Rule of Civil Procedure 59(e) should be reversed because the law firm Chadbourne and its former partner are immune from suit under Texas's attorney qualified immunity doctrine, because, on the face of the Second Amended Class Action Complaint ("SAC"), the alleged conduct was within the scope of their representing a client, and because the district court erroneously based its denial of attorney immunity on a putative "fraud exception" that the Texas Supreme Court has held does not exist.

**INTRODUCTION**

Plaintiffs are investors in certificates of deposit issued by the Antigua-based SIB, which in 2009 was revealed to be a Ponzi scheme. They brought this putative class action seeking to collect up to $7 billion in damages from Chadbourne, a well-respected international law firm. Plaintiffs are not, and never were, clients of Chadbourne.

Chadbourne and its former partner, Thomas Sjoblom, represented SIB and its affiliates Stanford Financial Group and Stanford Group Company (collectively, "Stanford Financial") as outside litigation counsel in an SEC inquiry in 2005 and 2006. Plaintiffs allege that, during that time, Sjoblom aided and abetted his clients' fraud by making legal arguments on his clients' behalf to securities regulators which, according to Plaintiffs, were false or incorrect as a matter of law.

The conduct that Plaintiffs challenge consists exclusively of actions by a lawyer discharging his duties in representing his clients. Chadbourne therefore is immune from suit by non-clients based on such conduct under Texas law— regardless of whether the lawyer's alleged actions were wrong, sanctionable, or even fraudulent. The district court erroneously declined to dismiss Plaintiffs' claims based on an asserted "fraud exception" to attorney immunity. But since that ruling, the Texas Supreme Court has confirmed that no such exception exists. The district court's order was thus based on clear legal error and should be reversed.

STATEMENT OF FACTS AND STATEMENT OF THE CASE

**A.    The Parties and the Allegations Against Chadbourne**

Plaintiffs are a Panamanian offshore company and certain individuals who allegedly purchased certificates of deposit ("CDs") issued by the Antigua-based SIB.  ROA.177 ¶¶ 2–5 (SAC) [RE5]; ROA.182 ¶ 19 [RE5]; ROA.215–16 ¶¶ 89–90 [RE5].  Plaintiffs allege that the CDs they bought turned out to be worthless, and that Stanford Financial was "since at least 1988 . . . nothing but a massive, worldwide Ponzi scheme."  ROA.185–86 ¶ 26 [RE5].

Plaintiffs claim that "the entire Stanford Financial empire was dominated completely by one man—Allen Stanford," ROA.195 ¶ 44 [RE5], who was, according to the SAC, an "international financial 'pirate,'" ROA.186 ¶ 26 [RE5].  Stanford allegedly perpetrated his fraud with the assistance of Jim Davis, his "right hand man," and Leroy King, "Stanford's good friend" who—as the head of Antigua's Financial Services Regulatory Commission (the "FSRC")—allegedly served as Stanford's "regulatory spy."   ROA.190 ¶ 35 [RE5]; ROA.195 ¶ 44 [RE5].

In this action, Plaintiffs do not name Stanford (the "international financial 'pirate'"), Davis (the "right hand man"), or King (the "regulatory spy") as defendants.  Rather, they seek to recover between $4 billion and $7 billion in

alleged damages from a lawyer and two law firms who represented Stanford Financial in an SEC investigation a decade ago.  ROA.232 ¶¶ 116–17 [RE5].

Defendants are:  (1) Sjoblom, a "former SEC enforcement lawyer with 20 years['] experience," ROA.203 ¶ 62 [RE5]; (2) Chadbourne, a law firm in which Sjoblom was a partner from the time Stanford Financial retained Chadbourne, in August 2005, through July 2006, *see* ROA.202 ¶ 60 [RE5]; ROA.230–31 ¶ 114 [RE5];[3] and (3) Proskauer Rose LLP ("Proskauer"), the law firm Sjoblom joined after leaving Chadbourne, which represented Stanford Financial beginning in September 2006, ROA.230–31 ¶ 114 [RE5].[4]

Plaintiffs' allegations concerning Chadbourne are limited to a one-year period, from Sjoblom's retention in 2005 until he left Chadbourne in July 2006. *See* ROA.230–31 ¶ 114 [RE5].  Plaintiffs allege that "Stanford hired Sjoblom because Sjoblom had been an SEC enforcement trial lawyer for some 20 years, and as such had experience in securities fraud schemes and SEC investigations and enforcement actions."  ROA.202 ¶ 60 [RE5].

Plaintiffs make the conclusory assertion that Sjoblom had a "meeting of the minds" with Allen Stanford and others as to "the obstruction of SEC investigations

---

[3]  Although the SAC alleges that Sjoblom remained with Chadbourne "until sometime in September 2006," ROA.230–31 ¶¶ 114–15 [RE5], it is undisputed that Sjoblom actually left Chadbourne on July 28, 2006, *see* ROA.423–24 n.1 [RE8].

[4]  Chadbourne adopts and incorporates by reference the arguments set forth in the Brief for Defendant-Appellant Proskauer Rose LLP, to the extent applicable to Chadbourne.

so as to allow Stanford Financial and SIB to evade SEC regulation." ROA.202 ¶ 60 [RE5]. But the only *conduct* alleged against Sjoblom during his time at Chadbourne consists of using his knowledge and skills as an attorney to represent clients in proceedings before the SEC. Indeed, the SAC alleges that Sjoblom undertook the challenged conduct while acting as "outside counsel to represent the interests of Stanford Financial and SIB in the SEC investigation." ROA.202 ¶ 60 [RE5]. Specifically, while at Chadbourne, Sjoblom is alleged to have:

- "[a]s part of his retention . . . traveled to the SIB facility in Antigua where he met with Stanford, Davis, Antigua's head of the FSRC Leroy King and others to familiarize himself with the operations and finances of SIB";

- "reviewed SIB's disclosures to investors in its CD program";

- "sent a letter to the SEC's Fort Worth office, with copy to the Dallas office of FINRA," in October 2005, "in which he argued that the SEC did not have jurisdiction over Stanford Financial's CD sales program because the CDs did not constitute securities under U.S. law," relying on "case law from the U.S. Supreme Court" as well as on "Antiguan law" concerning the priority claim status of CD holders; and

- made "representations to the SEC and FINRA," in his October 2005 letter, "about Antiguan law [that] were false."

ROA.202–04 ¶¶ 61–64 [RE5].

Based on these allegations, and Sjoblom's "20 years of experience working in enforcement for the SEC," Plaintiffs contend that by 2005 "Sjoblom knew that Stanford was running an unregistered investment company disguised as an offshore bank; that the SIB CDs more than likely constituted securities under U.S.

law; and that the CDs were being marketed and sold illegally from within the United States." ROA.204–05 ¶ 65 [RE5]. Apart from his October 2005 letter to the SEC and FINRA making arguments about "Antiguan law" and "case law from the U.S. Supreme Court," however, Plaintiffs do not allege that Sjoblom engaged in *any* conduct while at Chadbourne that contributed to "the obstruction of SEC investigations." ROA.204–05 ¶¶ 60–65 [RE5].

The remainder of the allegations in the SAC concern events that took place after Sjoblom left Chadbourne.

## B. Procedural History

Plaintiffs filed their initial complaint (which did not name Chadbourne) on August 27, 2009, ROA.34, and twice amended it, ROA.106; ROA.176. On December 11, 2009, Chadbourne moved to dismiss Plaintiffs' SAC on several grounds, including, *inter alia*, that (1) the action was precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), and (2) Plaintiffs' claims are barred by attorney immunity under Texas law. ROA.410–56.

On October 21, 2011, the district court dismissed the SAC on the ground that it was precluded by SLUSA. ROA.1100. Having made this dispositive ruling, the district court did not reach or address any other grounds for dismissal. ROA.1100. Plaintiffs appealed the SLUSA ruling, this Court reversed the district court's order of dismissal, and the Supreme Court affirmed this Court's decision.

5

*Roland* v. *Green*, 675 F.3d 503, 506–07 (5th Cir. 2012), *aff'd sub nom.* *Chadbourne & Parke LLP* v. *Troice*, 134 S. Ct. 1058 (2014).

On remand, the district court declined to dismiss Plaintiffs' claims against Chadbourne and the other Defendants on attorney immunity grounds. ROA.2386–88 [RE3]. In its March 4, 2015 order, the district court stated that "[t]he unfortunate reality of the case law surrounding attorney immunity is that the line between actionable conduct and conduct subject to immunity is a fine one." ROA.2387 [RE3]. Nonetheless, the district court ruled that a "fraud exception" to Texas's attorney immunity doctrine applies whenever a plaintiff asserts a "colorable claim for fraud," regardless of the type of attorney conduct at issue, and found that Plaintiffs had made "sufficient allegations concerning Defendants' fraudulent conduct to support application of an exception to the attorney immunity doctrine." ROA.2387–88 [RE3].

On April 1, 2015, Chadbourne moved to alter or amend the district court's March 4, 2015 order under Federal Rule of Civil Procedure 59(e). ROA.2716–33 [RE6]. In its motion, Chadbourne directed the district court to three recent decisions by Texas courts of appeals—issued after the close of briefing on Defendants' motions to dismiss—which confirmed that Texas's attorney immunity doctrine applies whenever an attorney's challenged conduct consists of actions taken as part of representing a client. ROA.2719 [RE6]; ROA.2723–30 [RE6]. On

May 15, 2015, the district court entered a two-sentence order denying Chadbourne's motion to alter or amend. ROA.6099 [RE4].

Chadbourne filed a notice of appeal from these collateral orders denying attorney immunity on May 26, 2015. ROA.6112–14 [RE2].

On June 26, 2015, the Texas Supreme Court decided *Cantey Hanger, LLP* v. *Byrd*, --- S.W.3d ----, No. 13-0861, 2015 WL 3976267 (Tex. June 26, 2015). In *Cantey Hanger*, the Texas Supreme Court held—contrary to the district court's ruling in this case—that "[f]raud is *not* an exception to attorney immunity." 2015 WL 3976267, at *5 (emphasis added). *Cantey Hanger* thus confirmed what Texas appellate courts had previously held in numerous cases on which Chadbourne relied in moving to dismiss—that, in determining whether the immunity applies, "'it is the *kind of conduct* that is controlling, and not whether that conduct is meritorious or sanctionable,'" and when the conduct being challenged is "'the kind of conduct in which an attorney engages when discharging duties to his client,'" it is protected by attorney immunity. *Id.* at *4 (quoting *Chapman Children's Trust* v. *Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 442 (Tex. App.—Houston [14th Dist.] 2000, pet. denied), and *Dixon Fin. Servs., Ltd.* v. *Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01-06-00696-CV, 2008 WL 746548, at *9 (Tex. App.— Houston [1st Dist.] Mar. 20, 2008, pet. denied)) (emphasis added). To apply a

"general fraud exception"—as the district court did here—"would significantly undercut the defense." *Id.* at *5.

Defendants had previously requested that the district court defer ruling on their motions to dismiss until the Texas Supreme Court issued its ruling in *Cantey Hanger*. ROA.2253 [RE7]. The district court declined that request. As a result, the district court issued its decision without the benefit of the Texas Supreme Court's ruling on this state-law question.

## SUMMARY OF THE ARGUMENT

Under Texas law, an attorney is immune from suit by non-clients for actions that are "part of the discharge of the lawyer's duties in representing his or her client." *Cantey Hanger*, 2015 WL 3976267, at *3 (citations and internal quotation marks omitted). Attorney immunity is not merely a defense to liability; it is an immunity from suit, which exists to ensure that attorneys advocate aggressively on behalf of their clients without facing exposure to civil liability and the burdens associated with litigation in suits by non-clients. Accordingly, application of attorney immunity, like other immunities from suit, should be determined at the earliest possible stage of a litigation—including, when the basis for the immunity appears on the face of the complaint, on a motion to dismiss.

Plaintiffs' claims against Chadbourne are based entirely on actions taken by Sjoblom, Chadbourne's former partner, as part of the discharge of his duties in representing his clients, Stanford Financial. Plaintiffs allege that, during his time at Chadbourne, Sjoblom was retained to represent Stanford Financial in an SEC investigation; met with his clients' employees and certain fact witnesses; reviewed his clients' disclosures to investors; and wrote a letter to the SEC and FINRA making legal arguments on his clients' behalf, including representations about Antiguan law. Such conduct is not actionable as a matter of Texas law.

The district court's decision denying Chadbourne's motion to dismiss on attorney immunity grounds was based on clear legal error. The district court ruled that Texas courts recognize a "fraud exception" to attorney immunity, and rejected the argument that this exception "applies only when the alleged conduct occurs outside the scope of an adversarial proceeding." ROA.2387 [RE3]. The court then ruled that the allegations against Chadbourne fit within this exception because Plaintiffs had alleged "a viable conspiracy to commit fraud claim based on allegations that Sjoblom . . . agreed to help obscure [his clients'] wrongdoing from the SEC." ROA.2388 [RE3].

After the district court issued its March 4 and May 15, 2015 orders, the Texas Supreme Court rejected the very "exception" on which those orders were based, holding: "Fraud is not an exception to attorney immunity; rather the defense does not extend to fraudulent conduct that is *outside the scope of an attorney's legal representation of his client*, just as it does not extend to other wrongful conduct outside the scope of representation." *Cantey Hanger*, 2015 WL 3976267, at *5 (emphasis added). Conduct that is *within* the scope of an attorney's representation of a client—even if wrongful or fraudulent—"is not actionable" in a suit by non-clients. *Id.* at *3, *5.

The district court's orders cannot be reconciled with *Cantey Hanger*, which is controlling as to the scope of the Texas doctrine of attorney immunity. *Cantey*

*Hanger* confirms that the "exception" to attorney immunity on which the district court based its decision does not exist.  Because the SAC does not allege, and the district court did not find that it alleges, that Sjoblom engaged in any wrongful conduct outside the scope of his legal representation of Stanford Financial while he was a Chadbourne partner, the orders below should be reversed.

## STANDARD OF REVIEW

This Court reviews a district court's interpretation of state law *de novo*. *Am. Bankers Ins. Co. of Fla.* v. *Inman*, 436 F.3d 490, 492 (5th Cir. 2006). When interpreting state law, a "federal court is bound to answer the question the way the state's highest court would resolve the issue." *Occidental Chem. Corp.* v. *Elliott Turbomachinery Co.*, 84 F.3d 172, 175 (5th Cir. 1996). This Court also reviews *de novo* a district court's denial of a motion to dismiss on immunity grounds. *See, e.g.*, *Doe* v. *Robertson*, 751 F.3d 383, 386 (5th Cir. 2014). Although the court will construe alleged facts in the light most favorable to the nonmoving party, it "must 'identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* at 386–87 (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 679 (2009)) (alteration in original).

While the denial of a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) is generally reviewed for abuse of discretion, "to the extent that a ruling was a reconsideration of a question of law," as it is here, "the standard of review is *de novo*." *Dearmore* v. *City of Garland*, 519 F.3d 517, 520 (5th Cir. 2008) (citation and internal quotation marks omitted).

ARGUMENT

## I.

## UNDER TEXAS LAW, ATTORNEYS ARE IMMUNE FROM SUIT BY NON-CLIENTS FOR ACTIONS TAKEN WITHIN THE SCOPE OF REPRESENTING A CLIENT.

Texas law provides that an attorney is immune from suits by non-clients for actions taken as "part of the discharge of the lawyer's duties in representing his or her client." *Cantey Hanger*, 2015 WL 3976267, at *3 (citations and internal quotations omitted). Attorney immunity is not merely a defense to liability; it is an immunity from suit, which exists to protect attorneys from the threat of claims for damages as well as the burdens of litigation initiated by non-clients for actions that an attorney takes on behalf of a client. *See, e.g.*, *Rojas* v. *Wells Fargo Bank, N.A.*, 571 F. App'x 274, 278 (5th Cir. June 6, 2014) ("[A]ttorneys are generally immune from suits brought under Texas law against them by their adversaries if the action arises out of the duties involved in representing a client."); *Dixon*, 2008 WL 746548, at *7 (describing attorney immunity as "[i]mmunity from [s]uit"). Like other immunity questions, attorney immunity should be resolved "at the earliest possible stage in litigation." *Hunter* v. *Bryant*, 502 U.S. 224, 227 (1991). Where, as here, the basis for the immunity is apparent from the face of the complaint, it is appropriate to resolve the application of the immunity on a motion to dismiss and

thus to avoid subjecting attorneys to the "heavy costs" of litigation and discovery with respect to conduct that is immune from suit. *Iqbal*, 556 U.S. at 685.[5]

Texas cases establish that the attorney immunity doctrine exists to serve two important public policy interests:

*First*, it "is intended to ensure loyal, faithful, and aggressive representation by attorneys employed as advocates." *Cantey Hanger*, 2015 WL 3976267, at *3 (citation and internal quotations omitted). "If an attorney could be held liable to an opposing party for statements made or actions taken in the course of representing his client, he would be forced constantly to balance his own potential exposure against his client's best interest." *Alpert*, 178 S.W.3d at 405; *see also Cantey Hanger*, 2015 WL 3976267, at *5. Absent immunity for attorneys, the threat of such exposure "would act as a severe and crippling deterrent to the ends of justice because a litigant might be denied a full development of his rights." *Dixon*, 2008 WL 746548, at *7. Texas law thus holds that the interests of a non-client third party "are outweighed by the public's interest in loyal, faithful, and aggressive

---

[5]     Accordingly, numerous Texas state and federal courts have dismissed complaints at the pleading stage based on attorney immunity. *See Guzder* v. *Haynes & Boone, LLP*, No. 01-13-00985-CV, 2015 WL 3423731, at *8 (Tex. App.—Houston [1st Dist.] May 28, 2015, no pet.) (affirming dismissal of complaint based on attorney immunity doctrine); *Easton* v. *Phelan*, 01-10-01067-CV, 2012 WL 1650024, *10 (Tex. App.—Houston [1st Dist.] May 10, 2012, no pet.) (same); *Ortega* v. *Young Again Prods., Inc.*, Civ. No. H-12-0001, 2012 WL 1709714, at *5 (S.D. Tex. May 15, 2012) (dismissing complaint based on attorney immunity doctrine), *aff'd*, 548 F. App'x 108 (5th Cir. 2013); *FinServ Cas. Corp.* v. *Settlement Funding, LLC*, 724 F. Supp. 2d 662, 673–74 (S.D. Tex. 2010) (same); *Alpert* v. *Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405–08 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (affirming dismissal of complaint based on attorney immunity doctrine).

representation by attorneys employed as advocates." *Mitchell* v. *Chapman*, 10 S.W.3d 810, 812 (Tex. App.—Dallas 2000, pet. denied).

*Second*, attorney immunity is premised upon, and serves, principles of privity and reliance. A non-client third party has no claim against an attorney for conduct within the scope of the attorney's representation of clients because "the third party has not retained the attorney, the attorney's services were not rendered to the third party, no privity of contract exists between the third party and the attorney, and the attorney's duties are owed only to the client." *Jurek* v. *Kivell*, No. 01-10-00040-CV, 2011 WL 1587375, at *5 (Tex. App.—Houston [1st Dist.] Apr. 21, 2011, no pet.); *see also Cantey Hanger*, 2015 WL 3976267, at *3 (observing that "a lack of privity precludes attorneys' liability to non-clients for legal malpractice") (citation omitted)). Given the lack of privity, a third party's reliance upon an attorney's representations or statements is "not justified" when such representations or statements "take[] place in an adversarial context." *Jurek*, 2011 WL 1587375, at *5; *see also Alpert*, 178 S.W.3d at 405.

Consistent with the purposes of attorney immunity, the Texas Supreme Court held in *Cantey Hanger*, as numerous other Texas courts had previously held, that "'it is the kind of conduct that is controlling, and not whether that conduct is meritorious or sanctionable,'" in determining whether the immunity applies. 2015 WL 3976267, at *4 (quoting *Chapman Children's Trust*, 32 S.W.3d at 442). When

15

the conduct being challenged is "the kind of conduct in which an attorney engages when discharging duties to his client," it is protected by attorney immunity. *Id.* It is only when the conduct "does not involve the provision of legal services" and thus "fall[s] outside the scope of client representation," that the immunity does not apply. *Id.*; *see also Reagan Nat'l Adver. of Austin, Inc.* v. *Hazen*, No. 03-05-00699-CV, 2008 WL 2938823, at *2 (Tex. App.—Austin, July 29, 2008, no pet.) ("Texas courts have long held that attorneys cannot be held civilly liable for damages to non-clients, under any theory of recovery, for actions taken in connection with representing a client.") (internal citation omitted)).

"Even conduct that is wrongful in the context of the underlying suit is not actionable if it is part of the discharge of the lawyer's duties in representing his or her client." *Cantey Hanger*, 2015 WL 3976267, at *3 (citation and internal quotation marks omitted); *see also id*. at *6 ("[A]n attorney's conduct may be wrongful but still fall within the scope of client representation.").[6] Thus, for example, Texas courts have rejected claims by non-clients against attorneys for: falsifying a bill of sale in divorce proceedings to shift tax liability from a wife to

---

[6]  Conversely, conduct by an attorney that does not involve providing legal services and falls outside the scope of client representation is not protected "even if it occurred during a lawsuit." *Cantey Hanger*, 2015 WL 3976267, at *4. For example, a claim against an attorney for assaulting opposing counsel during a trial would be actionable because such conduct "is not part of the discharge of an attorney['s] duties in representing a party in the lawsuit." *Bradt* v. *West*, 892 S.W.2d 56, 72 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

her husband, *Cantey Hanger*, 2015 WL 3976267, at *1, *6; attempting to mislead the plaintiff and the court in fraudulently pursuing foreclosure proceedings, *Bitterroot Holdings, LLC* v. *MTGLQ Investors, L.P.*, No. 5:14-CV-862-DAE, 2015 WL 363196, at *4–6 (W.D. Tex. Jan. 27, 2015); attempting to force a deponent to change his testimony by threatening legal action, *Gaia Envtl., Inc.* v. *Galbraith*, 451 S.W.3d 398, 399–400 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); conducting a foreclosure sale unlawfully and with the knowledge that plaintiffs would rely on false information, *Bashore* v. *Bank of Am.*, No. 11-cv-93, 2012 WL 629060, at *4 (E.D. Tex. Feb. 27, 2012); failing to produce discoverable documents known to exist and assisting the client in providing false deposition testimony, *Lewis* v. *Am. Exploration Co.*, 4 F. Supp. 2d 673, 675, 680 (S.D. Tex. 1998); and making fraudulent misrepresentations in court to gain the advantage of a favorable venue, *Taco Bell Corp.* v. *Cracken*, 939 F. Supp. 528, 530–31 (N.D. Tex. 1996).  As the Texas Supreme Court pointed out in *Cantey Hanger*, "other mechanisms are in place to discourage and remedy such conduct, such as sanctions, contempt, and attorney disciplinary proceedings."  2015 WL 3976267, at *3.  The same is true of the alleged conduct challenged here.

## II.

### THE DISTRICT COURT ERRED IN RULING THAT TEXAS LAW RECOGNIZES A "FRAUD EXCEPTION" TO ATTORNEY IMMUNITY.

The district court acknowledged certain of the foregoing principles, recognizing that applicability of attorney immunity "turns on the type of conduct in which the attorney engages . . . ." ROA.2386 (citation and internal quotation marks omitted) [RE3]. Nevertheless, the court erroneously concluded that attorney immunity under Texas law is subject to a "fraud exception," ROA.2386–87 [RE3], and ruled that "all a plaintiff must do to avoid immunity is assert a colorable claim for fraud," ROA.2388 [RE3]. Applying this incorrect legal standard, the court erroneously determined that the SAC "make[s] sufficient allegations concerning Defendants' fraudulent conduct to support application of an exception to the attorney immunity doctrine." ROA.2388 [RE3].

Contrary to the district court's ruling, there is no "fraud exception" to attorney immunity under Texas law. As the Texas Supreme Court held in *Cantey Hanger*: "Fraud is not an exception to attorney immunity; rather, the defense does not extend to fraudulent conduct that is outside the scope of an attorney's legal representation of his client . . . ." 2015 WL 3976267, at *5.

In *Cantey Hanger*, a husband brought fraud claims against the law firm that represented his wife in divorce proceedings because it allegedly "falsified the bill of sale [for property subject to a divorce decree] in order to shift tax liability" from

18

the wife to the husband. *Id*. at *1. After the trial court granted summary judgment in favor of the law firm, the court of appeals reversed and held that although the conduct alleged was the type of "conduct in which an attorney engages to discharge his duties to his client," the law firm was not immune for such conduct because knowingly falsifying a bill of sale was "foreign to the duties of an attorney." *Byrd* v. *Vick, Carney & Smith LLP*, 409 S.W.3d 772, 780–81 (Tex. App.—Fort Worth 2013) (internal quotation marks omitted), *rev'd sub nom. Cantey Hanger*, 2015 WL 3976267; *see also Cantey Hanger*, 2015 WL 3976267, at *6.

The Texas Supreme Court reversed the court of appeals, categorically rejecting the contention that there is a "fraud exception" to attorney immunity. *Cantey Hanger*, 2015 WL 3976267, at *4–7. The Texas Supreme Court observed that "characterizing fraudulent conduct as an 'exception' to the attorney-immunity rule brings unnecessary confusion and complexity to the analysis." *Id.* at *5. Assessing the undisputed facts, the Texas Supreme Court held that, "[m]eritorious or not, the *type* of conduct alleged [by the plaintiffs] falls squarely within the scope of [the law firm's] representation of [its client] in the divorce proceedings." *Id*. at *6 (emphasis in original). Because the law firm "established that its alleged conduct was within the scope of its legal representation of [its client] during the

divorce proceedings," it was entitled to summary judgment on attorney immunity grounds. *Id.*

*Cantey Hanger* confirms beyond doubt the vitality of numerous earlier decisions cited in support of Chadbourne's motion to dismiss, holding that a plaintiff cannot defeat attorney immunity merely by alleging that an attorney "participat[ed] in fraudulent activities on his client's behalf"; rather, the judicial inquiry turns on whether the attorney knowingly committed or participated in "independently fraudulent activities" that are "foreign to the duties of an attorney," and thus engaged in alleged conduct falling "outside the scope of his legal representation of the client . . . ." *Id.* at *4 (citations and internal quotation marks omitted). As the Texas Supreme Court explained:

> Because the focus in evaluating attorney liability to a non-client is "on the kind—not the nature—of the attorney's conduct," a general fraud exception would significantly undercut the defense. Merely labeling an attorney's conduct "fraudulent" does not and should not remove it from the scope of client representation or render it "foreign to the duties of an attorney."

*Id.* at *5 (quoting *Dixon*, 2008 WL 746548, at *8; *Alpert*, 178 S.W.3d at 406).

Thus, after *Cantey Hanger* there can be no dispute that the district court erred as a matter of law in ruling that there is a "fraud exception" to attorney immunity and basing its decision on that putative exception.[7]

---

[7]  In reaching its erroneous conclusion that the attorney immunity doctrine contains a fraud exception, the district court cited a number of cases, including, among others: *Santiago* v.

## III.

## THE DISTRICT COURT ERRED IN DECLINING TO APPLY ATTORNEY IMMUNITY TO THE CLAIMS AGAINST CHADBOURNE.

Given that there is no "fraud exception" to attorney immunity, the sole question is whether Plaintiffs have alleged anything other than "the kind of conduct in which an attorney engages when discharging his duties to his client." *Cantey Hanger*, 2015 WL 3976267, at *4 (citation and internal quotations omitted). They have not.

Plaintiffs' claims against Chadbourne are all based upon Sjoblom's conduct while acting as "outside counsel to represent the interests of Stanford Financial and SIB in the SEC investigation." ROA.202 ¶ 60 [RE5]. The entirety of Sjoblom's alleged conduct while at Chadbourne consists of: (1) traveling to SIB's facility in Antigua and meeting with "Stanford, Davis, . . . King and others to familiarize himself with the operations and finances of SIB"; (2) "review[ing] SIB's disclosures to investors in its CD program"; (3) sending an October 2005 letter to the SEC and FINRA "in which he argued that the SEC did not have jurisdiction over Stanford Financial's CD sales program because the CDs did not constitute

---

*Mackie Wolf Zientz & Mann, P.C.*, No. 05-13-00620-CV, 2014 WL 4072131 (Tex. App.—Dallas Aug. 19, 2014, pet. denied); *Toles* v. *Toles*, 113 S.W.3d 899 (Tex. App.—Dallas 2003, no pet.); *Mendoza* v. *Fleming*, 41 S.W.3d 781 (Tex. App.—Corpus Christi 2001, no pet.); and *Likover* v. *Sunflower Terrace II, Ltd.*, 696 S.W.2d 468 (Tex. App.—Houston [1st Dist.] 1985, no writ). *See* ROA.2387–88 [RE3]. To the extent that these cases can be construed as embodying a fraud exception, they are inconsistent with *Cantey Hanger* and have thus been abrogated. *See* 2015 WL 3976267, at *4–5.

securities under U.S. law," relying on "case law from the U.S. Supreme Court" as well as on Antiguan law concerning the priority claim status of CD holders; and (4) making false representations in his letter to the SEC and FINRA about Antiguan law.  ROA.202–04 ¶¶ 61–64 [RE5].

This alleged conduct was uniformly part of the "discharge of [Sjoblom's] duties in representing [Stanford Financial]" in an SEC investigation.  *Cantey Hanger*, 2015 WL 3976267, at *3 (citation and internal quotation marks omitted). Far from being foreign to the duties of an attorney, Sjoblom's alleged conduct— including attending meetings with his clients and potential fact witnesses, ROA.202 ¶ 61 [RE5]; ROA.204–05 ¶ 65 [RE5], reviewing his clients' disclosures, ROA.203 ¶ 62 [RE5], and making legal arguments and representations on his clients' behalf to regulatory authorities, ROA.203–04 ¶¶ 63–64 [RE5]—is all core activity in the representation of a client, requiring "the office, professional training, skill, and authority of an attorney."  *Cantey Hanger*, 2015 WL 3976267, at *3 (citation and internal quotation marks omitted); *see also Weilbacher* v. *Craft*, No. 05-13-01252-CV, 2014 WL 6466856, at *5 (Tex. App.—Dallas Nov. 19, 2014, pet. denied) (applying immunity to attorney alleged to have engaged in fraud by making "statement[s] in the course of representing his client in an adversarial context"); *Sacks* v. *Hall*, No. 01-13-00531-CV, 2014 WL 6602460, at *11–22 (Tex. App.—Houston [1st Dist.] Nov. 20, 2014, no pet.) (applying immunity to

22

attorney alleged to have violated plaintiff's privacy rights by publicly filing her medical records in a lawsuit).[8]

Nor does the allegation that Sjoblom's statements, representations, or arguments to the securities regulators investigating his clients were in some way false or inaccurate, ROA.203–04 ¶ 64 [RE5], defeat the immunity, because "it is the kind of conduct that is controlling, and not whether that conduct is meritorious or sanctionable." *Cantey Hanger*, 2015 WL 3976267, at *4 (citation and internal quotation marks omitted). Plaintiffs "cannot, by attacking the merits of the positions advanced by [Sjoblom] and his clients, circumvent the [attorney immunity] doctrine's application." *Reagan Nat'l Adver. of Austin*, 2008 WL 2938823, at *8.

Indeed, it is undisputed that Sjoblom's alleged conduct while at Chadbourne falls squarely within the scope of representing his clients in connection with an SEC investigation. Plaintiffs never even argued or otherwise tried to show that Sjoblom's alleged conduct was outside the discharge of his duties in representing his clients. In their briefing below, Plaintiffs asserted that Sjoblom's alleged conduct was "foreign to the duties of a lawyer," but only because such conduct was alleged to be "outside the bounds of the law" and thus subject to an "exception to attorney

---

[8]  Had Sjoblom *not* engaged in the kind of conduct alleged—interviewing potential witnesses, reviewing documents, making legal arguments in defense of his clients—he would have faced an argument that he had *failed* to discharge his duties as an attorney to his clients.

immunity." ROA.689; *see also, e.g.*, ROA.1497, ROA.5731. Nor could Plaintiffs credibly argue that Sjoblom's conduct falls outside the scope of representing a client: their claims against Proskauer and Chadbourne are based on a *respondeat superior* theory, which is premised on their allegation that "Sjoblom was acting within the course and scope of his respective employments with Proskauer Rose and Chadbourne Parke, and in furtherance of said law firms' respective businesses . . . ." ROA.231 ¶ 115 [RE5].

As *Cantey Hanger* confirms, and numerous prior Texas cases have held, there is no exception to attorney immunity for unlawful or fraudulent conduct in the course of representing a client in an adversarial context. 2015 WL 3976267, at *5.[9] "Merely labeling an attorney's conduct fraudulent," therefore, "does not and should not . . . render it foreign to the duties of an attorney." *Id.* (internal quotation marks omitted). Plaintiffs did not identify in their SAC nor argue in their briefing in opposition to the motion to dismiss that they had alleged any conduct by Sjoblom

---

[9] *See also, e.g.*, *Bashore*, 2012 WL 629060, at *4 (holding that attorney immunity applied where attorney allegedly conducted an unlawful foreclosure sale of plaintiffs' property because the alleged conduct "still fall[s] within the scope of [the law firm's] legal representation of the lenders"); *Alpert* v. *Riley*, No. H-04-CV-3774, 2008 WL 304742, at *18 (S.D. Tex. Jan. 31, 2008) (holding that attorney immunity applied where plaintiffs alleged "unlawful actions" in connection with negotiating an agreement because "the Lawyer Defendants were providing legal services to [their client]"); *Reagan Nat'l Adver. of Austin*, 2008 WL 2938823, at *8 (holding that attorney immunity applied to allegedly illegal conduct committed in furtherance of a client's rights because the doctrine "applies regardless of whether [the attorney's] actions proved to be meritorious in the context of the dispute"); *Dixon*, 2008 WL 746548, at *8–11 (holding that attorney immunity applied to attorney's allegedly false claim that certain stock shares were subject to an arbitration award because the conduct was made "to facilitate the rendition of legal services . . . to his client").

while at Chadbourne that was outside the "discharge of [his] duties in representing [Stanford Financial]" or that did not require "the office, professional training, skill, and authority of an attorney." *Id.* at *3 (citation and internal quotation marks omitted). And the district court did not (and could not) conclude that the SAC alleged any such conduct. *See* ROA.2386–89 [RE3]. The conduct that is alleged, therefore, falls squarely within the scope of the immunity.

Finally, the applicability of the immunity is not affected by the fact that Sjoblom represented his clients in connection with an SEC investigation, as opposed to a civil litigation. Attorney immunity is not limited to an attorney's conduct in litigation; rather, it extends to any adversarial context in which an attorney provides legal services in the course of representing his client. *See Alpert*, 2008 WL 304742, at *17 (collecting cases and noting that "Texas cases do not limit an attorney's protection against liability to actions taken in the course of representing a client in litigation and the basis for the decisions applies to the provision of legal services outside the litigation context"). The fact that an attorney's alleged conduct "did not take place in a courtroom" therefore has no bearing on whether the immunity applies; it applies when "attorneys are conducting activities regarding the representation of their client . . . ." *Lackshin* v. *Spofford*, No. 14-03-00977-CV, 2004 WL 1965636, at *4 (Tex. App.—Houston [14th Dist.] Sept. 7, 2004, pet. denied). Given the fundamental policy underlying

attorney immunity—"to ensure loyal, faithful, and aggressive representation by attorneys employed as advocates," *Cantey Hanger*, 2015 WL 3976267, at *3 (citation and internal quotations omitted)—it would be highly incongruous to promote such faithful and aggressive representation in civil litigation between private parties, but not when the power and resources of a federal government agency are directed against a private party.

In sum, the district court's rulings, denying Chadbourne's motion to dismiss and its motion to alter or amend, are the product of clear legal error and are contrary to the fundamental public policy interests served by the attorney immunity doctrine.[10]   There is no basis in Texas law for denying Chadbourne attorney immunity and forcing it to bear the burdens of litigation—as well as exposure to billions of dollars in alleged damages—for conduct that was part of an attorney's representation of his clients.   Such a ruling also would be contrary to Texas's public policy favoring zealous legal representation, *Cantey Hanger*, 2015 WL 3976267, at *3, because it would force an attorney representing a client in a regulatory investigation to "constantly . . . balance his own potential exposure against his client's best interest," *Alpert*, 178 S.W.3d at 405.

---

[10]   The district court's failure to give any reason or explanation for denying Chadbourne's motion to alter or amend further supports reversal.  *See Midland W. Corp.* v. *F.D.I.C.*, 911 F.2d 1141, 1145 (5th Cir. 1990) (reversing a district court's denial of a Rule 59(e) motion "without stating the basis for denying it" because "the district court's order offers no reason or basis for denying the timely filed motion . . . and none is apparent . . . .").

## CONCLUSION

Chadbourne is immune from suit as a matter of law under Texas's attorney immunity doctrine. Chadbourne therefore respectfully submits that the district court's orders denying Chadbourne's motion to dismiss and motion to alter or amend should be reversed, and that this Court should remand the case with instructions to the district court to dismiss the SAC with prejudice. *See, e.g.*, *Robertson*, 751 F.3d at 394 (reversing and remanding with instructions to dismiss where the district court erred in denying defendants' motion to dismiss on grounds of immunity). Chadbourne respectfully requests all other relief to which it is entitled.

Dated:  August 3, 2015             Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP

By: /s/ Daniel J. Beller
Daniel J. Beller*
Daniel J. Leffell*
William B. Michael*
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:  dbeller@paulweiss.com
Email:  dleffell@paulweiss.com
Email:  wmichael@paulweiss.com
*Admitted *pro hac vice*

-and-

VINSON & ELKINS LLP

By: /s/ Harry M. Reasoner
Harry M. Reasoner
William D. Sims, Jr.
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
   Telephone:  (214) 220-7700
Facsimile:  (214) 220-7716
E-mail:  hreasoner@velaw.com
E-mail:  bsims@velaw.com

***Counsel for Defendant-Appellant***
***Chadbourne & Parke LLP***

### CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2015, a copy of the foregoing Brief of Defendant-Appellant was filed electronically with the Clerk of the Court using the Court's ECF System. Notice of this filing will be sent electronically by operation of the Court's electronic filing system to the following counsel of record:

Edward C. Snyder
CASTILLO SNYDER, P.C.
Bank of America Plaza
300 Convent St., Suite 1020
San Antonio, Texas 78205
esnyder@casnlaw.com

Edward F. Valdespino
Judith R. Blakeway
STRASBURGER & PRICE, LLP
300 Convent St., Suite 900
San Antonio, Texas 78205
edward.valdespino@strasburger.com
judith.blakeway@strasburger.com

P. Michael Jung
STRASBURGER & PRICE, LLP
901 Main St., Suite 4400
Dallas, Texas 75202
michael.strasburger.com

Douglas J. Buncher
NELIGAN FOLEY, LLP
325 N. St. Paul St., Suite 3600
Dallas, Texas 75201
dbuncher@neliganlaw.com

/s/ Daniel J. Beller
Daniel J. Beller

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because:  this brief contains 6,591 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14 point font.

/s/ Daniel J. Beller
Daniel J. Beller

**Counsel for Defendant-Appellant**
**Chadbourne & Parke LLP**

Dated:  August 3, 2015