No. 15-10500

IN THE

# United States Court of Appeals

## FOR THE FIFTH CIRCUIT

SAMUEL TROICE; PUNGA PUNGA FINANCIAL, LIMITED,
individually and on behalf of a class of all others similarly situated; PAM REED,

*Plaintiffs-Appellees*,

v.

PROSKAUER ROSE, L.L.P.; CHADBOURNE AND PARKE,
LIMITED LIABILITY PARTNERSHIP; THOMAS V. SJOBLOM,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

(No. 3:09-CV-1600)

**BRIEF FOR DEFENDANT-APPELLANT PROSKAUER ROSE LLP**

James P. Rouhandeh
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800

Bruce W. Collins
CARRINGTON, COLEMAN, SLOMAN &
  BLUMENTHAL, LLP
901 Main Street, Suite 500
Dallas, Texas 75202
Telephone:  (214) 855-3000
Facsimile:  (214) 855-1333

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certify that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Defendant-appellant Proskauer Rose LLP, a law firm, is a limited liability partnership with no parent company. No entity of any kind has a 10 percent or greater ownership interest in Proskauer Rose LLP.

**Plaintiffs-Appellees:**

Samuel Troice

Punga Punga Financial, Ltd.

Pam Reed

**Defendants-Appellants:**

Proskauer Rose LLP

Chadbourne & Parke LLP

Thomas V. Sjoblom

**Other Interested Parties:**

Proskauer Rose LLP's professional liability insurers

Chadbourne & Parke LLP's professional liability insurers

Horacio Mendez

Annalisa Mendez

Isaac Green

P. Mauricio Alvarado

Persons who purchased certificates of deposit issued by Stanford International Bank Ltd. ("SIB") and/or otherwise maintained investment accounts with SIB

Official Stanford Investors Committee

Ralph S. Janvey, Receiver

**Counsel for Plaintiffs-Appellees:**

Edward C. Snyder
CASTILLO SNYDER, P.C.
Bank of America Plaza, Suite 1020
300 Convent Street
San Antonio, TX 78205
Telephone:  (210) 630-4200
Facsimile:  (210) 630-4210
*Attorneys for Samuel Troice, et al.*

Edward F. Valdespino
Judith R. Blakeway
STRASBURGER & PRICE, LLP
2301 Broadway Street
San Antonio, TX 78215
Telephone:  (210) 250-6000
Facsimile:  (210) 250-6100
*Attorneys for Samuel Troice, et al.*

P. Michael Jung
STRASBURGER & PRICE, LLP
901 Main Street, Suite 4400
Dallas, TX 75202
Telephone:  (214) 651-4724
Facsimile:  (214) 659-4022
*Attorneys for Samuel Troice, et al.*

Robert McRae O'Boyle
STRASBURGER & PRICE, LLP
720 Brazos Street, Suite 700
Austin, TX 78701
Telephone:  (512) 499-3600
Facsimile:  (512) 499-3660
*Attorneys for Samuel Troice, et al.*

Douglas J. Buncher
NELIGAN FOLEY, LLP
325 N. St. Paul Street, Suite 3600
Dallas, TX 75201
Telephone:  (214) 840-5300
Facsimile:  (214) 840-5301
*Attorneys for Samuel Troice, et al.*

**Counsel for Defendants-Appellants:**

James P. Rouhandeh
Daniel J. Schwartz
Jonathan K. Chang
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5581
*Attorneys for Proskauer Rose LLP*

Bruce W. Collins
Neil R. Burger
CARRINGTON, COLEMAN, SLOMAN & BLUMENTHAL, LLP
901 Main Street, Suite 5500
Dallas, TX 75202
Telephone:  (214) 855-3000
Facsimile:  (214) 855-1333
*Attorneys for Proskauer Rose LLP*

Daniel J. Beller
Daniel J. Leffell
William B. Michael
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
*Attorneys for Chadbourne & Parke LLP*

Harry M. Reasoner
William D. Sims, Jr.
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, TX 75201-2975
Telephone:  (214) 220-7700
Facsimile:  (214) 220-7716
*Attorneys for Chadbourne & Parke LLP*

Joshua R. Hochberg
Christina M. Carroll
DENTONS US LLP
1900 K Street NW
Washington, DC 20006
Telephone:  (202) 496-7500
Facsimile:  (202) 496-7756
*Attorneys for Thomas V. Sjoblom*

William B. Mateja
FISH & RICHARDSON, P.C.
1717 Main Street, Suite 5000
Bank One Center
Dallas, TX 75201
Telephone:  (214) 747-5070
Facsimile:  (214) 747-2091
*Attorneys for Thomas V. Sjoblom*

Dated:  August 3, 2015                     Respectfully submitted,


DAVIS POLK & WARDWELL LLP


By:    /s/ James P. Rouhandeh
James P. Rouhandeh
Daniel J. Schwartz
Jonathan K. Chang

450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800

- and -

CARRINGTON, COLEMAN, SLOMAN
& BLUMENTHAL, LLP


By:    /s/ Bruce W. Collins
Bruce W. Collins
Neil R. Burger

901 Main Street, Suite 5500
Dallas, Texas 75202
Telephone:  (214) 855-3000
Facsimile:  (214) 855-1333

*Attorneys for Defendant-Appellant*
*Proskauer Rose LLP*

## STATEMENT REGARDING ORAL ARGUMENT

This appeal presents a single, case-dispositive question of significant importance: Whether Texas's attorney immunity doctrine bars a lawsuit filed by investors who were never clients of Proskauer Rose LLP ("Proskauer") but who seek to hold Proskauer liable based on its former partner's conduct in representing a client. In addition to being critically important to the parties, the application of attorney immunity is a significant issue for attorneys who practice within the Fifth Circuit. This case presents the first opportunity for this Court to apply the Texas Supreme Court's recent decision in Cantey Hanger, LLP v. Byrd, No. 13-0861, ---S.W.3d ----, 2015 WL 3976267 (Tex. June 26, 2015), which clarified the scope of that doctrine. Proskauer respectfully submits that oral argument should be permitted.

# TABLE OF CONTENTS

PAGE

CERTIFICATE OF INTERESTED PERSONS ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ...................................................vi

TABLE OF CONTENTS........................................................................................ vii

TABLE OF AUTHORITIES ..................................................................................ix

STATEMENT OF JURISDICTION ........................................................................1

STATEMENT OF THE ISSUE...............................................................................1

STATEMENT OF THE CASE.................................................................................3

    A.    Statement of Facts ........................................................................3

    B.    Procedural History..........................................................................9

SUMMARY OF THE ARGUMENT .......................................................................11

STANDARD OF REVIEW ...................................................................................13

ARGUMENT .......................................................................................................14

    I.    Proskauer Is Immune from Appellees' Suit Because It
        Seeks Recovery for Acts Sjoblom Performed as an
        Attorney Representing Stanford Financial...........................................14

        A.    The Attorney Immunity Doctrine Promotes
            Zealous Legal Representation by Barring Lawsuits
            Filed by Non-Clients Arising from an Attorney's
            Representation of a Client...........................................................15

        B.    On the Face of the Complaint, Sjoblom's Alleged
            Conduct Was Part of the Discharge of His Duties
            in Representing His Client..........................................................18

P<small>AGE</small>

II.      The "Fraud Exception" on Which the District Court
Relied Does Not Exist and Therefore Cannot Save
Appellees' Claims ................................................................22

CONCLUSION ...........................................................................25

CERTIFICATE OF SERVICE ....................................................26

CERTIFICATE OF COMPLIANCE ...........................................27

# TABLE OF AUTHORITIES

P<small>AGE</small>

## C<small>ASES</small>

Alpert v. Riley,
  No. H-04-CV-3774, 2008 WL 304742 (S.D. Tex. 2008).....................................21

Alpert v. Crain, Caton & James, P.C.,
  178 S.W.3d 398 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).................15

Atteberry v. Nocona Gen. Hosp.,
  430 F.3d 245 (5th Cir. 2005) ........................................................................ 14, 21

Baptist Mem'l Hosp. Sys. v. Sampson,
  969 S.W.2d 945 (Tex. 1998) ..............................................................................19

Barcelo v. Elliott,
  923 S.W.2d 575 (Tex. 1996) ..............................................................................15

Bitterroot Holdings, LLC v. MTGLQ Investors, L.P.,
  No. 5:14-CV-862-DAE, 2015 WL 363196 (W.D. Tex. Jan. 27, 2015) ..... 21, 23

Bradt v. West,
  892 S.W.2d 56 (Tex. App.—Houston [1st Dist.] 1994, writ denied) ........... 16, 17

Buck v. Blum,
  130 S.W.3d 285 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ...................19

Cantey Hanger, LLP v. Byrd,
  No. 13-0861, --- S.W.3d ----, 2015 WL 3976267 (Tex. June 26, 2015)...... passim

Chadbourne & Parke LLP v. Troice,
  134 S. Ct. 1058 (2014).........................................................................................9

Colston v. Barnhart,
  130 F.3d 96 (5th Cir. 1997) ...............................................................................13

Cousin v. Small,
  325 F.3d 627 (5th Cir. 2003). ............................................................................23

PAGE

Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.,
   No. 01-06-00696-CV, 2008 WL 746548
   (Tex. App.— Houston [1st Dist.] Mar. 20, 2008, pet. denied) ......... 12, 17, 18, 20

Easton v. Phelan,
    No. 01-10-01067-CV, 2012 WL 1650024
   (Tex. App.—Houston [1st Dist.] May 10, 2012, no pet.) ....................................15

Elmakiss v. Hughes,
   No. 12-09-00269-CV, 2010 WL 2982922
   (Tex. App.—Tyler July 30, 2010, pet. denied) (mem. op.)................................21

FinServ. Cas. Corp. v. Settlement Funding, LLC,
    724 F. Supp. 2d 662 (S.D. Tex. 2010) ...............................................................15

Gaia Envtl. v. Galbraith,
   451 S.W.3d 398 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).............23

Gruss v. Zwirn,
   No. 09 Civ. 6441(PGG)(MHD), 2013 WL 3481350
   (S.D.N.Y. July 10, 2013).....................................................................................20

Guzder v. Haynes & Boone, LLP,
   No. 01-13-00985-CV, 2015 WL 3423731
   (Tex. App.—Houston [1st Dist.] May 28, 2015, no pet. h.) ...............................15

Henzel v. Gerstein,
   608 F.2d 654 (5th Cir. 1979) ..............................................................................23

Hunter v. Bryant,
   502 U.S. 224 (1991).............................................................................................15

In re Subpoenas Duces Tecum,
   738 F.2d 1367 (D.C. Cir. 1984)...........................................................................20

Janvey v. Adams,
   588 F.3d 831 (5th Cir. 2009) ................................................................................4

x

PAGE

Lewis v. Am. Exploration Co.,
    4 F. Supp. 2d 673 (S.D. Tex. 1998) ............................................................ 21, 22

Malina v. Gonzales,
    994 F.2d 1121 (5th Cir. 1993) ...............................................................13

McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,
    991 S.W.2d 787 (Tex. 1999) ..................................................................15

McCampbell v. KPMG Peat Marwick,
    982 F. Supp. 445 (N.D. Tex. 1997) ......................................................23

Michels v. Zeifman,
    No. 03-08-00287-CV, 2009 WL 349167
    (Tex. App.—Austin Feb. 12, 2009, pet. denied) (mem. op.) ...............16

Mitchell v. Chapman,
    10 S.W.3d 810 (Tex. App.—Dallas 2000, pet. denied) ................. 16, 24

Ortega v. Young Again Prods., Inc.,
    Civ. No. H-12-0001, 2012 WL 1709714 (S.D. Tex. May 15, 2012), aff'd,
    548 F. App'x 108 (5th Cir. 2013) ..........................................................15

Renfroe v. Jones & Assocs.,
    947 S.W.2d 285 (Tex. App.—Fort Worth 1997, writ denied)...............17

Rojas v. Wells Fargo Bank, N.A.,
    571 F. App'x 274 (5th Cir. 2014) ..........................................................16

Roland v. Green,
    675 F.3d 503 (5th Cir. 2012) ...................................................................9

Sacks v. Hall,
    No. 01-13-00531-CV, 2014 WL 6602460
    (Tex. App.—Houston [1st Dist.] Nov. 20, 2014, no pet.) (mem. op.) .................21

Shanks v. AlliedSignal, Inc.,
    169 F.3d 988 (5th Cir. 1999) ...................................................................1

<u>P</u>AGE

Taco Bell Corp. v. Cracken,
   939 F. Supp. 528 (N.D. Tex. 1996) .............................................................. 18, 23

U.S. ex rel. Burns v. Family Practice Assocs.,
   162 F.R.D. 624 (S.D. Cal. 1995) ........................................................................20

White v. Bayless,
   32 S.W.3d 271 (Tex. App.—San Antonio 2000, pet. denied) ..........................23

<u>S</u>TATUTES

28 U.S.C. § 1291 ...........................................................................................................1

28 U.S.C. § 1332 ...........................................................................................................1

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over this action pursuant to 28 U.S.C.

§ 1332(d)(2)(B) because this is a class action in which the amount in controversy

exceeds $5 million, and the putative class is alleged to include foreign citizens and

at least one "defendant [who] is a citizen of a State."  This Court has jurisdiction to

review the District Court's collateral order denying attorney immunity to

Proskauer Rose LLP ("Proskauer") pursuant to 28 U.S.C. § 1291 because Texas's

attorney immunity doctrine affords Proskauer an immunity from the burdens of

litigation initiated by non-clients such as plaintiffs-appellees ("Appellees").[1]  See,

e.g., Shanks v. AlliedSignal, Inc., 169 F.3d 988, 992 (5th Cir. 1999).

Proskauer filed a timely notice of appeal on May 26, 2015 from the District

Court's March 4, 2015 order denying Proskauer's motion to dismiss and the

District Court's May 15, 2015 order denying Proskauer's motion for

reconsideration of that decision.  (ROA.6109.)

## STATEMENT OF THE ISSUE

Texas's attorney immunity doctrine bars non-clients from suing attorneys for

actions taken in connection with representing a client.  As the Texas Supreme Court

---

[1] On June 25, 2015, Appellees moved to dismiss this appeal for lack of jurisdiction. Proskauer opposed that motion—which remains pending before this Court—on July 8, 2015, and hereby incorporates by reference the arguments set forth in Defendants-Appellants' Opposition to Plaintiffs-Appellees' Motion to Dismiss Appeal for Want of Jurisdiction.

1

recently confirmed, the immunity analysis is functional:  So long as the challenged conduct "is part of the discharge of [the attorney's] duties to his client," the attorney is immune from suit by a non-client "regardless of whether [the conduct] is labeled fraudulent."  Cantey Hanger, LLP v. Byrd, No. 13-0861, --- S.W.3d ----, 2015 WL 3976267, at *5 (Tex. June 26, 2015).

Appellees sued Proskauer based on alleged acts by its former partner, defendant-appellant Thomas V. Sjoblom, while he was representing Stanford Financial Group, Stanford International Bank Ltd. ("SIB"), and certain other affiliates of Stanford Financial Group (together, "Stanford Financial") in connection with an investigation conducted by the Securities & Exchange Commission (the "SEC") into whether Sjoblom's client had violated the securities laws.  Sjoblom allegedly conspired with Stanford Financial to obstruct the investigation by making representations to the SEC in responding to subpoenas, advancing legal and factual arguments, and scheduling, preparing and presenting witness testimony—acts that lawyers routinely perform for their clients.  The District Court nonetheless denied Proskauer attorney immunity, concluding that the allegations in the Second Amended Complaint (the "SAC" or "complaint") "support[ed] application of . . . [a fraud] exception to the attorney immunity doctrine."  (ROA.2388.)

The issue presented on this appeal is whether Proskauer is immune from Appellees' suit where the Texas Supreme Court has clarified that "[f]raud is not an exception to attorney immunity." <u>Cantey Hanger</u>, 2015 WL 3976267, at *5.

## STATEMENT OF THE CASE

### A.    Statement of Facts

Proskauer is an international law firm.  (ROA.178 (SAC ¶ 7).)  From 2006 to 2009, Thomas V. Sjoblom was a partner at Proskauer.  (ROA.178, ROA.231 (SAC ¶¶ 8, 115).)  In approximately August 2005, Stanford Financial allegedly retained Sjoblom and his prior law firm—Chadbourne & Parke LLP ("Chadbourne")—to represent Stanford Financial in connection with an SEC investigation.  (ROA.186, ROA.202-03 (SAC ¶¶ 26, 60-61).)  Sjoblom continued that representation when he left Chadbourne and joined Proskauer in the summer of 2006.  (ROA.225-26, ROA.231 (SAC ¶¶ 106, 115).)

Appellees are investors who allegedly held a certificate of deposit ("CD" or "CDs") "or other investment account[]" with SIB as of February 2009.  (ROA.217 (SAC ¶ 92).)  On behalf of a putative worldwide class of thousands of CD purchasers, Appellees assert claims against Proskauer for (i) aiding and abetting Stanford Financial's alleged violations of the registration and anti-fraud provisions of the Texas Securities Act; (ii) aiding and abetting Stanford Financial's alleged common law fraud; and (iii) allegedly conspiring with Stanford Financial to

defraud the putative class.[2]  (ROA.219-30 (SAC ¶¶ 97-113).)  The complaint

alleges that Proskauer is liable on a respondeat superior theory for Sjoblom's

conduct.  (ROA.231 (SAC ¶ 115).)  The Receiver of the Stanford Receivership

Estate, who stands in the shoes of Proskauer's former client Stanford Financial, is

not a member of the putative class and is not otherwise a party to this litigation.[3]

As this Court is aware, Stanford Financial and SIB were two of the vehicles

used by R. Allen Stanford and his associates to carry out a Ponzi scheme through

which they purportedly induced Appellees and other investors to purchase or hold

allegedly valueless CDs.  See, e.g., Janvey v. Adams, 588 F.3d 831, 833 (5th Cir.

2009).  Although Stanford is not a defendant in this action, Appellees' complaint is

almost entirely devoted to cataloguing his wrongdoing.  (See, e.g., ROA.176-77,

ROA.182-86, ROA.190-91 (SAC ¶¶ 1, 19-26, 36-37).)

In contrast to the allegations of misconduct lodged against Stanford,

Appellees offer few factual allegations regarding Proskauer and Sjoblom.  Indeed,

the first twenty-six pages of the complaint do not mention Proskauer and Sjoblom

at all, other than to identify them as parties.  Significantly, Appellees do not allege

---

[2] Appellees' motion to certify the putative class was pending before the District Court when this appeal was filed.

[3] The Receiver has, however, brought a separate action against Proskauer asserting professional negligence and other claims based on the same conduct as Appellees allege in their complaint.

that Sjoblom or Proskauer (i) participated in any way in promoting, offering or selling any CDs or other investments; (ii) made any representations, much less misrepresentations, to investors; (iii) prepared or approved Stanford Financial marketing materials, sales scripts, annual reports or financial records; (iv) participated in any of Stanford Financial's business or investment decisions; or (v) were paid any incentives based on the sale of SIB CDs or otherwise had any financial stake in Stanford Financial.

Rather, Appellees' lawsuit against Proskauer is based on the theory that Sjoblom conspired with Stanford and others to thwart the SEC's investigation of Stanford Financial. (ROA.202 (SAC ¶ 60).) The complaint identifies four acts that Sjoblom allegedly performed over a four-year period that supposedly obstructed the SEC's investigation. As Appellees' complaint alleges, Sjoblom purportedly undertook those acts while acting as "outside counsel to represent the interests of Stanford Financial and SIB in the SEC investigation." (ROA.202 (SAC ¶ 60).)

First, Appellees allege that in October 2005, Sjoblom (while at Chadbourne) sent a letter to the SEC "in which he argued that the SEC did not have jurisdiction over Stanford Financial's CD sales program because the CDs did not constitute securities under U.S. law." (ROA.203-04 (SAC ¶ 63).) Appellees allege that at the

time Sjoblom sent that letter, he knew that "the SIB CDs more than likely constituted securities under U.S. law."  (ROA.204-05 (SAC ¶ 65).)

Second, Appellees allege that in late September 2006, Sjoblom (then at Proskauer) stated to the SEC during the course of its investigation that "he had 'heard through the grapevine'" that the SEC had not provided Antigua's banking regulator with a proper document request concerning SIB; that the SEC "should 'go to Antigua' to review the SIB examination reports"; that, in conducting its investigation, "the SEC had 'no basis' to request documents regarding SIB's investment portfolio from SIB"; that he "found SIB to be credible in all their business dealings"; and that SIB was an "'incredible institution.'"  (ROA.206 (SAC ¶ 68).)  Appellees allege that these representations were intended to mislead the SEC and delay its investigation.  (ROA.206 (SAC ¶¶ 67-68).)

Third, Appellees allege that in January 2009, Sjoblom made certain statements to SEC Enforcement Division lawyers in the course of scheduling depositions for Stanford (Stanford Financial's chief executive), James Davis (Stanford Financial's chief financial officer) and Laura Pendergest-Holt (Stanford Financial's chief investment officer), all of whom the SEC had subpoenaed to testify about SIB's portfolio.  (ROA.208-10 (SAC ¶¶ 73-76).)  Specifically, Appellees allege that Sjoblom told SEC attorneys that Pendergest-Holt and Juan Rodriguez

6

Tolentino (SIB's president) "were . . . 'better people [than Stanford and Davis] to explain the details' about SIB's entire portfolio" because Stanford and Davis "did not 'micro-manage' the portfolio." (ROA.209 (SAC ¶ 75) (emphasis omitted).) According to the complaint, Sjoblom's statements were untrue because Sjoblom knew that Stanford and Davis were the only people "in a position to discuss the assets in [SIB's] Tier III portfolio" at their SEC depositions. (ROA.209 (SAC ¶ 74).) Appellees also allege that Sjoblom argued to the SEC that SIB was "'not a criminal enterprise,' and that 'all assets are there.'" (ROA.209 (SAC ¶ 75).) That aspect of Sjoblom's advocacy is also alleged to have been false. (ROA.209 (SAC ¶ 75).)

Fourth, Appellees allege that Sjoblom represented Pendergest-Holt in her capacity as an executive of Stanford Financial during her sworn SEC testimony on February 10, 2009. During that testimony, Sjoblom allegedly failed to correct Pendergest-Holt's alleged "lies" regarding her preparation for her testimony and her knowledge of the Tier III assets. (ROA.212-13 (SAC ¶ 83).) Appellees also allege that Sjoblom "actively suborned Pendergest-Holt's perjury . . . by improperly recasting [a] question" asked by the SEC Enforcement Division staff about whether anyone other than Sjoblom was present during her meetings to prepare for her

testimony by "narrow[ing] it to 'when we were preparing <u>last night</u>, was there a third person present?'" (ROA.212-13 (SAC ¶ 83).)

According to the complaint, in the course of preparing Stanford Financial executives to make presentations to the SEC, Sjoblom learned on February 5, 2009 that the composition and performance of SIB's investment portfolio had been misrepresented to investors. (ROA.211-12 (SAC ¶¶ 80-81).) On February 11, 2009—one day after Pendergest-Holt's testimony—Sjoblom and Proskauer withdrew from representing Stanford Financial and, on February 13, disaffirmed all prior oral and written representations to the SEC.[4] (ROA.213 (SAC ¶ 84).) These allegations from Appellees' own complaint underscore what Davis's sworn trial testimony (elicited by the government) has since confirmed: Stanford's scheme was concealed from Sjoblom until shortly before Proskauer and Sjoblom withdrew from representing Stanford and disaffirmed Sjoblom's prior representations to regulators. (ROA.2865-66 (Trial Tr. vol. 11, 3259:8-3260:2, Feb. 6, 2012) (testifying that prior to February 2009, Sjoblom and others had "been led to believe" that the assets in Tier III "were the same style[] and content of what was in Tier 2"); ROA.2885 (Trial Tr. vol. 11, 3279:3-8, Feb. 6, 2012) (testifying that Sjoblom and others did not

---

[4] The complaint incorrectly states the dates on which Sjoblom and Proskauer withdrew and disaffirmed all prior representations, but the precise dates are immaterial for purposes of this appeal.

know that Stanford Financial's assets "weren't worth what [Stanford and Davis] said they were . . . worth").)

### B.     Procedural History

Appellees filed their complaint in the U.S. District Court for the Northern District of Texas on August 27, 2009, amending it twice. (ROA.11-12.) Proskauer moved to dismiss the second amended complaint on several grounds, including that Appellees' suit was barred by the Securities Litigation Uniform Standards Act ("SLUSA") and Texas's attorney immunity doctrine. (ROA.465-520.) On October 21, 2011, the District Court dismissed Appellees' complaint on SLUSA grounds without reaching the attorney immunity issue. (ROA.1100.) This Court reversed that dismissal on appeal, see Roland v. Green, 675 F.3d 503 (5th Cir. 2012), and the Supreme Court affirmed this Court's judgment, see Chadbourne & Parke LLP v. Troice, 134 S. Ct. 1058 (2014).

Following remand, the District Court ruled on the remaining arguments presented by Proskauer's motion to dismiss. On March 4, 2015, the District Court entered an order denying Proskauer's motion to the extent that it was based on the attorney immunity doctrine. (ROA.2386-89.) The District Court acknowledged that "law firms ordinarily owe no duty of care to [third parties] under Texas law"

(ROA.2404),[5] but nevertheless declined to dismiss Appellees' claims based on

Texas's attorney immunity doctrine because Appellees invoked the so-called

"fraud exception" to attorney immunity that some courts had recognized.

(ROA.2386-88.)  Proskauer timely moved under Federal Rule of Civil Procedure

59(e) for reconsideration of the District Court's denial of attorney immunity.

(ROA.29.)  The District Court denied Proskauer's motion for reconsideration on

May 15, 2015 (ROA.6099), and Proskauer timely appealed to this Court on May 26,

2015 (ROA.6109).

One month later, on June 26, 2015, the Texas Supreme Court decided Cantey

Hanger, holding that the "fraud exception" that formed the basis of the District

Court's denial of attorney immunity does not exist:  "Fraud is not an exception to

attorney immunity."[6]  2015 WL 3976267, at *5.  Citing important policy

considerations that weigh against subjecting counsel to claims by a non-client, the

Texas Supreme Court explained that "a general fraud exception would significantly

undercut the [attorney immunity] defense. . . .  Merely labeling an attorney's

conduct 'fraudulent' does not and should not remove it from the scope of client

---

[5] On this basis, the District Court dismissed Appellees' negligent retention/supervision claim.  (ROA.2404.)

[6] While its motion to dismiss was pending, Proskauer requested that the District Court defer ruling until the Texas Supreme Court issued its decision in Cantey Hanger.  (ROA.2253.) The District Court declined to do so.

representation or render it 'foreign to the duties of an attorney.'" <u>Id.</u> (citations omitted); <u>see also</u> <u>id.</u> at *9 n.2 (Green, J., dissenting) ("I agree with the Court's holding that there is no 'fraud exception' to litigation immunity.").

## SUMMARY OF THE ARGUMENT

Texas's attorney immunity doctrine precludes non-clients like Appellees from suing attorneys such as Proskauer and Sjoblom for "actions taken in connection with representing a client," so long as the complained-of conduct "is part of the discharge of the lawyer's duties in representing his or her client." <u>Cantey Hanger</u>, 2015 WL 3976267, at *3 (quotation marks and citation omitted). Here, Appellees—in their own words—seek to hold Proskauer liable for the conduct of its former partner acting as "outside counsel to represent the interests of Stanford Financial and SIB in the SEC investigation." (ROA.202 (SAC ¶ 60); <u>see</u> ROA.208-10, ROA.212-13 (SAC ¶¶ 62, 65, 67-68, 74-76, 83).) Accordingly, the District Court should have dismissed this action pursuant to the attorney immunity doctrine. Instead, the District Court denied Proskauer attorney immunity based on a "fraud exception" to the doctrine that the Texas Supreme Court categorically rejected in <u>Cantey Hanger</u>. The District Court's order denying Proskauer's dismissal motion should be reversed.

11

The core of Appellees' allegations against Proskauer and Sjoblom is that
Sjoblom, in representing his client Stanford Financial in connection with an SEC
investigation, undertook four acts that had the effect of obstructing that
investigation. (ROA.202 (SAC ¶ 60).) There is no question that the alleged acts
themselves—advocating for his client, responding to subpoenas, preparing witnesses,
and defending depositions—were undertaken by Sjoblom as part of discharging his
duties to Stanford Financial. In short, Sjoblom's alleged conduct "requires the
office, professional training, skill, and authority of an attorney." <u>Dixon Fin. Servs.,
Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.</u>, No. 01-06-00696-CV, 2008
WL 746548, at *7 (Tex. App.— Houston [1st Dist.] Mar. 20, 2008, pet. denied)
(quotation marks omitted). Such conduct, even if wrongful, is not actionable by a
non-client. <u>Cantey Hanger</u>, 2015 WL 3976267, at *3. Accordingly, on the face of
the complaint, the attorney immunity doctrine shields Proskauer from this lawsuit.

In denying Proskauer's motion to dismiss, the District Court reached a
contrary conclusion by applying a "fraud exception" to attorney immunity.
(ROA.2388.) As the Texas Supreme Court has explained, that exception simply
does not exist: "Merely labeling an attorney's conduct 'fraudulent' does not and
should not remove it from the scope of client representation or render it 'foreign to
the duties of an attorney.'" <u>Cantey Hanger</u>, 2015 WL 3976267, at *5 (citation

omitted). The Texas Supreme Court's ruling in <u>Cantey Hanger</u> confirms that

Proskauer is immune from Appellees' suit because all of the acts that Sjoblom

allegedly undertook were within the scope of his representation of Stanford

Financial in defending the company against the SEC's investigation. This Court

should therefore reverse the District Court's ruling, and remand this case with

instructions to the District Court to dismiss Appellees' claims against Proskauer with

prejudice.

## STANDARD OF REVIEW

When, as here, the applicability of an immunity from suit is evident on the

face of the complaint's allegations, "[t]he district court's denial of a motion to

dismiss on immunity grounds presents a question of law, reviewable <u>de novo</u>."

<u>Malina v. Gonzales</u>, 994 F.2d 1121, 1124 (5th Cir. 1993); <u>see</u> <u>Colston v. Barnhart</u>,

130 F.3d 96, 98-99 (5th Cir. 1997) ("We can determine as a matter of law whether

[defendant] is entitled to qualified immunity after accepting all of [plaintiff's]

factual allegations as true."). Because Texas's attorney immunity doctrine

precludes Appellees from showing their "entitle[ment] to relief under any set of

facts or any possible theory . . . consistent with the allegations in the complaint,"

this Court should reverse the District Court's order denying Proskauer's motion to

dismiss the complaint.  Atteberry v. Nocona Gen. Hosp., 430 F.3d 245, 252 (5th Cir. 2005) (quotation marks and citation omitted).

## ARGUMENT

**I.     Proskauer Is Immune from Appellees' Suit Because It Seeks Recovery for Acts Sjoblom Performed as an Attorney Representing Stanford Financial**

Appellees' claims are barred under the attorney immunity doctrine.  The acts Sjoblom allegedly took in furtherance of the Stanford conspiracy are the types of services that attorneys customarily undertake in discharging their duties to their clients.  Under Cantey Hanger, the "type of conduct alleged falls squarely within the scope of [Proskauer's] representation of [Stanford Financial]," and accordingly cannot give rise to claims by non-clients such as Appellees.  Cantey Hanger, 2015 WL 3976267, at *6.

The purpose of attorney immunity is to promote attorneys' zealous representation of their clients by ensuring that attorneys do not have to second-guess whether the actions they undertake in service of their clients might later subject them to civil liability to third parties.  That important policy concern applies with full force to Sjoblom and Proskauer in this case, and the District Court should have

dismissed Appellees' complaint on that basis.[7]  See id. at *4 (attorney immunity

extends to "conduct in which an attorney engages when discharging his duties to

his client" (quotation marks omitted)).

### A.  The Attorney Immunity Doctrine Promotes Zealous Legal Representation by Barring Lawsuits Filed by Non-Clients Arising from an Attorney's Representation of a Client

Attorneys such as Sjoblom and law firms such as Proskauer owe duties to

their clients, but they generally owe no duties to strangers to the attorney-client

relationship.  See Barcelo v. Elliott, 923 S.W.2d 575, 577-78 (Tex. 1996); see also

McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests, 991 S.W.2d 787,

792-93 (Tex. 1999) (recognizing that attorneys might, in limited circumstances, be

liable to non-clients on a theory of negligent misrepresentation).[8]  To ensure that

---

[7] Texas state and federal courts routinely dismiss complaints at the pleading stage based on attorney immunity.  See Guzder v. Haynes & Boone, LLP, No. 01-13-00985-CV, 2015 WL 3423731, at *8 (Tex. App.—Houston [1st Dist.] May 28, 2015, no pet. h.) (affirming dismissal of complaint based on attorney immunity doctrine); Easton v. Phelan, No. 01-10-01067-CV, 2012 WL 1650024, at *10 (Tex. App.—Houston [1st Dist.] May 10, 2012, no pet.) (same); Ortega v. Young Again Prods., Inc., Civ. No. H-12-0001, 2012 WL 1709714, at *5 (S.D. Tex. May 15, 2012) (dismissing complaint based on attorney immunity doctrine), aff'd, 548 F. App'x 108 (5th Cir. 2013); FinServ. Cas. Corp. v. Settlement Funding, LLC, 724 F. Supp. 2d 662, 673-74 (S.D. Tex. 2010) (same); Alpert v. Crain, Caton & James, P.C., 178 S.W.3d 398, 407-08 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (affirming dismissal of complaint based on attorney immunity doctrine).  And as the Supreme Court has noted, "immunity questions [should be resolved] at the earliest possible stage in litigation."  Hunter v. Bryant, 502 U.S. 224, 227 (1991). Although some Texas cases have resolved the immunity issue on summary judgment, Texas did not have a Rule 12(b)(6) equivalent for dismissing a case until March 1, 2013.  See Guzder, 2015 WL 3423731, at *3.

[8] Texas law permits a non-client to sue for negligent misrepresentation "where an independent duty to the nonclient arises based on the attorney's manifest awareness of the
(…continued)

15

attorneys are not chilled by the prospect of being sued by non-clients, Texas

provides attorneys immunity from suits by non-clients based on "actions taken in

connection with representing a client." <u>Cantey Hanger</u>, 2015 WL 3976267, at *3

(quotation marks and citation omitted); <u>see</u> <u>Rojas v. Wells Fargo Bank, N.A.</u>, 571 F.

App'x 274, 278 (5th Cir. 2014) (attorneys are "immune from suits [by non-clients]

. . . aris[ing] out of the duties involved in representing a client"); <u>Michels v.

Zeifman</u>, No. 03-08-00287-CV, 2009 WL 349167, at *2 (Tex. App.—Austin Feb.

12, 2009, pet. denied) (mem. op.) (characterizing attorney immunity as "an absolute

bar" to a non-client's claim against an attorney); <u>see</u> <u>Bradt v. West</u>, 892 S.W.2d 56,

72 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (concluding that an attorney

is immune for "conduct an attorney engages in as part of the discharge of his duties

in representing a party in a lawsuit").  This immunity ensures that an attorney can

engage in "loyal, faithful, and aggressive representation" without having to "balance

[his or her] own potential exposure against [his or her] client's best interest."

<u>Cantey Hanger</u>, 2015 WL 3976267, at *3, *5 (quotation marks omitted); <u>see</u>

<u>Mitchell v. Chapman</u>, 10 S.W.3d 810, 812 (Tex. App.—Dallas 2000, pet. denied)

---

(continued…)

nonclient's reliance on the misrepresentation and the attorney's intention that the nonclient so rely." <u>Cantey Hanger</u>, 2015 WL 3976267, at *4 n.7 (quotation marks and alterations omitted). Appellees have not alleged any such claim, and could not do so because Sjoblom did not make any representations to Appellees.

(concluding that non-client did "not have a cause of action" against defendant-attorney because the non-client's interest in suing was "outweighed by the public's interest in loyal, faithful, and aggressive representation").

Allowing non-clients to subject attorneys to the burdens and risks of litigation for conduct undertaken in the course of representing a client would damage the adversarial system: Attorneys would be chilled by the prospect that they "may be sued [by a non-client] . . . for something [they do] in the course of representing [their] client," resulting in "<u>tentative</u> representation, not the <u>zealous</u> representation that . . . the public has a right to expect." <u>Bradt</u>, 892 S.W.2d at 72. "Such a result would act as a severe and crippling deterrent to the ends of justice."[9] <u>Dixon</u>, 2008 WL 746548, at *7.

The Texas Supreme Court has made clear that non-parties may not circumvent the attorney immunity doctrine by alleging that the attorney's specific acts were wrongful. The immunity analysis must focus "on the kind—not the nature—of the attorney's conduct." <u>Cantey Hanger</u>, 2015 WL 3976267, at *5

---

[9] Although the attorney immunity doctrine bars non-clients from suing attorneys for wrongdoing in the course of a representation, non-clients are not left without remedies because they may have claims against the attorney's client. In addition, attorneys are subject to sanctions, contempt and attorney discipline proceedings, all of which operate to "discourage and remedy [wrongful] conduct." <u>Cantey Hanger</u>, 2015 WL 3976267, at *3; <u>see</u> <u>Renfroe v. Jones & Assocs.</u>, 947 S.W.2d 285, 287 (Tex. App.—Fort Worth 1997, writ denied) ("If an attorney's conduct violates his professional responsibility, the remedy is public, not private.").

(quotation marks omitted); <u>Taco Bell Corp. v. Cracken</u>, 939 F. Supp. 528, 532-33

(N.D. Tex. 1996) ("[I]t is the <u>kind</u>—not the <u>nature</u>—of conduct that is controlling.").

Under this functional test, attorneys are immune from suits by non-clients whenever

their conduct on behalf of a client "requires the office, professional training, skill,

and authority of an attorney." <u>Dixon</u>, 2008 WL 746548, at *7 (quotation marks

omitted). Thus, "[e]ven conduct that is wrongful in the context of the underlying

suit is not actionable if it is part of the discharge of the lawyer's duties in

representing his or her client." <u>Cantey Hanger</u>, 2015 WL 3976267, at *4 (quotation

marks omitted); <u>see id.</u> at *5 ("Merely labeling an attorney's conduct 'fraudulent'

does not and should not remove it from the scope of client representation or render

it foreign to the duties of an attorney." (quotation marks omitted)).

### B.     On the Face of the Complaint, Sjoblom's Alleged Conduct Was Part of the Discharge of His Duties in Representing His Client

Appellees' complaint makes clear that the attorney immunity doctrine bars

this lawsuit because Sjoblom's conduct was "squarely within the scope of [his]

representation" of his clients. <u>Id.</u> at *6. The complaint expressly alleges that

Proskauer and Sjoblom were "retained . . . as outside counsel to represent the

interests of Stanford Financial and SIB in the SEC investigation of Stanford

Financial and SIB." (ROA.202 (SAC ¶ 60).) Thus, it is apparent from the face of

the complaint that Appellees seek to hold Proskauer liable for conduct undertaken

by Sjoblom while representing his client in an adversarial proceeding—i.e., the SEC's investigation of Stanford Financial. Proskauer is therefore immune from Appellees' suit.

Notably, there are no allegations that Sjoblom took any action outside of the scope of this representative capacity. That is not surprising because Appellees base their claims against Proskauer solely on a respondeat superior theory of vicarious liability for Sjoblom's conduct.[10] In support of this theory, Appellees allege that "Sjoblom was acting within the course and scope of his respective employments with Proskauer . . . and Chadbourne . . ., and in furtherance of said law firms' respective businesses." (ROA.231 (SAC ¶ 115).) Accordingly, any suggestion that Sjoblom's alleged acts were outside the scope of his role as an attorney to Stanford Financial would not only contradict the complaint's allegations, but would also mean that Appellees have no claim against Proskauer at all. See Buck v. Blum, 130 S.W.3d 285, 289 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("A plaintiff may . . . plead herself out of court if she alleges facts that negate her [respondeat superior] cause of action."); Baptist Mem'l Hosp. Sys. v. Sampson, 969 S.W.2d 945, 947 (Tex. 1998) ("Under the doctrine of respondeat superior, an

_____

[10] As noted supra in note 5, the District Court dismissed Appellees' direct liability claims against Proskauer because Proskauer owes no duty to non-clients such as Appellees. (ROA.2404.)

employer is vicariously liable for the [wrongful acts] of an agent or employee

<u>acting within the scope of his or her agency or employment</u> . . . ." (emphasis

added)).

There is no question that the work Sjoblom performed on behalf of Stanford

Financial "requires the office, professional training, skill, and authority of an

attorney." <u>Dixon</u>, 2008 WL 746548, at *7 (quotation marks omitted). Indeed, as

numerous courts have recognized, an SEC investigation is an adversarial proceeding

just like any other traditional form of litigation where attorneys have a duty to

zealously represent their clients. <u>See, e.g.</u>, <u>U.S. ex rel. Burns v. Family Practice

Assocs.</u>, 162 F.R.D. 624, 626 (S.D. Cal. 1995) (explaining that "the target of an

investigation . . . can only be seen as an adversary of the investigating agency"); <u>see

also</u> <u>In re Subpoenas Duces Tecum</u>, 738 F.2d 1367, 1372 (D.C. Cir. 1984)

(concluding that there was "no question" that target of SEC investigation was SEC's

adversary); <u>Gruss v. Zwirn</u>, No. 09 Civ. 6441(PGG)(MHD), 2013 WL 3481350, *8

(S.D.N.Y. July 10, 2013) ("There is no question here that the relationship between

Defendants and the SEC was adversarial . . . .").

Appellees' complaint makes clear that each and every act on which Appellees

predicate their claims against Proskauer and Sjoblom was undertaken on behalf of

Stanford Financial to defend it in connection with the SEC's investigation. <u>See</u> <u>supra</u>

pp. 5-8. Thus, even viewing the allegations in the light most favorable to Appellees, Atteberry, 430 F.3d at 252, the claims here are not actionable because the acts performed—making legal and factual arguments, responding to subpoenas, preparing witnesses, and defending depositions—are precisely the types of acts that lawyers routinely perform for their clients. See, e.g., Bitterroot Holdings, LLC v. MTGLQ Investors, L.P., No. 5:14-CV-862-DAE, 2015 WL 363196, at *1 (W.D. Tex. Jan. 27, 2015) (holding attorney immune for advancing legal argument); Elmakiss v. Hughes, No. 12-09-00269-CV, 2010 WL 2982922, at *4 (Tex. App.—Tyler July 30, 2010, pet. denied) (mem. op.) (protecting as immune attorney's conduct in "advocating positions"); Sacks v. Hall, No. 01-13-00531-CV, 2014 WL 6602460, at *13 (Tex. App.—Houston [1st Dist.] Nov. 20, 2014, no pet.) (mem. op.) ("The filing of [records obtained in discovery] . . . is conduct in which an attorney engages to discharge his duties to his client."); Alpert v. Riley, No. H-04-CV-3774, 2008 WL 304742, at *18 (S.D. Tex. 2008) (holding attorney immune for "negotiating and implementing a binding legal agreement with the IRS" because "the alleged unlawful actions were taken on [the client's] behalf in matters connected with negotiating the agreement").

Lewis v. American Exploration Co., 4 F. Supp. 2d 673 (S.D. Tex. 1998) is particularly instructive. There, as here, non-clients sued attorneys for allegedly

"providing false responses to discovery requests, assisting their client in providing false deposition testimony, and withholding properly requested documents known to exist." Id. at 675. Because the "acts and omissions alleged [were] acts undertaken by lawyers representing a client in responding to discovery requests," the claims were barred by the attorney immunity doctrine. Id. at 680. The same is true here. Because Sjoblom's conduct was indisputably in furtherance of Stanford Financial's defense to the SEC's investigation, Proskauer is immune from Appellees' claims that Sjoblom engaged in misconduct by acting as he did.

## II. The "Fraud Exception" on Which the District Court Relied Does Not Exist and Therefore Cannot Save Appellees' Claims

Appellees' allegation that Sjoblom was acting in furtherance of a conspiracy to commit fraud does not negate Proskauer's immunity from Appellees' suit. The District Court denied Proskauer immunity by looking past the kind of conduct at issue to its alleged nature based on a line of cases recognizing a so-called "fraud exception" to attorney immunity, and determined that discovery was necessary to determine whether that exception applied. (See ROA.2386-87 (citing cases).) But, as the Texas Supreme Court's decision in Cantey Hanger has confirmed, the "fraud exception" does not and cannot exist because it is the "kind—not the nature—of the attorney's conduct" that matters. Cantey Hanger, 2015 WL 3976267, at *5 (quotation marks omitted); see id. at *6 ("[A]n attorney's conduct may be wrongful

22

but still fall within the scope of client representation."); <u>Bitterroot</u>, 2015 WL 363196, at *1 (holding that defendant-attorney was entitled to immunity where defendant-attorney was accused of fraudulently advancing legal argument).

There is therefore no need for any discovery concerning Sjoblom's intent; Appellees' allegations that Sjoblom's conduct was ill-motivated or wrongful are simply irrelevant.[11] <u>See, e.g.</u>, <u>Gaia Envtl. v. Galbraith</u>, 451 S.W.3d 398, 404-07 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (affording immunity to attorney accused of criminally extorting witness to change his testimony during deposition discovery); <u>White v. Bayless</u>, 32 S.W.3d 271, 276 (Tex. App.—San Antonio 2000, pet. denied) (affording immunity to attorney accused of fraudulently filing claims); <u>McCampbell v. KPMG Peat Marwick</u>, 982 F. Supp. 445, 448 (N.D. Tex. 1997) (affording immunity to attorney accused of "fabricat[ing] evidence and committ[ing] perjury directly" (quotation marks omitted)); <u>Taco Bell Corp.</u>, 939 F. Supp. at 552-53 (affording immunity to attorney accused of fraudulently joining

---

[11] This mode of analysis is substantially similar to the inquiry that governs assertions of prosecutorial immunity, which turns on "whether the challenged activity falls within the category of conduct in which a prosecutor is generally authorized to engage." <u>See</u> <u>Cousin v. Small</u>, 325 F.3d 627, 635 (5th Cir. 2003). As this Court has recognized, a prosecutor's entitlement to immunity exists regardless of the nature of the alleged misconduct. <u>See, e.g.</u>, <u>id.</u> ("Willful or malicious prosecutorial misconduct is egregious by definition, yet prosecutors are absolutely immune from liability for such conduct if it occurs in the exercise of their advocatory function."); <u>see also</u> <u>Henzel v. Gerstein</u>, 608 F.2d 654, 657 (5th Cir. 1979) (extending immunity to prosecutors accused of conspiring to bring false charges, including filing an information without investigation, offering perjured testimony, and suppressing exculpatory evidence because the acts are the kind engaged in by prosecutors even if the precise nature of those acts may not have been).

party to manipulate the judicial system and establish venue in favorable forum);

Mitchell, 10 S.W.3d at 811-12 (affording immunity to attorney accused of

knowingly withholding dispositive document during litigation).

The Texas Supreme Court's decision in Cantey Hanger proves the point.  In

Cantey Hanger, the defendant-attorney was alleged to have engaged in fraudulent

conduct—"falsif[ying] [a] bill of sale in order to shift tax liability" from the

attorney's client to another party in violation of a court order.  2015 WL 3976267, at

*1.  The Texas Supreme Court nevertheless determined that the defendant-attorney

was entitled to attorney immunity because "the type of conduct"—preparing a bill of

sale—"falls squarely within the scope of" the attorney's representation, even though

the precise nature of preparing that bill of sale may have been wrongful.  Id. at *6.

So too here.  Regardless of how Appellees characterize Sjoblom's motivations for

acting as he allegedly did, his conduct was undertaken in the course of representing

Stanford Financial in connection with the SEC's investigation.  That fact is

undisputed and dispositive.  As the Texas Supreme Court explained, "an attorney's

conduct may be wrongful but still fall within the scope of client representation."  Id.

at *6.

Because there is no question that Sjoblom's conduct fell "within the scope of

client representation," id., Proskauer is entitled to immunity from Appellees' suit.

24

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's denial of Proskauer's motion to dismiss based on attorney immunity, and remand to the District Court with instructions to dismiss Appellees' claims against Proskauer with prejudice.

Dated:  August 3, 2015        Respectfully submitted,

DAVIS POLK & WARDWELL LLP

By:    /s/ James P. Rouhandeh
James P. Rouhandeh
Daniel J. Schwartz
Jonathan K. Chang

450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800

- and -

CARRINGTON, COLEMAN, SLOMAN
& BLUMENTHAL, LLP

By:    /s/ Bruce W. Collins
Bruce W. Collins
Neil R. Burger

901 Main Street, Suite 5500
Dallas, Texas 75202
Telephone:  (214) 855-3000
Facsimile:  (214) 855-1333

*Attorneys for Defendant-Appellant*
*Proskauer Rose LLP*

## CERTIFICATE OF SERVICE

I certify that, on August 3, 2015, a copy of the foregoing Brief was filed by

CM/ECF with the Clerk of the Court for the U.S. Court of Appeals for the Fifth

Circuit, and that a copy was also served by CM/ECF on counsel for all parties,

including counsel for Appellees listed below.

Edward C. Snyder
CASTILLO SNYDER, P.C.
Bank of America Plaza
300 Convent St., Suite 1020
San Antonio, TX 78205
esnyder@casnlaw.com

P. Michael Jung
STRASBURGER & PRICE, LLP
901 Main St., Suite 4400
Dallas, TX 75202
michael.jung@strasburger.com

Edward F. Valdespino
Judith R. Blakeway
STRASBURGER & PRICE, LLP
300 Convent St., Suite 900
San Antonio, TX 78205
edward.valdespino@strasburger.com
judith.blakeway@strasburger.com

Robert McRae O'Boyle
STRASBURGER & PRICE, LLP
720 Brazos Street, Suite 700
Austin, TX 78701
bob.oboyle@strasburger.com

Douglas J. Buncher
NELIGAN FOLEY, LLP
325 N. St. Paul St., Suite 3600
Dallas, TX 75201
dbuncher@neliganlaw.com

Dated:  August 3, 2015

DAVIS POLK & WARDWELL LLP

By:   /s/ James P. Rouhandeh
     James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800

26

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains 5,609 words, excluding the parts of

the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).


2.    This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

this brief has been prepared in a proportionally spaced typeface using

Microsoft Word 2010 in Times New Roman, 14 point font.


Dated:  August 3, 2015                     DAVIS POLK & WARDWELL LLP

                                           By:   /s/ James P. Rouhandeh
                                                 James P. Rouhandeh

                                           450 Lexington Avenue
                                           New York, New York 10017
                                           Telephone:  (212) 450-4000
                                           Facsimile:  (212) 701-5800